# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LONESTAR AIRPORT HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF AUSTIN, TEXAS,<br><br>Defendant. | Civil Action No. 1:22-cv-00770-RP |

**DECLARATION OF CHRISTOPHER M. CLOUGH**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Christopher M. Clough. I am more than 18 years of age and am competent to give testimony and provide this Declaration.

2. I submit this declaration in support of Lonestar Airport Holdings, LLC's ("Lonestar") Motion for Preliminary Injunction, and the facts stated herein are based on my personal knowledge.

3. I am the Managing Partner of the Austin Office of the law firm of Barron, Adler, Clough & Oddo, LLP, located at 808 Nueces Street, Austin, Texas 78701.

4. I have been retained by Lonestar as outside counsel in connection with its dispute with the City of Austin (the "City").

5. On April 27, 2022, I sent a letter to Thomas Forestier, the attorney representing the City, responding to an "Initial Offer Letter" Mr. Forestier had sent to Lonestar. A true and correct copy of my April 27, 2022 letter is attached hereto as Exhibit 1.

6. On May 11, 2022, Mr. Forestier sent me a letter entitled "Your April 27, 2022 Letter on behalf of Lonestar Airport Holdings, LLC ('LoneStar') in response to the City of Austin's Initial Offer Letter dated March 29, 2022." A true and correct copy of Mr. Forestier's May 11, 2022 letter is attached hereto as Exhibit 2.

7. On June 17, 2022, the City filed Plaintiff's Original Statement and Petition for Condemnation in Probate Court in Travis County, Texas (the "Condemnation Petition"), a true and correct copy of which is attached hereto as Exhibit 3. The condemnation case is pending in Probate Court #1, *City of Austin, Texas v. Lonestar Airport Holdings LLC et al.*, Case No. C-1-PB-22-001462 (the "Condemnation Case"). The Condemnation Petition describes the "Subject Property" as Lonestar's "interest in or title to, the leasehold interest in the land, improvements, and all other buildings therein and thereon" a parcel of land on which the South Terminal of Austin-Bergstrom International Airport sits. Ex. 3, Condemnation Pet. ¶ 6.

8. On July 13, 2022, the Travis County Probate Court appointed special commissioners in the Condemnation Case, as shown in the Order attached as Exhibit 4. The parties have discussed setting a hearing before the special commissioners in the Condemnation Case in November 2022 in accordance with the Texas Property Code. Under Texas law, the special commissioners cannot determine whether the proposed eminent domain taking is lawful; they merely value the interest to be taken as described in the City's Petition and the damages to any interests remaining. The special commissioners typically issue an award on the day of the hearing. The City would then be entitled to deposit the amount of the award in the Court registry and take possession immediately thereupon.

9. On July 19, 2022, I spoke on the telephone with Mr. Forestier. During that call, Mr. Forestier conveyed to me the City's intentions regarding the assumption of possession and control over the South Terminal in connection with its Condemnation Petition.

10. Mr. Forestier confirmed to me that, in his opinion, the City would be ready and would like to acquire possession of the South Terminal by as early as the end of October 2022. He did not provide a reason for the City needing possession of the property by that specific time.

11. Mr. Forestier did, however, state that the City intended to step into the shoes of Lonestar and operate the South Terminal through the end of 2022 and into 2023. He did not suggest that the City's operations of the South Terminal during that time would differ in any way from how Lonestar currently operates the terminal. Mr. Forestier also requested that Lonestar and the City conduct "transition meetings" to discuss Lonestar transitioning its business to the City.

12. Mr. Forestier further communicated to me that the City would continue to operate the South Terminal in this way until the City had cleared gate capacity for the current airline operators at the South Terminal to move their airline operations to the Main Terminal. He said that the City would not be able to move the South Terminal airline carriers to the Main Terminal until the first or second quarter of 2023, at the earliest.

13. My telephone discussion with Mr. Forestier was not a settlement communication, and it involved no discussion of settlement points, options, party opinions as to value, or any other content that would form the basis of a settlement agreement. Instead, I understood it to be a discussion of logistics and a request for a further meeting between Lonestar and City principals about the logistics of a City takeover of the South Terminal and a clear expression of the City's intentions as it relates to the South Terminal.

I declare, pursuant to 28 U.S.C. § 1746, and under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 1st day of September, 2022.

Christopher M. Clough

# EXHIBIT 1

**Austin Office**
808 Nueces Street
Austin, TX 78701-2216
Telephone: (512) 478-4995
Fax: (512) 478-6022




**Christopher M. Clough**
clough@barronadler.com
**Office:** (512) 478-4995

April 27, 2022

**VIA EMAIL**

Thomas J. Forestier
Winstead PC
600 Travis Street, Suite 5200
Houston, TX 77002
tforestier@winstead.com

Re: Purported Eminent Domain Taking from Lonestar Airport Holdings, LLC, of its Rights at Austin Bergstrom International Airport ("AUS") - Response to March 29, 2022 Initial Offer Letter

Dear Mr. Forestier:

On behalf of our Client, Lonestar Airport Holdings, LLC ("Lonestar"), we write in response to your Initial Offer Letter dated March 29, 2022 on behalf of your Client, the City of Austin (the "City").

The City's offer (the "Initial Offer") of $1,954,000 for Lonestar's interests under its 40-year airport concession agreement is objectively offensive. The Initial Offer is far below the substantial amount of capital Lonestar has invested in the South Terminal facility and entirely ignores the development and other rights granted to Lonestar in the concession agreement, which was entered into with the City just six years ago after an open, public discussion at the City Council and with the City Council's unanimous approval.

The condemnation process is nothing but a bad-faith attempt to wrongfully circumvent the terms of the concession agreement and deprive Lonestar of the benefit of its bargain in order to advance the agenda of a new airport administration that would prefer not to be bound by its predecessor's decisions. There is no doubt, however, that Lonestar has fully performed its obligations under the concession agreement. It is widely acknowledged that Lonestar has materially upgraded the South Terminal facility and improved overall airport operations for the benefit of the traveling public. Lonestar's South Terminal employs over 200 local citizens and has provided more than 2.6 million passengers with access to ultra-low fare, safe and enjoyable travel to and from Austin since 2016.

Given the foregoing, and the more detailed points set forth below, Lonestar hereby formally rejects the City's Initial Offer. Lonestar will not permit the City to wrongfully condemn its way out of its binding contractual obligations.

1. **The Austin City Council unanimously approved a forty-year lease and concession agreement with Lonestar that was signed by the City on March 24, 2016 (the "Concession").**

This Initial Offer is a continuation down the path taken by the Department of Aviation's current administration to subvert the City's 2016 decision that the best way to allow AUS to grow efficiently and economically is through a public-private partnership, rather than burdening Austin's citizens with the excess costs.

2. **With express reliance on the aforementioned 40-year lease and concession agreement, Lonestar has invested substantial amounts of its own capital in South Terminal improvements, airline passenger infrastructure, passenger growth and increased route options. It has also worked diligently, and in the spirit of partnership, to help the Department of Aviation increase capacity (at Lonestar's sole expense) at the airport at a time when the City desperately needs terminal space. The City now purports to condemn its way out of this agreement by taking all of Lonestar's interests at AUS for $1,954,000.**

The City's Initial Offer fails to reimburse Lonestar for even the amounts my client has invested developing the South Terminal, which are exponentially higher than the Initial Offer. The Initial Offer, moreover, entirely ignores both the value of the operating enterprise at the South Terminal which will be eliminated by this taking - which obviously cannot be relocated elsewhere - as well as the investment made into the South Terminal by Lonestar. In addition, the Initial Offer completely ignores the bargained-for rights contained in the parties' South Terminal Concession, particularly the redevelopment rights contained in Article 15 of the Concession. Moreover, the City's Initial Offer fails to account in any way for the value Lonestar has created during the last six years, much less the value to be created over the remaining 34-year term of the Concession.

As the City knows, Lonestar sought to potentially bring on a partner in the South Terminal prior to the City starting down the road that culminated in this purported taking, and received multiple offers for *hundreds of millions of dollars*. The City wrongfully eliminated this market by threatening a taking of South Terminal by eminent domain, creating enormous losses for Lonestar and potential damage exposure for the City.

3. **The City's effort to utilize eminent domain to take Lonestar's bargained-for redevelopment rights so that it may claim those rights for itself violates Texas condemnation law.**

The City's strategy to use eminent domain to condemn a) Lonestar's exclusive contractual redevelopment rights under Article 15 and b) its rights to operate a forty-year concession at AUS so that the City may claim those redevelopment and concession rights for itself violates Texas condemnation law. See *City of Blue Mound v. Southwest Water*, 449 S.W.3d 678 (2014), and its progeny. *Blue Mound* remains controlling law in Texas, and we fully expect that the courts will



reject the City's efforts to attempt a hostile taking of Lonestar's business so that it may operate that business itself. The City's own Executive Director at AUS candidly stated the primary goal of this effort was to regain local control of the facility in contravention of the rights granted to Lonestar by the City under the Concession. The proposed construction and location of a taxiway overtop our facility is unnecessary and simply intended to advance the City's condemnation action. There are numerous commercially viable alternatives to the proposed taxiway that we have presented to the City.

Practically speaking as Austinites, it is difficult to understand why the City would jettison an experienced and efficient redevelopment partner that the City already has under contract, especially during this time of difficulty and uncertainty at AUS. Given recent events at the airport as passenger volumes continue to skyrocket, Lonestar's ability to help the City redevelop AUS is particularly needed right now, but the City is inexplicably ignoring a trusted, capable and proven partner that would relieve expenses and operational burdens the City is preparing to lay at the feet of airport passengers and those of us that call Austin home. In addition, the City's chosen path is certain to result in years of unnecessary litigation, adding cost and bottlenecks to its already complicated Airport Expansion and Development Plan.

4. **When the City entered a 40-year public-private partnership with Lonestar, your Client expected exceptional performance and a successful partnership, and that is what it has received.**

Since the South Terminal opened in 2017 after Lonestar's refurbishment of the facility, the South Terminal has accommodated more 2.6 million passengers on more than 21,000 departing and arriving flights and has directly supported more than 200 jobs in Austin.

Ultra-low-cost airline service has flourished in the Austin market, truly to the benefit of the travelling public. In 2016, ultra-low-cost carriers offered just 1,675 departing flights from the airport. In 2019, thanks to Lonestar's capable operation of the South Terminal, that number jumped to more than 6,500 departing flights. Today, Frontier and Allegiant operate from the terminal, offering low fares and nonstop service to 24 cities from Austin, with 3 new routes to be added this month. The current and projected availability of ultra-low-cost airline service is a financial impossibility without the South Terminal, leaving price-sensitive customers with fewer choices when traveling to and from AUS.

5. **At the request of the Department of Aviation in 2019, Lonestar made a significant investment to design plans that would expand ultra-low-cost carrier service at AUS.**

Lonestar has long recognized the sharp growth in Austin and the need to find an expedited strategy for expansion at AUS. My client previously submitted a proposal to the City, at the request of the Department of Aviation, to meet forecasted demand through a new ultra-low-cost airline terminal at AUS. Lonestar's plan proposed to relocate the original South Terminal, clearing



that land for AUS's own expansion, while adding up to 10 gates, 5 security lanes, 22 check-in counters, and more than 154,000 square feet of terminal space for travelers. That plan – "South Terminal 2.0" – was designed to expand gates for ultra-low-cost carriers while allowing the City to reduce the size, cost and time it would take to expand the Barbara Jordan Terminal. The $140 million dollar project was to be **fully funded by Lonestar**, with rent and revenue sharing afforded to the City and AUS, a clear benefit to the taxpayers. Lonestar's plan was to complete the construction in just two years. Ironically, had the project been approved when Lonestar presented the proposal in 2019, South Terminal 2.0 would have celebrated its grand opening this past January at a time when AUS desperately needs additional terminal capacity. This circumstance will only worsen in future years.

Lonestar remains committed to assisting the City meet the current challenges at AUS. As Lonestar's representatives have stated on several occasions to your clients, we urge you to take advantage of the opportunity that sits before the City to use Lonestar's expertise and financial resources under the existing Concession to find the right path for expanding airport facilities at AUS quickly and efficiently – just as envisioned when the Concession was granted to Lonestar a few years ago. Lonestar continues to make substantial investments in developing the South Terminal, including a recent investment of over $1M for an operations base for Allegiant, and remains committed to participating constructively in any expansion or creation of new facilities at AUS.

Should the City Council consider authorizing this taking, they must contemplate the facts and history summarized in this letter, including the City's own records and testimony that support our operation. Eminent domain is costly, inefficient and time consuming. Regardless, Lonestar will not walk away from its investment at AUS, and Lonestar stands ready to vindicate its rights in court as needed.

Sincerely,

Christopher M. Clough

Cc: Jeff Pearse (jpearse@austinsouthterminal.com)
Lawrence A. Slovensky (LSlovensky@KSLAW.com)
Julia C. Barrett (JBarrett@KSLAW.com)



# EXHIBIT 2



Austin | Charlotte | Dallas | Fort Worth | Houston | San Antonio | The Woodlands

600 Travis Street
Suite 5200
Houston, TX 77002

713.650.8400 OFFICE
713.650.2400 FAX
winstead.com

May 11, 2022

Thomas J. Forestier
(713) 650-2749
tforestier@winstead.com

Christopher M. Clough
Barron, Adler, Clough & Oddo, LLP
808 Nueces Street
Austin, TX 7870

***via Email: clough@barronadler.com***

Re: Your April 27, 2022 Letter on behalf of LoneStar Airport Holdings, LLC ("LoneStar") in response to the City of Austin's Initial Offer Letter dated March 29, 2022

Dear Mr. Clough:

I am writing on behalf of my client, the City of Austin ("City"), in order to reply to LoneStar's response referenced above.

A. The City has complied with all applicable Lease provisions and Texas eminent domain law.

The City sent its Initial Offer Letter in full compliance with Article 34 of the Lease, entitled CONDEMNATION AND BUSINESS INTERRUPTION, and Chapter 21 of the Texas Property Code. That chapter contains a mandatory Bona Fide Offer process, which is designed to facilitate negotiations and resolution of eminent domain disputes. Your letter however does not contain a monetary counteroffer. The City received your letter after LoneStar invoked the Alternative Dispute Resolution procedures in Article 40 of the Lease, which makes it even more difficult to understand why no counteroffer was made. The City requests that LoneStar reconsider and make a counteroffer that will help the parties determine if this matter can be resolved without costly and protracted litigation.

B. The City is protecting the interests of all AUS passengers, employees and airlines.

Your statements about wasting taxpayer dollars are misplaced and reflect a fundamental misunderstanding of how AUS is funded. AUS is a self-funded enterprise, which means it is not

funded by taxpayer dollars. The City certainly uses public funds, including federal grant monies, to operate AUS, and the City intends to use those funds wisely and lawfully. The City has determined AEDP best serves the interests of all AUS passengers, employees and airlines and the public and is consistent with the 2040 Airport Master Plan. LoneStar opposes AEDP only because it believes it is not in the best interests of LoneStar. However, AUS is not allowed by law to consider only the best interests of LoneStar or elevate LoneStar's interests above other interests and remains firmly committed to AEDP.

C. LoneStar, rather than the City, is seeking to avoid its obligations under the Lease.

It is undisputed that the Lease is a valid and enforceable agreement. Two sophisticated parties[1], who were represented by very capable and competent legal counsel, negotiated the Lease provisions extensively for more than seven months in 2015 and 2016. In Article 34 of the Lease, both parties contemplated the risk of condemnation in general by any condemning authority and specifically by the City. In that article, the parties agreed to a detailed mechanism for compensating LoneStar for its leasehold interest. The parties agreed LoneStar, as Tenant, would be entitled to compensation for "the Fair Market Value of Tenant's Interest", which the Lease defined as including, among other things, the Tenant's rights under Article 15.[2] However, Article 15 does not impact the value of the Tenant's Interest because it is unenforceable for several different and independent reasons, including, but not limited to, the existence of unsatisfied conditions precedent, an unenforceable promise to negotiate towards a future agreement, and governmental immunities, which were expressly reserved in Articles 36.01(c) and 41.11 and elsewhere in the Lease.

By way of further explanation, the City's Department of Aviation, after participating in months of good faith negotiations with LoneStar, has repeatedly informed LoneStar that it does not agree to LoneStar's proposed "South Terminal 2.0." That plan on its face is not consistent with the 2040 Airport Master Plan, which, like its predecessor plans, calls for the removal of the South Terminal and the construction of a new and much more expanded terminal, such as Concourse B that will be connected to the Barbara Jordan Terminal under the AEDP. Additionally, Article 26.08 of the Lease confirms that the City has "absolute discretion" to determine what is necessary and appropriate when it comes to developing and improving AUS and all roadways, terminal facilities, land areas and taxiways and any other facilities at AUS. There are other reasons why Article 15 affords LoneStar no compensable rights. If it did, however, LoneStar should have quantified its

---

[1] LoneStar is owned and controlled by Oaktree Capital Management, which reportedly has $164 Billion in assets under management. https://www.oaktreecapital.com/about. In turn, Oaktree's majority interest owner, Brookfield Asset Management, has about $690 Billion in assets under management. *Id.*; https://www.brookfield.com/.

[2] The parties did not agree, in the event of condemnation, that the City was obligated to compensate LoneStar for its initial capital investment, any return on that investment or its going concern value. The parties addressed the concept of LoneStar recovering all or a portion of its initial capital investment in Article 25, entitled CAPITAL RECOVERY PAYMENT, which does not apply to the present circumstances and has expired by its own terms.

value, made a demand for it, and explained the legal basis for the demand, but your letter, as stated above, does none of that.[3]

D. In the Lease, the parties contractually ratified the City's right to condemn LoneStar's interest, and *Blue Mound* is inapplicable for multiple reasons.

LoneStar's reliance on the 2014 *Blue Mound* decision is a desperate attempt to apply irrelevant law in an effort to rewrite the Lease for the sole benefit of LoneStar. There are multiple reasons *Blue Mound* is inapplicable to the present dispute. I will highlight just a few of them.

Texas law is well-settled that lost business income, profits, capital investments and any alleged return on those investments are fatally remote and speculative and thus not compensable. That rule of law applies to this dispute. *Blue Mound,* which recognized a very narrow exception to that legal principle based on unique facts, did not involve an extensively negotiated commercial real estate lease agreement between highly sophisticated parties, which included a condemnation clause. Thus, in *Blue Mound*, there was no landlord-tenant relationship or other preexisting contractual relationship between the parties nor an express condemnation clause that describes a mechanism to compensate the tenant in the event of condemnation by the landlord/municipality. Also, the City here already owns the lease premises in fee simple as well as the South Terminal itself and is simply condemning the leasehold interest it granted to LoneStar through the Lease.[4] The City is not condemning LoneStar's business, which it is free to continue to conduct at other airports in Texas and other states. *Blue Mound* did not involve these important legal and factual distinctions.[5]

If *Blue Mound* barred the City's exercise of its power of eminent domain, LoneStar should have invoked it when negotiating Article 34, the condemnation clause, in 2015 and 2016.[6] LoneStar invokes that decision now only because it has tenant's remorse and wants to rewrite the deal. Of course, the City would never have been able to agree to a contract provision that restricts its freedom to decide whether to initiate eminent domain proceedings. *Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 225 (Tex. App.—Houston [14th Dist. 2008, no pet.) (citations omitted). That type of

---

[3] Your letter claims LoneStar has received "multiple offers for hundreds of millions of dollars" in exchange for some portion of its interests. The City's retained independent real estate appraiser requested that information in his November 11, 2021 letter addressed to you. Item 5 in that letter requested "[a]ny listings, listing agreements, offers to sell, or offers to purchase." LoneStar did not disclose any responsive information. It is unreasonable for LoneStar to complain that the City's Initial Offer disregarded information, which was requested but not disclosed.

[4] Article 41.05 of the Lease confirms the Lease merely created a landlord-tenant relationship between the parties and expressly disclaimed any partnership or joint venture.

[5] The Austin Court of Appeals rejected arguments similar to those made by LoneStar in a case involving a commercial lease tenant who sought to recover the going concern value of its business due to an alleged impossibility to relocate its business. *AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.).

[6] The parties amended the Lease in 2019. There is no record of LoneStar asking to modify Article 34, the condemnation clause, at that point in time either.

clause is illegal and void. *Id.* Thus, *Blue Mound* is inapplicable, and LoneStar will not be able to rely on it to ask a court to rewrite the Lease in its favor.

The City hopes that the Alternative Dispute Resolution process recently invoked by LoneStar and the Bona Fide Offer process commenced by the City will generate a result that obviates the need for the parties to waste valuable time and resources in litigation. The City reserves all legal rights and interests and does not waive the right to assert other claims, defenses, and legal theories in the event of litigation. Please contact me with any questions about this letter.

Sincerely,

Thomas J. Forestier
Counsel for the City of Austin

cc: Larry Slovensky *via Email: lslovensky@kslaw.com*

# **EXHIBIT 3**

**CAUSE NO. ________________**

| | | |
|---|---|---|
| **CITY OF AUSTIN, TEXAS,** | § | **CONDEMNATION PROCEEDING FILED** |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **IN PROBATE COURT NO. 1** |
| | § | |
| **LONESTAR AIRPORT HOLDINGS, LLC, and TEXAS CAPITAL BANK,** | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | **OF TRAVIS COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL STATEMENT AND PETITION FOR CONDEMNATION**

Pursuant to Chapter 21 of the Texas Property Code, THE CITY OF AUSTIN, TEXAS, a Texas home rule city and municipal corporation ("Plaintiff" or "City of Austin") files this Original Statement and Petition for Condemnation (the "Petition") against Defendants LoneStar Airport Holdings, LLC and Texas Capital Bank (collectively "Defendants"; "Defendant Tenant" and Defendant Lienholder" respectively) and respectfully shows the Court as follows:

**DISCOVERY PLAN AND RELIEF SOUGHT**

1. Pursuant to Rules 190.1 and 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under a Level 3 discovery plan. Plaintiff seeks monetary relief of $250,000 or less and non-monetary relief. The damages and relief sought are within the jurisdictional limits of this Court. Because Plaintiff seeks non-monetary relief, Rule 169 of the Texas Rules of Civil Procedure regarding the expedited actions process does not apply to this suit. TEX. R. CIV. P. 169.

**EXHIBITS**

2. Plaintiff attaches to this Petition Exhibit A, as referenced below, which Plaintiff incorporates herein by reference as if fully set forth herein.

| Exhibit | Interests Described/Depicted |
|---|---|
| A | 25.14 acres of land being a part the Santiago Del Valle Ten League Grant Survey, Abstract No. 24, Travis County, Texas being out of a called 1989.252-acre tract to the City of Austin in a Deed Without Warranty Recorded in Document Number 2002002218 of the Official Public Records of Travis County, Texas |

## PARTIES

3. The City of Austin is a Texas home rule municipality and corporate body politic with all the powers granted to municipal corporations by the Texas Constitution and general and special laws of the State of Texas. The City of Austin is vested with the power of eminent domain under the provisions of Chapters 251 and 273 of the Texas Local Government Code, Chapter 22 of the Texas Transportation Code, the Texas Constitution, and the common law of the State of Texas, to acquire real property interests, for, among other things, the public purpose of airports and landing fields; and the planning, establishing, constructing, improving, equipping, maintaining, operating, regulating, protecting, and policing of airports or air navigation facilities. The City of Austin's principal place of business is in Austin, Travis County, Texas.

4. Defendant, LoneStar Airport Holdings, LLC, a Delaware limited liability company, may be served with Notice of Hearing by and through its Registered Agent, Kimberly Dorrien, at 10000 Logistics Lane, Austin, TX 78719, or wherever else found. In accordance with Section 21.012(c) of the Texas Property Code, a copy of this Petition is being sent to Defendant Tenant by certified mail, return receipt requested, and first-class mail, as well as to Defendant Tenant's counsel via email and electronic filing and service.

5. Defendant, Texas Capital Bank, may be served with Notice of Hearing by and through its Registered Agent, Anna M. Alvarado, at 2000 McKinney Ave., Suite 700, Dallas, TX 75201, or wherever else found. In accordance with Section 21.012(c) of the Texas Property Code,

a copy of this Petition is being sent to Defendant Lienholder by certified mail, return receipt requested, and first-class mail.

6. To the best of Plaintiff's knowledge, Defendants hold, possess or claim some interest in or title to, the leasehold interest in the land, improvements, and all other buildings therein and thereon (the "Subject Property") described and depicted on Exhibit A attached hereto. The Subject Property, from which Plaintiff will acquire title to Defendants' interests, is located at Austin-Bergstrom International Airport ("AUS") in Travis County, Texas in the vicinity of the South Terminal. Plaintiff reserves the right to amend this Petition and add as defendants any additional parties who may subsequently appear to own an interest in the Subject Property.

## JURISDICTION AND VENUE

7. Plaintiff seeks to acquire Defendants' interests in the Subject Property by eminent domain pursuant to chapter 21 of the Texas Property Code. This Court has jurisdiction over this cause under Section 21.001 of the Texas Property Code.

8. Venue is proper under Section 21.013(a) of the Texas Property Code because Travis County is the county in which the Subject Property is located.

## SUIT FOR CONDEMNATION

9. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

10. Plaintiff is in the process of implementing the Airport Expansion and Development Program ("AEDP") at AUS, which includes the expansion of the Barbara Jordan Terminal and the construction of a new Midfield Concourse. The new Midfield Concourse facility will require the relocation of the existing midfield taxiways. Plaintiff determined that the safest, most operationally efficient, and most cost-effective alignment of the future taxiways will require the closure and removal of the South Terminal at AUS. The AEDP has been developed and will be implemented to reflect what is in the best interest of the City of Austin, the City of Austin community, the greater

Central Texas region, and the airlines to pursue a more operationally modern and cost-efficient facility for all airlines and passengers that will keep pace with the region's growing aviation demand.

11. On March 24, 2016, Plaintiff granted the South Terminal Lease and Concession Agreement ("Lease") to Highstar Capital IV, L.P., a limited partnership formed and existing under the laws of the State of Delaware ("Initial Tenant"). The Initial Tenant then assigned the Lease to Defendant Tenant by the Assignment and Assumption Agreement by and between Highstar Capital IV, L.P. and LoneStar Airport Holdings, LLC dated March 24, 2016. Plaintiff and Defendant Tenant amended the Lease by Amendment No. One to the South Terminal Lease and Concession Agreement by and between the City of Austin and LoneStar Airport Holdings, LLC, effective July 1, 2019.

12. The City Council of the City of Austin, duly incorporated, organized and existing under and by virtue of its charter adopted by the electorate pursuant to Article XI, Section 5 of the Texas Constitution, is vested with the power and authority to appropriate private property for public use and purposes by condemnation proceedings and to exercise all of the powers of eminent domain under Section 251.001 of the Texas Local Government Code.

13. The City Council of the City of Austin determined, through a passed and adopted Resolution 20220616-063 (the "Resolution"), that a public use and necessity exists and that it is in the public interest to acquire Defendants' interests in the Subject Property and all improvements and other buildings therein and thereon leased to Defendant Tenant by Plaintiff, if any, for the implementation of the AEDP. By law and as provided by the express terms of the Lease, Plaintiff is entitled to condemn Defendants' interests in the Subject Property for the purposes set forth above and asks that the same be condemned for such purposes.

14. Based on the Resolution, Plaintiff has been granted the authority to purchase or condemn title to Defendants' interests in the Subject Property and such other interests in real property as are necessary, convenient, or useful for the implementation of the AEDP.

15. Plaintiff requires Defendants' interests in the Subject Property and such other interests in real property as are necessary, convenient, or useful for the implementation of the AEDP.

16. Plaintiff made a bona fide offer to acquire Defendant Tenant's leasehold interest in the Subject Property from Defendant Tenant voluntarily as provided by Section 21.0113 of the Texas Property Code. However, Plaintiff and Defendant Tenant are unable to agree on the value of Defendant Tenant's leasehold interest in the Subject Property. Plaintiff therefore institutes this eminent domain proceeding to acquire all of Defendants' interests in the Subject Property as Plaintiff is authorized to do under existing law and the express terms of the Lease.

17. Plaintiff timely provided the Landowner's Bill of Rights Statement in accordance with Section 21.0112 of the Texas Property Code.

18. In conclusion, Plaintiff seeks to enforce its right of eminent domain for the acquisition of Defendants' interests in the Subject Property under the statutes and laws of the State of Texas and the express terms of the Lease, consistent with the established statutory scheme which the Texas Legislature and Courts have adopted for such purposes.

## DISCLOSURE OF REQUIRED INFORMATION

19. As provided by Section 21.023 of the Texas Property Code, Plaintiff hereby discloses that Defendants or Defendants' heirs, successors, or assigns may be entitled to repurchase Defendants' leasehold interest in the Subject Property under Subchapter E of Chapter 21 of the Texas Property Code or request from Plaintiff certain information relating to the use of the Subject

Property and any actual progress made toward that use; and that the repurchase price is the price paid to Defendants by Plaintiff at the time Plaintiff acquired the Subject Property through eminent domain.

## CONDITIONS PRECEDENT

20. All conditions precedent to instituting this condemnation proceeding have occurred or have been performed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, the City of Austin, Texas, prays that: (1) the Court immediately appoint three disinterested real property owners who reside in Travis County as Special Commissioners and appoint two disinterested real property owners who reside in Travis County as alternate Special Commissioners; (2) that the Special Commissioners promptly set a time and place for hearing at the earliest practical time following twenty (20) days after the order appointing the Special Commissioners and serve notice of the hearing to all parties; (3) that the Special Commissioners assess the actual damages, if any, from the condemnation action and promptly file their written decision and award with the Court; (4) that the Court grant Plaintiff a Writ of Possession to enforce the decision of the Special Commissioners immediately upon payment into the registry of the Court the amount of the Special Commissioners' award; (5) that the Court enter judgment vesting Plaintiff with the property rights sought in this condemnation action; and (6) that the Court award Plaintiff its cost of suit, and any other relief, both general and special, legal and equitable, to which Plaintiff may be entitled.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Thomas J. Forestier*
Thomas J. Forestier
State Bar No. 07256560
tforestier@winstead.com
Christopher Robertson
State Bar No. 24107267
crobertson@winstead.com
600 Travis Street, Suite 5200
Houston, Texas 77002
Telephone: (713) 650-2749
Facsimile No.: (713) 650-2400

Andrew J. Schumacher
State Bar No. 24051310
aschumacher@winstead.com
401 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 370-2800
(512) 370-2850 (Fax)

-and-

ANNE MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, LITIGATION DIVISION CHIEF

Angela C. Rodriguez
Assistant City Attorney
State Bar No. 24013415
Angela.Rodriguez@austintexas.gov
City of Austin Law Department
P.O. Box 1088
Austin, TX 78767-1088
Telephone: (512) 974-2317
Facsimile No.: (512) 974-1311

**ATTORNEYS FOR PLAINTIFF, THE CITY OF AUSTIN**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June, 2022, a true and correct copy of the foregoing document was served upon the following parties in compliance with Rule 21a of the Texas Rules of Civil Procedure:

| | |
|---|---|
| Lawrence A. Slovensky<br>King & Spalding LLP<br>1180 Peachtree Street, N.E.<br>Atlanta, GA 30309-3521<br>lslovensky@kslaw.com<br><br>*Attorney for Defendant* | ______ via Certified Mail, RRR<br>______ via U.S. Mail<br>______ via Federal Express<br>______ via Facsimile<br>__X__ via E-mail<br>______ via Hand Delivery<br>__X__ via CM/ECF System |
| Christopher M. Clough<br>Barron Adler Clough & Oddo, LLP<br>808 Nueces Street<br>Austin, TX 78701<br>clough@barronadler.com<br><br>*Attorney for Defendant* | ______ via Certified Mail, RRR<br>______ via U.S. Mail<br>______ via Federal Express<br>______ via Facsimile<br>__X__ via E-mail<br>______ via Hand Delivery<br>__X__ via CM/ECF System |
| Kimberly Dorrien<br>LoneStar Airport Holdings, LLC<br>10000 Logistics Lane<br>Austin, TX 78719<br><br>***Registered Agent for Defendant, LoneStar Airport Holdings, LLC*** | __X__ via Certified Mail, RRR<br>__X__ via U.S. Mail<br>______ via Federal Express<br>______ via Facsimile<br>______ via E-mail<br>______ via Hand Delivery<br>______ via CM/ECF System |

Anna M. Alvarado
2000 McKinney Ave., Suite 700
Dallas, TX 75201

***Registered Agent for Defendant, Texas Capital Bank***

__X__ via Certified Mail, RRR
__X__ via U.S. Mail
______ via Federal Express
______ via Facsimile
______ via E-mail
______ via Hand Delivery
______ via CM/ECF System

*/s/ Thomas J. Forestier*
Thomas J. Forestier

# EXHIBIT A




EXHIBIT "______"

CITY OF AUSTIN
TO
SOUTH TERNINAL
LEASE AGREEMENT

**LEGAL DESCRIPTION FOR**

A 23.00 ACRE (1,002,031 SQUARE FEET) TRACT OF LAND IN THE SANTIAGO DEL VALLE TEN LEAGUE GRANT SURVEY, ABSTRACT NO. 24, TRAVIS COUNTY, TEXAS, BEING OUT OF A CALLED 1989.252 ACRE TRACT TO THE CITY OF AUSTIN IN DEED WITHOUT WARRANTY RECORDED IN DOCUMENT NUMBER 2002002218 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS. SAID 23.00 ACRES, SAVE & EXCEPT A 0.34 ACRE TRACT OF LAND, IN TOTAL A 22.66 ACRE TRACT AS SHOWN ON THE ACCOMPANYING SKETCH, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 60d nail set in the interior of the said 1989.252 acre tract, said 60d nail having Texas State Plane Coordinates (Central Zone 4203) of N=10,044,494.22, E=3,137,398.76 for the northwest corner of this tract, from which a ½" iron rod found at an interior angle of said 1989.252 acre tract, also being a northeast corner of a 1033.081 acre tract conveyed to the City of Austin in deed without warranty recorded in Document Number 1999015608 of the Official Public Records of Travis County, Texas, bears N 05°35'01" W a distance of 6,233.50 feet;

**THENCE** through the interior of said 1989.252 acre tract the following forty-eight (48) calls:

1) N 87°26'30" E for a distance of 465.38 feet to a calculated point;
2) S 02°33'30" E for a distance of 130.10 feet to a calculated point;
3) S 41°43'16" W for a distance of 68.12 feet to a calculated point;
4) S 41°42'29" E for a distance of 6.23 feet to a calculated point;
5) N 41°40'08" E for a distance of 203.19 feet to a calculated point;
6) N 87°22'35" E for a distance of 375.79 feet to a point of curvature of a curve to the left;
7) With said curve to the left, having a radius of 100.09 feet, an arc length of 35.74 feet and a chord which bears N 77°33'57" E a distance of 35.55 feet to a calculated point;
8) N 02°41'00" W for a distance of 115.62 feet to a calculated point;



5410 South 1st Street • Austin, Texas 78745 • (512) 442-7875 • Fax (512) 442-7876 • www.maciasworld.com

9) N 87°21'57" E a distance of 300.96 feet to a calculated point;

10) S 02°41'00" E a distance of 64.99 feet to a point of curvature of a curve to the left;

11) With said curve to the left, having a radius of 10.00 feet, an arc length of 15.70 feet and a chord which bears S 47°40'07" E a distance of 14.14 feet to a calculated point;

12) N 87°20'47" E a distance of 220.47 feet to a calculated point;

13) N 42°29'14" E a distance of 386.62 feet to a 60d nail set;

14) S 47°30'46" E a distance of 165.53 feet to a calculated point;

15) S 41°19'42" W a distance of 215.92 feet to a calculated point;

16) N 87°20'47" E a distance of 768.04 feet to point of curvature of a curve to the left;

17) With said curve to the left, having a radius of 80.00 feet, an arc length of 83.24 feet and a chord which bears N 57°32'20" E a distance of 79.53 feet to a point of cusp of a curve to the left;

18) With said curve to the left, having a radius of 586.87 feet, an arc length of 283.55 feet and a chord which bears S 13°50'37" W a distance of 280.80 feet to a calculated point;

19) N 53°22'12" W a distance of 142.56 feet to a calculated point;

20) S 72°53'58" W a distance of 96.54 feet to a point of curvature of a curve to the left;

21) With said curve to the left, having a radius of 100.00 feet, an arc length of 52.86 feet and a chord which bears S 57°45'23" W a distance of 52.25 feet to a calculated point;

22) S 42°36'48" W a distance of 53.49 feet to a point of curvature of a curve to the right;

23) With said curve to the right, having a radius of 101.00 feet, an arc length of 79.02 feet and a chord which bears S 65°01'39" W a distance of 77.02 feet to a calculated point;

24) S 87°26'30" W a distance of 834.22 feet to a point of curvature of a curve to the left;



5410 South 1st Street • Austin, Texas 78745 • (512) 442-7875 • Fax (512) 442-7876 • www.maciasworld.com

25) With said curve to the left, having a radius of 38.00 feet, an arc length of 33.78 feet and a chord which bears S 61°58'37" W a distance of 32.68 feet to a calculated point;

26) S 36°30'43" W a distance of 59.08 feet to a point of curvature of a curve to the right;

27) With said curve to the right, having a radius of 77.00 feet, an arc length of 68.36 feet and a chord which bears S 61°56'37" W a distance of 66.13 feet to a calculated point;

28) S 87°22'32" W a distance of 431.05 feet to a calculated point;

29) S 42°24'27" W a distance of 29.29 feet to a calculated point;

30) S 02°22'47" E a distance of 126.52 feet to a calculated point;

31) N 87°26'30" E a distance of 20.47 feet to a calculated point;

32) S 02°31'48" E a distance of 175.53 feet to a ½" iron rod set;

33) S 87°26'30" W a distance of 122.30 feet to a calculated point;

34) N 81°25'12" W a distance of 102.72 feet to a point of curvature of a curve to the left;

35) With said curve to the left, having a radius of 24.00 feet, an arc length of 7.81 feet and a chord which bears S 85°33'11" W a distance of 7.77 feet to a point of curvature of a curve to the right;

36) With said curve to the right, having a radius of 283.22 feet, an arc length of 64.46 feet and a chord which bears S 80°30'08" W a distance of 64.32 feet to a calculated point;

37) S 87°26'30" W a distance of 24.73 feet to a calculated point;

38) S 02°33'30" E a distance of 32.01 feet to a calculated point;

39) S 87°41'20" W a distance of 335.00 feet to a 60d nail set, from which a ½" iron rod found at an angle point of said 1989.252 acre tract, also being an angle point of said 1033.081 acre tract bears, S 02°59'04" W a distance of 4,466.08 feet;

40) N 34°49'34" W a distance of 62.77 feet to a calculated point;

41) N 02°33'30" W a distance of 131.94 feet to a calculated point;

42) S 87°26'30" W a distance of 14.65 feet to a calculated point;

43) N 02°33'30" W a distance of 112.45 feet to a calculated point;

44) N 88°14'17" E a distance of 20.14 feet to a calculated point;

45) N 02°33'40" W a distance of 106.92 feet to a calculated point;

46) S 87°20'47" W a distance of 125.89 feet to a calculated point;

47) N 02°39'13" W a distance of 110.69 feet to a calculated point;

48) N 16°21'19" E a distance of 170.33 feet to the **POINT OF BEGINNING** and containing 23.00 acres (Gross) & 22.66 acres (Net).

**SAVE & EXCEPT - (0.34 ACRE)**

**BEGINNING** at a 60d nail set in the interior of the said 1989.252 acre tract, said 60d nail having Texas State Plane (Central Zone 4203) coordinates of N=10,044,191.51, E=3,138,090.88

**THENCE** through the interior of said 1989.252 acre tract the following eight (8) calls:

1) S 02°41'00" E for a distance of 110.23 feet to a calculated point;

2) S 87°19'00" W for a distance of 109.90 feet to a calculated point;

3) N 02°41'00" W for a distance of 19.84 feet to a calculated point;

4) S 87°19'00" W for a distance of 39.41 feet to a calculated point;

5) N 02°41'00" W for a distance of 70.68 feet to a calculated point;

6) N 87°19'00" E for a distance of 39.40 feet to a calculated point;

7) N 02°47'58" W for a distance of 19.74 feet to a calculated point;

8) N 87°20'24" E for a distance of 109.95 feet to the **POINT OF BEGINNING** and containing 0.34 acre (14,902 sq. ft.) of land;

**TOTAL ACREAGE - 22.66 acres (987,129 sq. ft.) of lease area.**



5410 South 1st Street • Austin, Texas 78745 • (512) 442-7875 • Fax (512) 442-7876 • www.maciasworld.com

**NOTE**

The coordinates and bearings described herein are Texas State Plane Grid Bearings, (Central Zone-4203), NAD 83.

**THE STATE OF TEXAS** §
§ KNOW ALL MEN BY THESE PRESENTS:
**COUNTY OF TRAVIS** §

That I, Carmelo L. Macias, a Registered Professional Land Surveyor, do hereby state that the above description is true and correct to the best of my knowledge and belief and that the property described herein was determined by a survey made on the ground under my direction and supervision.

WITNESS MY HAND AND SEAL at Austin, Travis County, Texas, this 15th day of November, 2016, A.D.

Macias & Associates, L.P.
5410 South 1st Street
Austin, Texas 78745
512-442-7875

Carmelo L. Macias
Registered Professional Land Surveyor
No. 4333 – State of Texas

**REFERENCES**
AUSTIN GRID NO. N-16
TCAD PARCEL ID NO. 03-1531-06-01
MACIAS & ASSOCIATES, L.P.,
PROJECT NO. 87-43-16



SKETCH TO ACCOMPANY LEGAL DESCRIPTION
SOUTH TERMINAL LEASE AGREEMENT
GRAPHIC SCALE
1" = 200'
SANITAGO DEL VALLE TEN LEAGUE GRANT
ABSTRACT NO. 24
ABS 24 DELVALLE SURVEY
(AUSTIN-BERGSTORM INTERNATIONAL AIRPORT)
(1989.252 AC.)
DOC. NO. 2002002218, O.P.R.T.C.TX.
T.C.A.D. ID: 03-1531-06-01
ABS 24 DELVALLE SURVEY
(AUSTIN BERGSTORM INTERNATIONAL AIRPORT)
(1033.081 AC.)
DOC. NO. 1999015608, O.P.R.T.C.TX.
T.C.A.D. ID: 03-2321-03-02
(SOUTH 11,345.74')
1/2" IRF
N05°35'01"W 6233.50'
S02°59'04"W 4466.08'
P.O.B. (LEASE AREA)
N=10,044,494.22
E=3,137,398.76
N87°26'30"E 465.38'
N16°21'19"E 170.33'
S02°33'30"E 130.10'
N02°39'13"W 110.69'
N02°33'40"W 106.92'
N02°33'30"W 112.45'
N02°33'30"W 131.94'
N34°49'34"W 62.77'
S87°41'20"W 335.00'
N87°22'35"E 375.79'
N87°21'57"E 300.96'
N87°20'47"E 220.47'
N42°29'14"E 386.62'
S47°30'46"E 165.53'
S41°19'42"W 215.92'
N87°20'47"E 768.04'
S87°26'30"W 834.22'
S87°22'32"W 431.05'
S36°30'43"W 59.08'
S02°31'48"E 175.53'
1/2" SET
EXISTING UTILITY CORRIDOR 54
EXISTING UTILITY CORRIDOR 32
EXISTING UTILITY CORRIDOR 30
EXISTING UTILITY CORRIDOR 56
EXISTING UTILITY CORRIDOR 34
LEASE AREA (GROSS)
23.00 ACRES
1,002,031 SQ. FT.
LEASE AREA (NET)
22.66 ACRES
987,129 SQ. FT.
PARKING LOT
SAVE & EXCEPT
0.34 ACRE
14,902 SQ. FT.
P.O.B. (SAVE & EXCEPT)
N=10,044,191.51
E=3,138,090.88
SOUTH TERMINAL BUILDING #10000
L1 L2 L3 L4 L5 L6 L7 L8 L9 L10 L11 L12 L13 L14 L15 L16 L17 L18 L20 L21 L22 L23 L24 L25 L26 L27
C2 C3 C4 C5 C6 C7 C8 C9 C10 C11
LEGEND
● 1/2" IRON ROD
60D NAIL SET
△ CALCULATED POINT
P.O.B. POINT OF BEGINNING
D.R.T.C.Tx. DEED RECORDS OF TRAVIS COUNTY, TEXAS
O.P.R.T.C.Tx. OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS
( ) RECORD INFORMATION SHOWN
—PL— PROPERTY LINE
*SEE PAGE 7 OF 7 FOR LINE & CURVE TABLES
NOTE:
THIS SURVEY WAS PERFORMED WITHOUT THE BENEFIT OF A TITLE REPORT. RECORD INFORMATION ON THIS DRAWING IS BASED ON A PUBLIC RECORDS SEARCH BY THE SURVEYOR AND MAY NOT INCLUDE ALL EASEMENTS OR INSTRUMENTS PERTAINING TO THIS PROPERTY.
BEARING BASIS:
ALL BEARINGS SHOWN HEREON ARE BASED ON THE STATE PLANE COORDINATE SYSTEM OF TEXAS, CENTRAL ZONE (4203), NAD83 (1986). ALL DISTANCES & COORDINATES SHOWN ARE IN GRID.
STATE OF TEXAS REGISTERED CARMELO L. MACIAS 4333 PROFESSIONAL LAND SURVEYOR
Job No.: 87-43-16
Drawn by: P. GUERRERO
Checked by: C. MACIAS
MACIAS & ASSOCIATES, L.P.
LAND SURVEYORS - FIRM NO. 101141-00
5410 SOUTH 1ST STREET
AUSTIN, TEXAS 78745
PH. (512)442-7875 FAX (512)442-7876
WWW.MACIASWORLD.COM
Carmelo L. Macias 11/15/16
Date
Carmelo L. Macias
Registered Professional Land Surveyor
No. 4333 - State of Texas
PAGE 6 OF 7
J:\JOBS\AECOM\87-43-16 ABIA MAIN APRON\DWG\874316.dwg

# SKETCH TO ACCOMPANY LEGAL DESCRIPTION
# SOUTH TERMINAL LEASE AGREEMENT

LINE TABLE

| NO. | BEARING | DISTANCE |
|---|---|---|
| L1 | S41°43'16"W | 68.12' |
| L2 | S41°42'29"E | 6.23' |
| L3 | N41°40'08"E | 203.19' |
| L4 | N02°41'00"W | 115.62' |
| L5 | S02°41'00"E | 64.99' |
| L6 | N53°22'12"W | 142.56' |
| L7 | S72°53'58"W | 96.54' |
| L8 | S42°36'48"W | 53.49' |
| L9 | S42°24'27"W | 29.29' |
| L10 | S02°22'47"E | 126.52' |
| L11 | N87°26'30"E | 20.47' |
| L12 | S87°26'30"W | 122.30' |
| L13 | N81°25'12"W | 102.72' |
| L14 | S87°26'30"W | 24.73' |
| L15 | S02°33'30"E | 32.01' |
| L16 | S87°26'30"W | 14.65' |
| L17 | N88°14'17"E | 20.14' |
| L18 | S87°20'47"W | 125.89' |

CURVE TABLE

| CURVE | RADIUS | LENGTH | DELTA | CHORD DIRECTION | CHORD LENGTH |
|---|---|---|---|---|---|
| C2 | 100.09' | 35.74' | 20°27'32" | N77°33'57"E | 35.55' |
| C3 | 10.00' | 15.70' | 89°58'13" | S47°40'07"E | 14.14' |
| C4 | 80.00' | 83.24' | 59°36'55" | N57°32'20"E | 79.53' |
| C5 | 586.87' | 283.55' | 27°40'58" | S13°50'37"W | 280.80' |
| C6 | 100.00' | 52.86' | 30°17'10" | S57°45'23"W | 52.25' |
| C7 | 101.00' | 79.02' | 44°49'43" | S65°01'39"W | 77.02' |
| C8 | 38.00' | 33.78' | 50°55'47" | S61°58'37"W | 32.68' |
| C9 | 77.00' | 68.36' | 50°51'49" | S61°56'37"W | 66.13' |
| C10 | 24.00' | 7.81' | 18°38'03" | S85°33'11"W | 7.77' |
| C11 | 283.22' | 64.46' | 13°02'28" | S80°30'08"W | 64.32' |

LINE TABLE

| NO. | BEARING | DISTANCE |
|---|---|---|
| L20 | N87°19'00"E | 39.40' |
| L21 | N02°47'58"W | 19.74' |
| L22 | N87°20'24"E | 109.95' |
| L23 | S02°41'00"E | 110.23' |
| L24 | S87°19'00"W | 109.90' |
| L25 | N02°41'00"W | 19.84' |
| L26 | S87°19'00"W | 39.41' |
| L27 | N02°41'00"W | 70.68' |

NOTE:
THIS SURVEY WAS PERFORMED WITHOUT THE BENEFIT OF A TITLE REPORT. RECORD INFORMATION ON THIS DRAWING IS BASED ON A PUBLIC RECORDS SEARCH BY THE SURVEYOR AND MAY NOT INCLUDE ALL EASEMENTS OR INSTRUMENTS PERTAINING TO THIS PROPERTY.

BEARING BASIS:
ALL BEARINGS SHOWN HEREON ARE BASED ON THE STATE PLANE COORDINATE SYSTEM OF TEXAS, CENTRAL ZONE (4203), NAD83 (1986). ALL DISTANCES & COORDINATES SHOWN ARE IN GRID.

Job No.: 87-43-16
Drawn by: P. GUERRERO
Checked by: C. MACIAS

MACIAS & ASSOCIATES, L.P.
LAND SURVEYORS – FIRM NO. 101141-00
5410 SOUTH 1ST STREET
AUSTIN, TEXAS 78745
PH. (512)442-7875 FAX (512)442-7876
WWW.MACIASWORLD.COM



J:\JOBS\AECOM\87-43-16 ABIA MAIN APRON\DWG\874316.dwg

EXHIBIT A 1.2


E=39440 S.F.
(ROUNDABOUT)
B=54880 S.F.
A=22470 S.F.
C=65190 S.F.
D=42830 S.F.
Legends Ln
PROPOSED RESURFACING AREAS
APPROX. 224810 S.F.
12/17/2018
Note: Areas A, B, and E fall within the current leasehold
Areas C and D will be added to current leasehold - per S. Carbajal

# EXHIBIT 4




# Judge Guy Herman

TRAVIS COUNTY PROBATE COURT NO. 1
TRAVIS COUNTY, TEXAS

**Travis County Probate Courthouse, Second Floor**
**200 W. 8th St. – P.O. Box 1748**
**Austin, Texas 78767**
**Phone: (512) 854-9258 Fax: (512) 854-4418**

July 13, 2022

| ***To:*** | ***Address:*** |
|---|---|
| **LONESTAR AIRPORT HOLDINGS, LLC** | c/o Christopher Clough, Attorney of Record<br>808 Nueces Street<br>Austin, Texas 78701<br>clough@barronadler.com |
| **TEXAS CAPITAL BANK** | c/o Robert LeMay<br>901 Main Street, Ste. 5200<br>Dallas Texas, 75202<br>rlemay@krcl.com |

**C-1-PB-22-001462, CITY OF AUSTIN, TEXAS V. LONESTAR AIRPORT HOLDINGS, LLC, AND TEXAS CAPITAL BANK**

A lawsuit has been filed seeking to condemn certain real property alleged to be owned by the defendants listed: LONESTAR AIRPORT HOLDINGS, LLC; TEXAS CAPITAL BANK. **Due to a recent change in § 21.014 of the Texas Property Code, effective January 1, 2022, the process of appointing special commissioners has changed.** In addition to the Court appointing three disinterested persons in this county as special commissioners to assess the damages of the owner of the property being condemned, the Court will appoint two disinterested persons in this county as alternate special commissioners. The alternate special commissioners - in the order listed - will serve as replacements if one of the special commissioners is struck or is unable to serve. As a result of the change in the statute, the Court will no longer send to the parties a letter with a list of proposed special commissioners from which three will be chosen prior to signing an order appointing the special commissioners. Instead, the parties will be able to strike a special commissioner after the Court makes the initial appointment, to be replaced by an alternate special commissioner.

If you have a question about what real property is subject to this action, please contact the attorney representing the condemning authority (see below).

Sincerely,

Guy Herman
Presiding Judge

*XS*
*Thomas J. Forestier*
*600 Travis Street, Ste. 5200*
*Houston, Texas 77002*
*713-650-2749*
*tforestier@winstead.com*

*and*

*Angela C. Rodriguez*
*Assistant City Attorney, City of Austin*
*P.O. Box 1088*
*Austin, Texas 78767*
*512-974-2317*
*AngelaRodriguez@austintexas.gov*

*Copy Enclosed of Order Appointing Special Commissioners*

NO. C-1-PB-22-001462

| | | |
|---|---|---|
| CITY OF AUSTIN, TEXAS | § | PROCEEDINGS IN EMINENT DOMAIN |
| | § | |
| V. | § | IN THE PROBATE COURT NO. 1 |
| | § | |
| LONESTAR AIRPORT HOLDINGS, LLC, AND TEXAS CAPITAL BANK | § | |
| | § | TRAVIS COUNTY, TEXAS |

## ORDER APPOINTING SPECIAL COMMISSIONERS

The Petition of the CITY OF AUSTIN, TEXAS for condemnation was filed herein on the June 17, 2022 and, after consideration, pursuant to § 21.014 of the Texas Property Code, I hereby appoint:

| | | | |
|---|---|---|---|
| **MORRIE SCHULMAN** | 1333 Bonham Terr.<br>Austin, Texas 78704 | (512) 440-0558 | morrie.schulman@gmail.com |
| **THOMAS FRITZ** | 2200 Delcrest Drive<br>Austin, Texas 78704 | (512) 422-9643 | tfritz@fbhg.law |
| **PAUL HEILIGENTHAL** | 6805 Cypress Point North<br>Austin, Texas 78746 | (512) 217-9696 | pauljh1967@gmail.com |

three disinterested freeholders of this County, as Special Commissioners to assess the damages occasioned by such condemnation.

I hereby appoint two disinterested persons in this county as alternate special commissioners, who will serve as a replacement in the order listed if one of the special commissioners is struck or is unable to serve:

| | | | | |
|---|---|---|---|---|
| **Alternate 1:** | **CONRAD MASTERS** | 2411 Willow St<br>Austin, Texas 78702 | (512) 577-0539 | ftexan66@gmail.com |
| **Alternate 2:** | **L C MEYER** | 118 Spellbrook Ln.<br>Lakeway, Texas 78734 | (512) 940-7860 | mlaw11@austin.rr.com |

The parties have until the later of 10 days from the date of this order or 20 days from the date the petition was filed to strike one of the three appointed commissioners.

Signed:
July 13, 2022

Guy Herman

Hon. Guy Herman, Probate Court 1