**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LONESTAR AIRPORT HOLDINGS, LLC** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | **CIVIL ACTION NO. 1:22-CV-00770-RP** |
| **v.** | § | |
| | § | |
| **CITY OF AUSTIN, TEXAS,** | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.      OVERVIEW ........................................................................................................ 1

II.     ARGUMENTS AND AUTHORITIES................................................................ 2

        A.      Legal Standard ......................................................................................... 2

        B.      The Motion Should Be Denied Under the Anti-Injunction Act............................ 3

        C.      Plaintiff Does Not Have a Substantial Likelihood of Prevailing on Its
                Claims. ...................................................................................................... 6

                1.      There Is Not a Substantial Likelihood that Plaintiff Will Prevail on
                        Its Claims that the City Breached Article 15. ............................... 6

                        a.      Article 15 is unenforceable because of an unsatisfied
                                condition precedent.......................................................... 7

                        b.      Plaintiff has no enforceable rights under Article 15.01(b),
                                and any related claims are barred by governmental
                                immunity. .......................................................................... 8

                        c.      Plaintiff's interpretation of Article 15 could violate Texas
                                competitive bidding laws and City ordinances. ................ 9

                2.      The Lease Permits the Condemnation of Plaintiff's Leasehold
                        Interest, Including All Rights Under Articles 2 and 15. ........................... 10

                        a.      The parties contemplated and bargained for the acquisition
                                of the leasehold interest which is the subject of the
                                Condemnation Lawsuit. .................................................... 10

                        b.      The City has not breached Article 2.03. ......................... 12

                        c.      Plaintiff's breach of contract claims are barred by estoppel......... 12

                3.      Plaintiff Is Not Entitled to Recover Its Going-Concern Value, and
                        the City Is Not Taking over Plaintiff's Business. ..................................... 13

                        a.      *Blue Mound* does not apply to the taking and does not bar
                                the City's exercise of the power of eminent domain. .................. 14

                        b.      *Kimball Laundry* is inapplicable and does not entitle
                                Plaintiff to recover its going concern value. ................... 14

                4.      Plaintiff's Takings Claims Are Not Ripe................................................. 18

                5.      Plaintiff's Other Claims Fail as a Matter of Law..................................... 19

        D.      No Threat of Immediate or Irreparable Harm....................................................... 20

        E.      Balance of Equities and Public Interest Disfavor An Injunction.......................... 24

III.    CONCLUSION AND PRAYER ................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amason v. Nat. Gas Pipeline Co.*,
    682 S.W.2d 240 (Tex. 1984)......................................................................................3, 4

*Aptim Corp. v. McCall*,
    888 F.3d 129 (5th Cir. 2018) .........................................................................................3

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*,
    398 U.S. 281 (1970)......................................................................................................3

*AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.*,
    262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.) .................................................16

*Bd. of Regents v. Comanche Apartments, Inc.*,
    568 S.W.2d 449 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e) ...........................19

*Boerschig v. Trans-Pecos Pipeline, LLC*,
    872 F.3d 701 (5th Cir. 2017) .....................................................................................19

*Boerschig v. Trans-Pecos Pipeline, LLC*,
    No. PE:16-CV-00056-RAJ, 2016 U.S. Dist. LEXIS 191266 (W.D. Tex. July
    13, 2016) .......................................................................................................................5

*In re Breviloba, LLC*,
    No. 21-0541, 2022 Tex. LEXIS 614 (Tex. June 24, 2022) (orig. proceeding)....................4, 5

*Brown v. Chastain*,
    416 F.2d 1012 (5th Cir. 1969) .....................................................................................6

*Centex Corp. v. Dalton*,
    840 S.W.2d 952 (Tex. 1992).........................................................................................7

*Church v. Biden*,
    573 F. Supp. 3d 118 (D.D.C. 2021) ..........................................................................24

*City of Blue Mound v. Sw. Water Co.*,
    449 S.W.3d 678 (Tex. App.—Fort Worth 2014, no pet.)....................................13, 14

*City of Bryan v. Page*,
    51 Tex. 532 (1879).....................................................................................................10

*City of Sachse, Tex. v. Kansas City S.*,
    564 F. Supp. 2d 649 (E.D. Tex. 2008)..........................................................................6

*Clear Lake City Water Auth. v. Clear Lake Utils. Co.*,
    549 S.W.2d 385 (Tex. 1977).......................................................................................11

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC,*
576 S.W.3d 362 (Tex. 2019) ...................................................................8, 9, 10

*Dennis Melancon, Inc. v. City of New Orleans,*
703 F.3d 262 (5th Cir. 2012) ...................................................................20

*Embarcadero Techs., Inc. v. Redgate Software, Inc.,*
No. 1:17-cv-444-RP, 2017 U.S. Dist. LEXIS 191317 (W.D. Tex. Nov. 20,
2017) ...................................................................21

*Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.,*
786 F.3d 400 (5th Cir. 2015) ...................................................................20

*GoNannies, Inc. v. GoAuPair.com, Inc.,*
464 F.Supp.2d 603 (N.D. Tex. 2006) ...................................................................21

*Goodyear Shoe Machinery Co. v. Boston Terminal Co.,*
57 N.E. 214 (Mass. 1900) ...................................................................12

*Harris County v. Gordon,*
616 S.W.2d 167 (Tex. 1981) ...................................................................20, 25

*Henderson v. Tex. Commerce Bank-Midland, N.A.,*
837 S.W.2d 778 (Tex. App.—El Paso 1992, writ denied) ...................................................................7

*Henton v. Stephens,*
684 F. App'x 377 (5th Cir. 2017) ...................................................................2

*Hill v. Martin,*
296 U.S. 393 (1935) ...................................................................6

*Holland Am. Ins. Co. v. Succession of Roy,*
777 F.2d 992 (5th Cir. 1985) ...................................................................2, 20

*Holmes v. P.K. Pipe & Tubing, Inc.,*
856 S.W.2d 530 (Tex. App.—Houston [1st Dist.] 1993, no writ) ...................................................................12

*Janvey v. Alguire,*
647 F.3d 585 (5th Cir. 2011) ...................................................................2

*Kimball Laundry Co. v. United States,*
338 U.S. 1 (1949) ...................................................................13, 14, 15, 18

*Knick v. Township of Scott,*
139 S. Ct. 2162 (2019) ...................................................................18, 19

*Lupi v. Diven,*
No. 1:20-cv-207-RP, 2020 U.S. Dist. LEXIS 58933 (W.D. Tex. Apr. 3, 2020) ...................................................................21

*Machetta v. Moren*,
726 F. App'x 219 (5th Cir. 2018) ............................................................5

*Martinez v. Matthews*,
544 F.2d 1233 (5th Cir. 1976) ................................................................3

*Melton v. CU Members Mortg.*,
586 S.W.3d 26 (Tex. App.—Austin 2019, pet. denied).....................12, 13

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)................................................................................5

*Mitchum v. Foster*,
407 U.S. 225 (1972)................................................................................3

*PR Investments & Specialty Retailers, Inc. v. State*,
251 S.W.3d 472 (Tex. 2008)...................................................................4

*Rasmussen v. Hous. & Redevelopment Auth.*,
712 N.W.2d 802 (Minn. Ct. App. 2006)...............................................12

*Reeves v. City of Dallas*,
195 S.W.2d 575 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.) ..........11

*Serna v. Tex. Dep't of State Health Servs.*,
No. 1:15-CV-446-RP, 2015 U.S. Dist. LEXIS 140919 (W.D. Tex. Oct. 16,
2015) ......................................................................................................2

*Seureau v. ExxonMobil Corp.*,
274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008, no pet.)......11, 12, 14, 21

*Simon v. Wal-Mart Stores, Inc.*,
193 F.3d 848 (5th Cir. 1999) ................................................................24

*Star Satellite, Inc. v. Biloxi*,
779 F.2d 1074 (5th Cir. 1986) ..............................................................24

*State v. Bristol Hotel Asset Co.*,
65 S.W.3d 638 (Tex. 2001).....................................................................4

*State v. Cent. Expressway Sign Assocs.*,
302 S.W.3d 866 (Tex. 2009)..................................................................11

*State v. Rogers*,
772 S.W.2d 559 (Tex. App.—Amarillo 1989, writ denied) .................11

*In re State*,
629 S.W.3d 462 (Tex. App.—Austin 2020, orig. proceeding).............4, 6

*Tonahill v. Gulf States Utilities Co.*,
446 S.W.2d 301 (Tex. 1969) ...............................................................................20

*Valley v. Rapides Parish Sch. Bd.*,
118 F.3d 1047 (5th Cir. 1997) ...............................................................................2

*Weingarten Realty Inv'rs v. Albertson's, Inc.*,
66 F. Supp. 2d 825 (S.D. Tex. 1999) ...................................................................19

**Statutes**

28 U.S.C. § 2283 ........................................................................................................3

Tex. Gov't Code Ann. § 2269.101(b) .......................................................................10

Tex. Loc. Gov't Code Ann. § 252.021(a) .................................................................10

Tex. Loc. Gov't Code Ann. § 252.061 .....................................................................10

Tex. Loc. Gov't Code Ann. §§ 271.151(2)(A), 271.152 ...........................................8

Tex. Loc. Gov't Code Ann. § 271.153(b) ...................................................................9

Tex. Prop. Code Ann. § 21.012 ..........................................................................4, 6

Tex. Prop. Code Ann. § 21.014(c) ............................................................................4

Tex. Prop. Code Ann. § 21.044 ..............................................................................20

Tex. Transp. Code Ann. § 22.011(c) .......................................................................14

Tex. Transp. Code Ann. § 22.011(d) .......................................................................13

**Other Authorities**

Fed. R. Civ. P. 65(c) ...............................................................................................25

Austin, Tx., Charter, Art. VII, Finance § 15 ..........................................................10

Defendant THE CITY OF AUSTIN, TEXAS (the "City"), responds in opposition to Plaintiff's Motion for Preliminary Injunction (the "Motion") (Dkt. No. 20.)

## I.     OVERVIEW

The Austin-Bergstrom International Airport ("AUS") is one of the fastest growing airports in the country. In July 2021, AUS leadership announced that the City wanted to buy Plaintiff's leasehold interest in the South Terminal and would demolish the South Terminal within two years to make room for new midfield taxiways as part of the $4 billion Airport Expansion & Development Program ("AEDP"). (Dkt. No. 20-2, Ex. A-10.) The City explained that, failing an agreement, it would exercise its condemnation rights under Article 34 of the lease. Plaintiff responded by telling the media: "The airport's pursuit of eminent domain ignores the 40-year lease obligation to LoneStar and will result in years of expensive, time consuming litigation, delaying expansion plans even further."[1] The City filed a condemnation lawsuit in Travis County Probate Court No. 1 on June 17, 2022, after exhausting efforts to acquire the leasehold interest by agreement. (Dkt. No. 20-4, Ex. 3.)[2] On August 1, 2022, Plaintiff filed this lawsuit to carry out its baseless threat a year before to drag the City through unnecessary, expensive, and time-consuming litigation and to delay the much-needed expansion of AUS.

The Court should deny the Motion for several reasons. First, the Court should abstain from exercising jurisdiction over Plaintiff's claims because those claims can all be resolved in the

---

[1]     *See Company That Runs Austin Airport's South Terminal Sues the City*, KVUE (Aug. 2, 2022), https://www.kvue.com/article/news/local/austin-airport-south-terminal/269-d222e8f7-4837-4a2e-b39f-ec69addfa801 (last visited Sept. 22, 2022).

[2]     Cause No. C-1-PB-22-001462; *City of Austin, Texas v. LoneStar Airport Holdings, LLC, and Texas Capital Bank*; Condemnation Proceeding; In Probate Court No. 1 of Travis County, Texas (the "Condemnation Lawsuit").

Condemnation Lawsuit.[3] Alternatively, the Motion should be denied because it seeks to enjoin an underlying state-court condemnation lawsuit between the same parties in violation of the Anti-Injunction Act. Lastly, the Motion fails to establish a likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favors the requested relief.

## II.    ARGUMENTS AND AUTHORITIES

### A.    LEGAL STANDARD

Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Holland Am. Ins. Co. vs. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Thus, the decision to grant a preliminary injunction is the exception rather than the rule. *Serna v. Tex. Dep't of State Health Servs*., No. 1:15-CV-446-RP, 2015 U.S. Dist. LEXIS 140919, at *10–11 (W.D. Tex. Oct. 16, 2015); *Valley v. Rapides Parish Sch. Bd*., 118 F.3d 1047, 1050 (5th Cir. 1997). To secure preliminary injunctive relief, Plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable injury if the injunction is not issued; (iii) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (iv) that the grant of the injunction will not disserve the public interest. *Janvey v. Alguire,* 647 F.3d 585, 595 (5th Cir. 2011). At this preliminary stage, Plaintiff bears the "heavy burden of persuading the district court that all four elements are satisfied," and Plaintiff's failure to carry the burden on any one of the elements will result in a denial of injunctive relief. *See Henton v. Stephens*, 684 F. App'x 377, 378 (5th Cir. 2017).

Plaintiff asks this Court to enjoin the City from excluding Plaintiff from the development and construction of "New Facilities" at the airport in connection with the City's AEDP. Plaintiff

---

[3]   The City hereby incorporates herein by reference the Motion for Abstention filed contemporaneously with this Motion. (Dkt. No. 29.)

in essence seeks mandatory relief to force the City to include Plaintiff in the AEDP's construction and development. Requests for mandatory relief are "particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). As shown below, Plaintiff cannot carry its heavy burden that would entitle it to any of its requested injunctive relief.

**B.      THE MOTION SHOULD BE DENIED UNDER THE ANTI-INJUNCTION ACT.**

Plaintiff's request to enjoin the City from "attempting to take possession" of the South Terminal leasehold interest is a veiled attempt to enjoin the underlying Condemnation Lawsuit itself. That attempt is barred by the Anti-Injunction Act (the "AIA"). 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). The AIA "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions."[4] *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The AIA's "basic purpose is to prevent needless friction between state and federal courts." *Mitchum*, 407 U.S. at 233 (1972) (internal quotation marks and citations omitted). "Any doubts about the 'propriety of a federal injunction . . . should be resolved in favor of permitting the state courts to proceed . . . . The explicit wording of [the AIA] itself implies as much.'" *Aptim Corp. v. McCall*, 888 F.3d 129, 143 (5th Cir. 2018) (quoting *Atl. Coast Line R. Co.*, 398 U.S. at 297).

A Texas condemnation lawsuit involves a two-step process that includes an administrative phase, and then later, only if necessary, a judicial phase. *See Amason v. Nat. Gas Pipeline Co.*, 682

---

[4]   Plaintiff's Section 1983 claims are an exception to the AIA. *See Mitchum v. Foster*, 407 U.S. 225, 243 (1972). But, as addressed below in section II.C.4, those claims are not ripe and thus are not a proper basis for injunctive relief.

S.W.2d 240, 241 (Tex. 1984). The administrative phase commences upon the filing of a condemnation petition. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 640 (Tex. 2001); TEX. PROP. CODE ANN. § 21.012. The court-appointed Special Commissioners have the authority to hold a hearing, assess damages, and file in the proper court an award of adequate compensation for the condemnation.[5] *Amason*, 682 S.W.2d at 241–42. "[A]t the administrative phase 'the parties often accept the Commissioners' decision or settle their differences shortly after the award is made . . . . Many eminent domain proceedings are thus brought to a prompt and reasonably satisfactory conclusion with a minimum of expense and inconvenience to the parties.'" *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 478 (Tex. 2008). The Texas Supreme Court recognizes that "[s]uch pretrial settlements should be encouraged." *Id.* The trial court is not divested of jurisdiction during the administrative phase; it is merely limited in its jurisdiction to perform specific functions. *In re State*, 629 S.W.3d 462, 466 (Tex. App.—Austin 2020, orig. proceeding).

The judicial phase begins after the Special Commissioners file their award and any dissatisfied party files objections with the trial court. *Id.* The Texas trial court[6] has the right to try and decide all questions that may fairly arise out of, or in connection with, a condemnation lawsuit, other than questions of title, regardless of the amount in controversy. *See In re Breviloba, LLC*, No. 21-0541, 2022 Tex. LEXIS 614, at *3–4 (Tex. June 24, 2022) (orig. proceeding). *In re Breviloba* involved counterclaims brought by a property owner who challenged a condemnor's

---

[5]   The Special Commissioners may also "compel the attendance of witnesses and the production of testimony, administer oaths, and punish for contempt in the same manner as a county judge." TEX. PROP. CODE ANN. § 21.014(c).

[6]   In the Condemnation Lawsuit, the Travis County Probate Court No. 1 has responsibility for the case through the filing of the Special Commissioners' award, and, in the absence of objections to the award, through completion of the case. If a party objects to the award, one of the two Travis County Courts at Law assumes responsibility for the case through its conclusion. *See* TRAVIS (TEX.) CCL LOC. R. 2.15.

exercise of the power of eminent domain, asserted state-law claims, and sought over $13 million in compensation. *Id*. at *2. Plaintiff in this case similarly challenges the City's exercise of its eminent domain power, asserts state-law claims, and seeks to recover tens, if not hundreds, of millions of dollars in compensation. All of Plaintiff's claims arise from the City's exercise of its eminent domain power by filing the Condemnation Lawsuit. Plaintiff's unlawful taking claims, request for declaratory relief, and contract claims all relate to the City's condemnation of Plaintiff's leasehold interest.[7]   Accordingly, Plaintiff's claims, although meritless, may be asserted as counterclaims and adjudicated in the county court at law after the administrative phase is complete. *In re Breviloba*, 2022 Tex. LEXIS 614, at * 9; *see also Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (state court is adequate forum for constitutional claims); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard constitutional rights.").

United States District Judge Robert A. Junell held in a similar case that the AIA bars enjoining an underlying eminent-domain proceeding. *Boerschig v. Trans-Pecos Pipeline, LLC*, No. PE:16-CV-00056-RAJ, 2016 U.S. Dist. LEXIS 191266, at *9–10 (W.D. Tex. July 13, 2016) ("[T]he [AIA], prohibits a federal court from enjoining a state court condemnation proceeding that has already commenced."), *aff'd* 872 F.3d 701 (5th Cir. 2017). Although the Fifth Circuit affirmed the case without reaching this issue, other Fifth Circuit authority recognizes that "[t]he term 'proceedings' in [the AIA] has been defined with the greatest degree of latitude and includes 'all

---

[7]   For example, Plaintiff's Article 15 claim expressly stems from the condemnation. (Dkt. No. 1 at ¶ 162) ("Because the City both refused to compensate Lonestar for its Article 15 rights through condemnation while also refusing to honor those rights with respect to the New Facility, the City breached (and continues to breach) Article 15 and is liable to Lonestar for damages flowing from that breach.")

steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process.'" *Brown v. Chastain*, 416 F.2d 1012, 1022 n.12 (5th Cir. 1969) (citing *Hill v. Martin*, 296 U.S. 393, 403 (1935)).

The Condemnation Lawsuit falls within the broad definition of "proceedings" under the AIA. Regardless of whether the case is in the administrative or judicial phase, the actions taken in the Condemnation Lawsuit by the court or the Special Commissioners are part of the "steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process" for a condemning authority to obtain a final judgment. *Id.* (citing *Hill*, 296 U.S. at 403). Although the underlying case is currently in the administrative phase, the proceeding commenced upon filing the condemnation petition. *City of Sachse, Tex. v. Kansas City S.*, 564 F. Supp. 2d 649 (E.D. Tex. 2008) (recognizing a state-court eminent-domain proceeding, even during the administrative phase, is a "civil action"); TEX. PROP. CODE ANN. § 21.012(a). The City invoked the state court's jurisdiction to fulfill its statutory obligations under the Texas eminent-domain process. *In re State*, 629 S.W.3d at 466. Accordingly, the underlying condemnation is a "proceeding" in a state court that cannot be enjoined under the AIA.

## C.    PLAINTIFF DOES NOT HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON ITS CLAIMS.

### 1.    THERE IS NOT A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFF WILL PREVAIL ON ITS CLAIMS THAT THE CITY BREACHED ARTICLE 15.

Article 15 of the Lease provides:

> If Tenant provides a written notice to Owner that it is interested in investing in such Expansion or New Facility, then, ***subject to Owner's agreement*** and in accordance with the Airport Master Plan, (a) in the event of an Expansion that does not require additional land or other material changes to this Lease, Owner and Tenant will amend this Lease to reflect such Expansion, and (b) ***in the event of*** an Expansion that requires additional land ***or the construction of a New Facility***, Owner will provide Tenant ***with the exclusive first right to, as applicable, develop, construct and operate such*** Expansion or ***New Facility***, ***and both Parties shall work together in good***

*faith to enter into an agreement* regarding such Expansion or *New Facility on mutually agreeable terms*.[8]

### a.   Article 15 is unenforceable because of an unsatisfied condition precedent.

The alleged "exclusive first right"[9] to "develop, construct, and operate" an "Expansion" or a "New Facility" is "subject to Owner's agreement" or, in other words, a condition precedent. (Dkt. No. 20 at 9.) "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). The phrase "subject to" means "that any agreement between the parties was based on satisfaction of the conditions precedent." *Henderson v. Tex. Commerce Bank-Midland, N.A.*, 837 S.W.2d 778, 781 (Tex. App.—El Paso 1992, writ denied).

The phrase "subject to Owner's agreement" creates a condition precedent requiring that the City must agree before Plaintiff can exercise its "exclusive first right" to develop, construct, and operate any "Expansion" or "New Facility." *See id.* Plaintiff provided notice to the City on July 28, 2021, that it "is interested in investing in and exercising its rights under Article 15 of the [Lease] to develop, construct, and/or operate any such New Facility." (Dkt. No. 20-3, Ex. B-3.) The City has not agreed to Plaintiff's request, which Plaintiff does not dispute. (Dkt. No. 20-3 Ex. B at ¶ 31.) Article 26.08 of the Lease confirms that the City has "absolute discretion" to determine what is "necessary" and "appropriate" when it comes to developing and improving the "[a]irport and all roadways, terminal facilities, land areas and taxiways and any other facilities at the [a]irport." (Dkt. No. 20-2, Ex. A-1 at Art. 26.08.) Without the City's consent, the condition

---

[8]   (Dkt. No. 20-2, Exhibit A-1 at Art. 15 (emphases added).)

[9]   Plaintiff claims the "exclusive first right" in Article 15 gives it a "contractually guaranteed right to develop and construct" New Facilities under AEDP. (Dkt. No. 20 at 9.) As explained in section C.1.c. below, the alleged "exclusive first right" could potentially violate Texas competitive bidding laws depending on the nature of the contract.

precedent of Article 15 is not met, and Plaintiff is not entitled to exercise the right to "develop, construct and operate" any part of the AEDP. Accordingly, Plaintiff has no enforceable rights under Article 15 due an unsatisfied condition precedent.

      **b.**    **Plaintiff has no enforceable rights under Article 15.01(b), and any related claims are barred by governmental immunity.**

It is well established that an agreement to negotiate toward a future contract is not legally enforceable because it lacks the "essential terms" of a legally enforceable agreement. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 371 (Tex. 2019). In *Vizant*, a private contractor sued the Dallas/Fort Worth International Airport Board for breach of contract claiming the Board failed to make a good-faith effort to obtain authorization for a payment higher than the amount stipulated in the parties' contract. The Texas Supreme Court held that the "good faith effort to agree" clause was an unenforceable "promise to negotiate toward a future bargain in good faith." *Id*. Therefore, under the *Vizant* decision, Article 15's language that "both Parties shall work together in good faith to enter into an agreement . . . on mutually agreeable terms" is an unenforceable agreement to negotiate in good faith towards a future contract. *Id.*; (Dkt. No. 20-2, Ex. A-1 at Art. 15.01(b).)

The lack of essential terms presents another obstacle for Plaintiff based on the City's governmental immunity. *Vizant* further held that, in failing to state essential terms, the contract is not a contract subject to the Texas Local Government Code's statutory waiver of immunity. *Id.*; TEX. LOC. GOV'T CODE ANN. §§ 271.151(2)(A), 271.152. Similar to the unenforceable promise in *Vizant*, Article 15.01(b) lacks the essential terms because it expressly contemplates the parties would have to agree to "mutually agreeable terms" that were unspecified at the inception of the Lease and remain so to this day. Accordingly, Article 15 does not fall within the statutory waiver of immunity. *Vizant*, 576 S.W.3d at 371. Moreover, the parties contemplated the application of

Texas Local Government Code § 271.152 while drafting the Lease and took additional measures to ensure its safeguards. Article 41.11 of the Lease states, "Owner does not waive, and expressly reserves, all immunities existing under Applicable Law available to Owner as a Texas home-rule municipal corporation." (Dkt. No. 20-2, Ex. A-1 at Art. 41.11.)

*Vizant* presents yet a third obstacle for Plaintiff by holding that, even if the contract stated the essential terms, the remedy for breach of a promise to negotiate in good faith would be consequential damages, for which there is no waiver of immunity under Texas Local Government Code 271.153(b). *Vizant*, 576 S.W.3d at 373–74; TEX. LOC. GOV'T CODE ANN. § 271.153(b). Plaintiff also expressly waived the recovery of consequential damages in the Lease. (Dkt. No. 20-2, Ex. A-1 at Art. 41.12.) Even if the parties made a good-faith effort to negotiate a future bargain relating to Plaintiff's involvement in the AEDP, the Austin City Council could still refuse to approve the resulting agreement for any number of reasons, for which Plaintiff would have no contractual remedy. *See infra* II.A.1.c.

In conclusion, Article 15 contains an unenforceable agreement to negotiate in good faith toward a future contract, and it lacks essential terms, which causes any claim for breach of Article 15 to be barred by governmental immunity. Additionally, even assuming Article 15 included essential terms, any recovery under that provision is limited to consequential damages, which Plaintiff contractually waived and are likewise barred by governmental immunity. *Id*. at 373–74; (Dkt. No. 20-2, Ex. A-1 at Art. 41.12.)

> **c.    Plaintiff's interpretation of Article 15 could violate Texas competitive bidding laws and City ordinances.[10]**

Plaintiff claims Article 15 gives it a "contractually guaranteed right to develop and

---

[10]   Article 18.01 of the Lease requires the City to operate and maintain the Airport as a public airport in accordance with the requirements of the Federal Aviation Act and all other "Applicable Laws." (Dkt. No. 20-2, Ex. A-1 at Art. 18.01.) Similarly, Article 26.05 entitled

construct" New Facilities under AEDP. (Dkt. No. 20 at 9.) If true, Article 15 potentially violates

Texas competitive bidding laws. Chapter 252 of the Local Government Code requires that a

municipality engage in competitive bidding before entering into a contract requiring expenditures

of more than \$50,000 from municipal funds. TEX. LOC. GOV'T CODE ANN. § 252.021(a). The

development phase of AEDP has a budget of \$4 billion.[11] A municipality may only enter into a

contract for construction of a public facility after complying with the competitive bidding

procedures. TEX. GOV'T CODE ANN. § 2269.101(b). Failing to follow these competitive bidding

laws could result in a void or voidable contract that may be enjoined. *Id.* § 2269.451, .452(a); TEX.

LOC. GOV'T CODE ANN. § 252.061. In addition, any agreement that might have been reached under

Article 15 could still require approval by the Austin City Council. AUSTIN, TX., CHARTER, ART.

VII, FINANCE § 15; *City of Bonham v. Sw. Sanitation, Inc.*, 871, S.W,2d 765, 767 (Tex. App.—

Texarkana 1994, writ denied); *City of Bryan v. Page*, 51 Tex. 532, 535 (1879). (Dkt. No. 20-2, Ex.

A-1 at Art. 15.) Article 15 does not and could not guarantee that approval. *See Vizant*, 576 S.W.3d

at 373–74 (recognizing that any future agreements with the airport board still required approvals

that would contain their own independent contingencies).

**2.   THE LEASE PERMITS THE CONDEMNATION OF PLAINTIFF'S LEASEHOLD INTEREST, INCLUDING ALL RIGHTS UNDER ARTICLES 2 AND 15.**

**a.   The parties contemplated and bargained for the acquisition of the leasehold interest which is the subject of the Condemnation Lawsuit.**

Article 34 of the Lease is entitled "**CONDEMNATION AND BUSINESS**

---

"Compliance with Laws" requires Plaintiff to comply with all "Applicable Laws" in its use and occupancy of the Lease premises. (*Id*. at Art. 26.05) Applicable Laws include, among other things, "all applicable federal, state, and local laws, codes, ordinances, rules, regulations, judgments, decrees or directives of any Governmental Authority." (*Id.* at Art. 1.01.)

[11]   *See* City of Austin May 3, 2022 Press Release, available at https://www.austintexas.gov/news/aus-secures-400-million-funding-airport-expansion-and-development-program-projects (last visited Sept. 22, 2022).

**INTERRUPTION**.” (Dkt. No. 20-2, Ex. A-1 at Art. 34.) It first provides that the Lease shall terminate, if the “entire Tenant’s Interest” is taken, when the condemning authority takes possession. (*Id*. at Art. 34.01.) It further states: “If the condemning authority is the City, Tenant shall be entitled to compensation for the Fair Market Value of Tenant’s Interest so taken.” (*Id*. at Art. 34.03.) “Tenant’s Interest” is defined as “all Tenant’s right, title and interest in, to, under or derived from this Lease, including the rights of Tenant under Article 2 and Article 15, and the Trade Fixtures.” (*Id*. at Art. 1.01)

There are fundamental Texas legal principles that apply to the interpretation of Article 34. First, it is well settled that “[l]oss of business, profits, good will, fixtures, and costs of removal and the like suffered by the tenants are obviously not lands or real estate, or rights or interest therein” and that “such damages are ‘consequential, and so remote and uncertain as to be incapable of just computation.’” *Reeves v. City of Dallas*, 195 S.W.2d 575, 583 (Tex. Civ. App.—Dallas 1946, writ ref’d n.r.e.).[12] The condemnor takes the real property, not the business, and the owner is free to continue his or her business at another location. *Id. at* 582–83. “Texas courts have refused to consider business income in making condemnation awards even when there is evidence that the business’s location is crucial to its success.” *State v. Central Expressway Sign Assocs*., 302 S.W.3d 866, 871 (Tex. 2009); *State v. Rogers*, 772 S.W.2d 559, 561-62 (Tex. App.—Amarillo 1989, writ denied).

Second, a “governmental entity may not agree to a contract provision that would limit the free exercise of its governmental powers.” *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 225 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Clear Lake City Water Auth. v. Clear*

---

[12]   Plaintiff acknowledged this fundamental rule of law when its CEO stated that “the value of a going concern is not ordinarily compensable in a condemnation case.” Exhibit A-2 at 2.

*Lake Utils. Co.*, 549 S.W.2d 385, 391 (Tex. 1977). "[A] contract that restricts a governmental entity's freedom to decide whether to initiate eminent domain or condemnation proceedings would be illegal and void." *Seureau*, 274 S.W.3d at 225.

The Lease recognizes that Plaintiff agreed to the City's right to condemn the Tenant's Interest, including any rights under Article 2 and Article 15, which defeats Plaintiff's claims that the City has breached those articles. Moreover, Plaintiff's claims regarding Articles 2.03 and 15 require this Court to find that those provisions somehow restrict the City's power of eminent domain, which would necessarily make the provisions illegal and void. *See id*.

> **b.      The City has not breached Article 2.03.**

At least two courts have held that the exercise of the power of eminent domain is not a breach of the quiet-enjoyment covenant in a lease. *Goodyear Shoe Machinery Co. v. Boston Terminal Co.*, 57 N.E. 214, 215 (Mass. 1900); *see also Rasmussen v. Hous. & Redevelopment Auth.*, 712 N.W.2d 802, 807 (Minn. Ct. App. 2006) (holding that the landlord/condemnor did not breach the quiet-enjoyment covenant when it condemned the leasehold interest).

Further, Plaintiff's breach of quiet enjoyment claim is not ripe. "A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission." *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ). Plaintiff has not been evicted or constructively evicted at this time. Accordingly, Plaintiff's argument that the City's exercise of eminent domain violates section 2.03 of the Lease is without merit, violates Texas law, is not ripe, and cannot be grounds for a preliminary injunction.

> **c.      Plaintiff's breach of contract claims are barred by estoppel.**

Plaintiff is estopped from asserting breach of contract claims under the doctrine of estoppel by contract. *Melton v. CU Members Mortg.*, 586 S.W.3d 26, 32 (Tex. App.—Austin 2019, pet.

denied). Estoppel by contract is premised on the notion that a party to a contract cannot, to the prejudice of another, take a position inconsistent with the contract's provisions. *Id*. All of Plaintiff's breach of contract claims are based on the City exercising its condemnation rights under Article 34. Thus, Plaintiff is taking a position inconsistent with Article 34 to the prejudice of the City and is estopped from asserting any breach of contract claims based on the City's exercise of rights under Article 34.

### 3.   PLAINTIFF IS NOT ENTITLED TO RECOVER ITS GOING-CONCERN VALUE, AND THE CITY IS NOT TAKING OVER PLAINTIFF'S BUSINESS.

The City filed the Condemnation Lawsuit in order to carry out its plans to demolish the South Terminal to facilitate AEDP—the City will not operate Plaintiff's business as a going concern.[13] The City is statutorily authorized to take Plaintiff's leasehold for airport purposes. TEX. TRANSP. CODE ANN. § 22.011(d). In a desperate attempt to avoid the consequences of the general rule discussed in *Reeves*, *Cent. Expressway*, and *Rogers* above, Plaintiff invokes case law regarding the taking of going-concern value that does not apply to this dispute. Importantly, Plaintiff does not cite a single case involving a lease agreement that expressly contemplates the landlord's condemnation of the tenant's interest in its entirety like the Lease that is the subject of the Condemnation Lawsuit. For that reason alone, this Court should reject Plaintiff's reliance on *Blue Mound*, *Kimball Laundry*, and related decisions. In any event, as explained below, those cases are inapposite without regard to the absence of a pre-existing lease agreement between the parties.

---

[13]   FAA's Finding of No Significant Impact (FONSI) and Record of Decision (ROD) ("FAA FONSI") attached hereto as Exhibit A-1 at 5.1.4 ("The South Terminal would be demolished in order to accommodate the new Crossfield taxiways"); (Dkt. No. 20-3, Ex. B-3) (Plaintiff acknowledges City's intent to remove the South Terminal for the construction of New Facilities); (Dkt. No. 20-3, Exs. B-6 & B-7) (discussing need to remove South Terminal for new midfield taxiways)

       **a.**    ***Blue Mound* does not apply to the taking and does not bar the City's exercise of the power of eminent domain.**

*Blue Mound* involved a municipality that attempted to acquire an entire public water and wastewater utility system. *City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678, 680 (Tex. App.—Fort Worth 2014, no pet.). The court of appeals found that the existing statutes did not grant the city the right to condemn the public water utility as a going concern, nor did they provide a "mechanism or method" for compensating the public utility owner for its going concern. *Id*. at 690, 692–93. The court focused on the condemnee's status as a monopoly and reasoned that "a privately-owned utility company cannot simply move to another location and reopen its utility business on a different parcel of real property." *Id.* at 684.

Here, Plaintiff is neither a public utility nor a monopoly. Nor does it claim to be.[14] The Lease is the sole source of all of the rights Plaintiff owns in the subject property. The City granted those lease rights subject to a condemnation clause, Article 34, and the City's condemnation power as a matter of Texas common law. *Seureau*, 274 S.W.3d at 225. *Blue Mound* does not apply to this dispute for these reasons alone. *See Blue Mound*, 449 S.W.3d at 684. Further, unlike the eminent domain statutes the court of appeals found lacking in *Blue Mound*, the City has express statutory authority to condemn airport facilities. TEX. TRANSP. CODE ANN. § 22.011(c). Thus, *Blue Mound* provides no basis for granting an injunction.

       **b.**    ***Kimball Laundry* is inapplicable and does not entitle Plaintiff to recover its going concern value.**

*Kimball Laundry* involved the federal government's *temporary* condemnation of an entire laundry facility for army occupancy and use as a laundry. *Kimball Laundry Co. v. United States*,

---

[14] In fact, Plaintiff rightfully admits that the City, rather than Plaintiff, is a monopoly. *See* Exhibit A-2 at 2. This admission fatally renders *Blue Mound* and the other similar cases involving "public utility" property owners inapplicable to this lawsuit.

338 U.S. 1, 3 (1949). The Court reasoned that the laundry owner was entitled to recover its going-concern value because, once the government condemned and continued to operate the business, the former owner could no longer duplicate the facilities at a profit. *Id*. at 13–14. The rationale in *Kimball Laundry*, however, is limited to the fact that the owner's "investment remained bound up in the reversion of the property." *Id. Kimball Laundry* recognized that if the taking were in fee, rather than temporary, then the amount of compensation "should not include speculative losses consequent upon realization of the remote possibility that the owner will be unable to find a wholly suitable location for the transfer of going-concern value." *Id.* at 15.

Unlike the federal government in *Kimball Laundry*, the City is not acquiring the leasehold interest in order to operate Plaintiff's business.[15] The purpose of the taking is to remove the South Terminal to facilitate expanding taxiways at the airport in accordance with AEDP.[16] The City's condemnation of the leasehold interest is permanent,[17] unlike the temporary taking in *Kimball Laundry*, and the amount of compensation should not include speculative losses relating to Plaintiff's alleged inability to find a suitable location for the transfer of its going-concern value.

---

[15]  *See* Exhibit A-1 FAA FONSI at 5.1.2-5.1.4. Plaintiff incorrectly claims the City intends to run the South Terminal and thus Plaintiff's "business" until at least 2024. (Dkt. No. 20-3, Ex. B at ¶ 49, Ex. B-8 at p. 32.) That statement is false and misstates the facts. The City has maintained since July 2021 that the South Terminal needs to be demolished for the sake of new midfield taxiways as part of AEDP. *See* (Dkt. No. 20-2, Ex. A-10.) There must be a transition process in order to relocate in an orderly fashion the airlines, vendors, contractors, and other occupants of the South Terminal, while protecting also the interests of their employees and the passengers. The aviation consulting report attached to the Motion explains the multiple and sequenced phases in AEDP covering a six-year period beginning in 2022 for the $4 billion expansion of AUS. (Dkt. No. 20-3, Ex. B-8 at A-61 to A-64.) The City has been open and transparent about the need for a transition process regarding the South Terminal. (Dkt. No. 20-3, Exs. B-6 & B-7.)

[16]  (Dkt. No. 20-2, Ex. A-10.)

[17]  The City already owns the lease premises in fee, which explains why it only needs to condemn the leasehold interest. Also, under Article 9.12, the City does not owe any compensation to the Plaintiff for the improvements, including the South Terminal itself, upon termination of the Lease, which occurs under Article 34 upon the City taking possession of the lease premises.

The Austin Court of Appeals rejected similar arguments made by a tenant seeking going-concern value who alleged that no alternative location existed to continue its business. *AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 584 (Tex. App.—Austin 2008, no pet.). In *AVM*, Capital Metropolitan Transit Authority ("CapMetro") condemned an entire fee tract with a leasehold belonging to AVM, a tenant operating an adult video store. *Id.* at 576. Zoning restrictions prevented AVM from finding a new location in Austin. *Id.* AVM eventually filed an inverse-condemnation lawsuit seeking to recover its alleged going-concern value claiming there was no suitable alternative location for its business. *Id.* at 577. The *AVM* court rejected that claim and held that, "while temporary takings may 'inevitably' deprive the owner of the going-concern value, takings of fee title, as a matter of law, do not." *Id.* at 584. Thus, CapMetro successfully condemned AVM's leasehold interest, and AVM failed in its subsequent inverse-condemnation lawsuit to recover lost going-concern value due to the condemnation. *Id.*

In any event, Plaintiff's allegations that the loss of its leasehold interest will destroy its business are conclusory and speculative at best. Indeed, Oaktree Capital Management, L.P. ("Oaktree"), who controls Plaintiff, also owns interests in other "Portfolio Companies" similar to Plaintiff that provide development, construction, financing, management, design, and operational and consulting services to the aviation industry across the United States.[18]

---

[18] *See Infrastructure Investing Portfolio Companies*, OAKTREE https://www.oaktreecapital. com/portfolio-companies/infrastructure-investing (last visited Sept. 22, 2022), listing American Corporate Airport Partners ("ACAP"), LLC, OTG Management, and Plaintiff in a group of "Current Portfolio Companies" and Aerostar Airport Holdings, LLC, London City Airport Limited, and Signature Aviation as "Past Portfolio Companies" who provide or have provided a myriad of services to all aspects of the aviation industry. Mr. James D. Burchetta, who offers testimony in Exhibit A to the Motion in his capacity a Managing Director of Oaktree's Transportation Infrastructure Investing Group and a Board member of Plaintiff, also serves as a Board member of ACAP. *See Our Team*, ACAP, https://acapinfra.com/our-team (last visited Sept. 22, 2022). ACAP is described as a portfolio company of Oaktree's Infrastructure Investment Group, which was formed by Oaktree, "a global leader among

Plaintiff describes its business as follows: "LoneStar Airport Holdings, LLC is a private organization engaged in the development, management and operation of airport terminal buildings." *See* LinkedIn, https://www.linkedin.com/company/lonestar-airport-holdings-llc/about/ (last visited Sept. 22, 2022). There are nearly 400 public airports in Texas and a total of nearly 20,000 airports in the United States. *See Tex. Airport Directory*, TEX. DEP'T OF TRANSP., https://www.txdot.gov/content/txdotreimagine/us/en/home/discover/texas-airport-directory.html (last visited Sept. 22, 2022); *Number of U.S. Airports*, US DOT (Apr. 20, 2022), https://www.bts.gov/content/number-us-airportsa (last visited Sept. 22, 2022). Plaintiff is a Delaware limited liability company, and its sole member is a Delaware corporation with its principal place of business in New York. (Dkt. No. 1 at ¶ 24.)

Plaintiff offers no evidence on why it would be unable to pursue similar leases, contracts, or other business opportunities at other airports in Texas or the United States. To the contrary, Plaintiff is actually engaged in business activities with at least one other Texas airport—the San Antonio International Airport, which is located so close to AUS (83 miles) that passengers departing from either airport have airline service options from either airport. (Dkt. No. 20-3, Ex. B-8, App'x A at A-20.) In 2019 and 2020, Plaintiff served as the registered agent for WesternSAT Leasing, Inc. ("WesternSAT"), a subsidiary of ACAP.[19] Exhibit A-3. According to published reports, WesternSAT is providing financing for the construction of a corporate hangar facility at the San Antonio International Airport.[20] The Aviation Director for the City of San Antonio at the

---

alternative investment managers, with $140 billion in Assets Under Management as of 09/30/2020." *Id.*

[19]   *See* Exhibit A-3, WesternSATLeasing, Inc.'s Statement of Change of Registered Office/Agent dated Nov. 19, 2019, Texas Secretary of State.

[20]   *See Oaktree Makes $100 Million Commitment to American Corporate Airport Partners, a Strategic Partnership between Oaktree and Western LLC*, AVIATIONPROS (Jan. 24, 2019), https://www.aviationpros.com/airports/airports-municipalities/press-release/12441001/

time reportedly said at the March 2019 groundbreaking ceremony: "this $25 million multi-hangar development initiative is the largest single private or corporate capital project in San Antonio International Airport's history. This new development is projected to be the centerpiece of the airport facilities and is part of our strategic plan to raise the bar."[21]

After converting to a limited liability company in 2020, WesternSAT changed its registered agent from Plaintiff to Ms. Kimberly B. Dorrien, who serves as Plaintiff's CFO.[22] Ms. Dorrien shows Plaintiff's address at the South Terminal as her address as the registered agent for WesternSAT.[23] Mr. Burchetta, who has a leadership position with Oaktree and serves as a Board member for Plaintiff and ACAP, also serves as a member of WesternSAT Leasing, LLC.[24] Therefore, Plaintiff is already engaged in business activities at one other airport at least and has demonstrated the ability to pursue business opportunities at other airports.

Accordingly, *Kimball Laundry* provides no basis for granting an injunction.

### 4.   PLAINTIFF'S TAKINGS CLAIMS ARE NOT RIPE.

A property owner's claims under the Takings Clause become ripe "as soon as a government takes his property for public purpose without paying for it." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019). "When statutory condemnation procedures are utilized, a "taking" occurs when the condemnor takes actual possession of the property or takes constructive possession by

---

[21]   oaktree-makes-100-million-commitment-to-american-corporate-airport-partners-a-strategic-partnership-between-oaktree-and-western-llc (last visited Sept. 22, 2022).

[21]   *See Premier Aeronautique At SAT Officially Breaks Ground*, AVIATIONPROS (Mar. 26, 2019), https://www.aviationpros.com/airports/press-release/21073475/san-antonio-aviation-department-premier-aeronautique-at-sat-officially-breaks-ground (last visited Sept. 22, 2022).

[22]   *See* Exhibit A-4, WesternSATLeasing LLC's Texas Franchise Tax Public Information Report dated May 11, 2021, Texas Secretary of State; *Brooke B. Dorrien*, LINKEDIN, https://www.linkedin.com/in/brooke-b-dorrien-0375382/ (last visited Sept. 22, 2022).

[23]   Exhibit A-4.

[24]   *Id.*

depositing the special commissioners' award in the registry of the court." *Weingarten Realty Inv'rs v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 843 (S.D. Tex. 1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000). Thus, Plaintiff's takings claim is not ripe because no taking will occur without the City paying the awarded compensation into the registry of the state trial court.The Supreme Court recognizes that equitable relief is generally *unavailable* in these circumstances because the "federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking." *Knick*, 139 S. Ct. at 2176, 2179 ("As long as just compensation remedies are available— as they have been for nearly 150 years—injunctive relief will be foreclosed.").

Plaintiff in effect attacks the constitutionality of the Texas "Quick Take" statutory scheme. But the Fifth Circuit has held that such provisions are constitutional. *Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 706–07 (5th Cir. 2017). Moreover, enjoining the Condemnation Lawsuit would be contrary to well established Texas law. *Bd. of Regents v. Comanche Apartments, Inc.*, 568 S.W.2d 449, 451 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e) (holding that a district court may not enjoin "condemnation proceedings which occur up to and including the award of the special commissioners").

Thus, no taking has yet occurred, and Plaintiff continues to have the constitutional right to pursue full compensation in the Condemnation Lawsuit as allowed by law. Plaintiff's unconstitutional takings claim is not ripe and provides no basis for injunctive relief.

### 5.    PLAINTIFF'S OTHER CLAIMS FAIL AS A MATTER OF LAW.

Although not discussed in the Motion, the Complaint requests declaratory relief and alleges breach of Article 41.13 and an alternative claim of promissory estoppel. The request for declaratory relief is tied to Plaintiff's constitutional takings claims and should be dismissed for the reasons stated in section II.C.4 above. Plaintiff's claim for breach of Article 41.13 also fails for the reasons provided in section II.C.2.a and this section because it is premised on interference with its alleged

Article 2 and 15 rights. And Plaintiff cannot recover on its promissory-estoppel claim because a valid contract exists between the parties covering the alleged promises raised in Plaintiff's Complaint, which bars the claim as a matter of law. *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015).

## D.     NO THREAT OF IMMEDIATE OR IRREPARABLE HARM

It is well established that an injury is irreparable only "if it cannot be undone through monetary remedies." *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The condemnation procedure will result in a monetary award, and the right of appeal provides an adequate remedy for "anything that may occur in the condemnation proceedings up to and including the award of the special commissioners." *Tonahill v. Gulf States Utils. Co.*, 446 S.W.2d 301, 302 (Tex. 1969) (affirming appellate court's reversal of trial court's injunction of Special Commissioners' hearing).

Additionally, the Texas Property Code provides remedies to the property owner in the event a court determines the City did not have the right to take after the City takes possession. *See* TEX. PROP. CODE ANN. § 21.044. The availability of these legal remedies, including compensation for the condemnation of Plaintiff's leasehold interest, forecloses a suit for injunctive relief or specific performance. *Harris Cnty. v. Gordon*, 616 S.W.2d 167, 169 (Tex. 1981).

Plaintiff does not dispute that it can calculate its damages, and its declarations include testimony previewing the damages it will later add by amendment.[25] (Dkt. No. 20 at p. 8; Dkt. No.

---

[25] Plaintiff's Complaint "reserves the right to seek damages" for the various claims alleged. (Dkt. No. 1 at p. 34–35, 42, 44, & 47.) Plaintiff has expressed its intent to amend the Complaint to pursue damages in accordance with the Lease's ADR provisions. (Dkt. No. 19.)

20-3 Ex. B at ¶ 22; Dkt. No. 20-2 Ex. A at ¶ 6.) Plaintiff offers testimony from its Board member, Mr. James D. Burchetta, that the value of its business ranges from $135 million to $305 million. (Dkt. No. 20-2, Ex. B at ¶ 6.) Plaintiff, however, relies on a line of cases for the notion that "the mere fact economic damages may be available does not always mean the remedy at law is 'adequate.'" (Dkt. No. 20 at p. 8 & 23.) But there are obvious differences between Plaintiff's cases cited at page 8 of the Motion involving fraudulent conduct, discriminatory practices, regulatory changes, and unlawful competition and the facts of this case. In this lawsuit, Plaintiff claims its business will be destroyed due to the City's condemnation of the leasehold interest. But the parties specifically contemplated the City's condemnation of Plaintiff's interests in Article 34 of the Lease, and the power could not be waived anyway. (Dkt. No. 20-2, Ex. A-1 at Art. 34); *Seureau*, 274 S.W.3d at 225.

Lastly, Plaintiff's delay in seeking injunctive relief is fatal to its request. This Court recognizes that "[u]ndue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable." *Lupi v. Diven*, No. 1:20-cv-207-RP, 2020 U.S. Dist. LEXIS 58933 at *20 (W.D. Tex. Apr. 3, 2020) (citing *GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F.Supp.2d 603, 609 (N.D. Tex. 2006) (finding that a delay of over six months rebutted any presumption of irreparable harm)); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2017 U.S. Dist. LEXIS 191317, at * 10 (W.D. Tex. Nov. 20, 2017) (six-month delay in seeking injunction fatal to request for preliminary injunction). "Where the majority of the harm will have already occurred due to the delay; the appropriate remedy is therefore damages." *Embarcadero Techs.*, 2017 U.S. Dist. LEXIS 191317, at * 10.

Plaintiff's own evidence establishes Plaintiff's failure to timely seek injunctive relief. As early as March 3, 2020, the City informed Plaintiff that the South Terminal would need to be

removed within 24 months to accommodate new midfield taxiways for future airport expansion plans. (Dkt. No. 20-2, Ex. A-8.) On July 13, 2021, the City formally notified Plaintiff that it planned to remove the South Terminal within approximately two years and proceed with AEDP without Plaintiff's involvement, and would exercise its condemnation rights under Article 34 of the Lease if the parties could not agree on the purchase price for the leasehold interest. (Dkt. No. 20-2, Ex. A-10.) In an August 23, 2021 letter to the City,[26] Mr. Pearse stated: "We understand that the City believes that it has the alternative to move forward with condemnation proceedings to accomplish its stated goal of extinguishing Lonestar's rights under the [Lease] and involvement in AUS."[27] He further stated: "The course of communications and interactions with the Department of Aviation ("DOA") over the *last two years* demonstrates DOA's desire to avoid its obligations under Article 15 of the Concession in particular, and to 'undo' a deal that the City, through a unanimous vote of the Austin City Council, duly committed to."[28]  Plaintiff admits that the City "has consistently refused to engage with Plaintiff about Plaintiff's right to participate in the AEDP or facilities contemplated under the AEDP" since at least July 2021. (Dkt. No. 20-3 Ex. B at ¶¶ 40–41.)

On March 25, 2022, the City informed Plaintiff that condemnation proceedings were imminent. (Dkt. No. 20-3, Ex. B-4.) On March 29, 2022, the City put Plaintiff on notice that it intended to proceed with the condemnation of Plaintiff's leasehold interest, including how it

---

[26]  *See Letter to Austin Airport CEO: Tearing Down South Terminal Won't Hold Up In Court*, KVUE (Aug. 25, 2021), https://www.kvue.com/article/money/economy/boomtown-2040/austin-airport-south-terminal-legal-battle/269-4c614ce4-8d9c-4e19-9e9d-743c0ead419c (last visited Sept. 22, 2022).

[27]  *See* Ex. A-2 at p. 2.

[28]  Ex. A-2 at p. 3 (emphasis added). Based on this statement, Mr. Pearse admitted that Plaintiff believed as early as August 2019, three years prior to the filing of the Complaint, that the City did not intend to honor Plaintiff's alleged rights under the Lease.

valued and intended to compensate Plaintiff for such interest. (Dkt. No. 20-4, Ex. 1.) Therefore, Plaintiff knew for over a year that the City had rejected its attempts to be involved in AEDP and also knew for months that the City would seek to acquire Plaintiff's leasehold interest by condemnation. (Dkt. No. 20-4, Ex. C-1.)

In the meantime, the City has taken substantial steps towards the implementation of AEDP, including FAA approval, environmental assessments approved by the FAA,[29] and the issuance of $400 million in bonds.[30] The City has also engaged in retaining the professional services of a project manager, engineers, architects, and other contractors in connection with AEDP without Plaintiff's involvement. (Dkt. No. 20-3, Ex. B at ¶ 46.) At a minimum, Plaintiff waited over six months to seek injunctive relief after discovering the City's decision to begin the eminent-domain process with the March 29, 2022 Initial Offer Letter and over a year after learning it would be excluded from AEDP. Plaintiff waited to file its Complaint until August 1, 2022, then waited another month before filing the Motion. If the harm to Plaintiff was truly irreparable, why did it wait so long before seeking injunctive relief? The only plausible answer is that Plaintiff knew it could recover full monetary compensation for any economic harm caused by the City's actions in the Condemnation Lawsuit. Accordingly, Plaintiff cannot establish it will suffer irreparable injury, and the Motion should be denied.

---

[29] *See* City of Austin Press Release dated March 21, 2022 available at: https://www.austintexas.gov/news/aus-hold-environmental-assessment-open-house-virtual-meeting-week (last visited Sept. 22, 2022); FAA's Finding of No Significant Impact (FONSI) and Record of Decision (ROD) attached hereto as Exhibit A-1 and is available at: https://www.austintexas.gov/sites/default/files/files/FINAL.pdf (last visited Sept. 22, 2022).

[30] *See* City of Austin Press Release dated May 3, 2022 available at: https://www.austintexas.gov/news/aus-secures-400-million-funding-airport-expansion-and-development-program-projects (last visited Sept. 22, 2022).

E.     **B**ALANCE OF **E**QUITIES AND **P**UBLIC **I**NTEREST **D**ISFAVOR **A**N **I**NJUNCTION

Plaintiff also bears the burden of demonstrating that a preliminary injunction would not be adverse to the public interest. *Star Satellite, Inc. v. Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986). Plaintiff correctly recognizes that when the government is a party, the City's interest is the public's interest. (Dkt. No. 20 at p. 18); *see Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021). Although citing to the correct standard, Plaintiff suggests that the public's interest favors reviewing the City's use of its eminent-domain authority prior to any taking despite such a position being contrary to the City's interests and Texas law. Nor does it benefit the public interest for the City to be forced to partner with Plaintiff on AEDP potentially in violation of competitive bidding laws and especially when the City has already expressly rejected Plaintiff's request for inclusion as was permitted and contemplated by the Lease.

The only authority cited by Plaintiff addressing the public's interest where there is a governmental interest involved is a condemnation suit discussing the Federal Rules of Procedure in federal condemnation actions. (Dkt. No. 20 at p. 20.) But even that authority is unavailing in this instance because the federal condemnation rules are not applicable to this case. *See* FED. R. CIV. P. 71.1(k). The City filed the Condemnation Lawsuit in state court because the Lease's venue provision cannot confer subject-matter jurisdiction over Plaintiff's non-diverse lien holder, Texas Capital Bank, who was a necessary party in the Condemnation Lawsuit. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Plaintiff's remaining authority discusses the public's interest in matters involving two private parties, which is not applicable here. (*See* Dkt. 20 at pp. 18–20.)

The public interest impacted by Plaintiff's requested injunctive relief is the City's right to improve and expand its public airport without interference from Plaintiff. This public interest takes precedence over Plaintiff's private contractual claims. Assuming for the sake of argument that

those claims are valid, which they are not, the Condemnation Lawsuit already provides a process granting Plaintiff a money-damages remedy. Plaintiff will be compensated through the Condemnation Lawsuit and has a statutory remedy in the unlikely event it is determined there was an unlawful taking. *Gordon*, 616 S.W.2d at 169. Delaying AEDP would result in financial hardship to the City and the AUS stakeholders, including the passengers, airlines, and all others that will benefit from the long overdue expansion of AUS. As Plaintiff's CEO admitted in July 2021, "it is imperative for a New Facility to deliver the much-needed terminal capacity at AUS." (Dkt. No. 20-3, Ex. B-3.) It is undisputed that the expansion of AUS has already been delayed by several years due to COVID-19. (Dkt. No. 20-3, Ex. A at ¶ 37.) Any delay in the implementation of AEDP at this point will only exacerbate the problems created by COVID-19. Accordingly, an injunction is adverse to the public's interest in allowing AEDP to occur without the unjustified interference and delay requested by Plaintiff.

Finally, a preliminary injunction may only be issued if Plaintiff posts a bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Plaintiff has not addressed its bond obligations in its Complaint or the Motion. The City will be prepared to address an appropriate bond in the unlikely event that topic becomes relevant.

## III.   <u>CONCLUSION AND PRAYER</u>

For all the reasons discussed herein, the City of Austin respectfully requests that the Court deny Plaintiff's Motion for Preliminary Injunction and grant the City of Austin all other relief to which it is entitled.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Thomas J. Forestier*
    Thomas J. Forestier
    State Bar No. 07256560
    tforestier@winstead.com
    Christopher Robertson
    State Bar No. 24107267
    crobertson@winstead.com
    600 Travis Street, Suite 5200
    Houston, Texas 77002
    Telephone: (713) 650-2749
    Facsimile No.: (713) 650-2400

    Andrew J. Schumacher
    State Bar No. 24051310
    aschumacher@winstead.com
    401 Congress Avenue, Suite 2100
    Austin, Texas 78701
    (512) 370-2800
    (512) 370-2850 (Fax)

    -and-

ANNE MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, LITIGATION
DIVISION CHIEF

    Anne L. Morgan, CITY ATTORNEY
    Meghan L. Riley, CHIEF, LITIGATION
    State Bar No. 24049373
    meghan.riley@austintexas.gov
    Angela C. Rodriguez
    Assistant City Attorney
    State Bar No. 24013415
    Angela.Rodriguez@austintexas.gov

    City of Austin Law Department
    P.O. Box 1546
    Austin, TX 78767-1088
    Telephone: (512) 974-2458
    Facsimile No.: (512) 974-1311

**ATTORNEYS FOR PLAINTIFF,**
**THE CITY OF AUSTIN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on September 22, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

<u>/s/ Thomas J. Forestier</u>
Thomas J. Forestier