# EXHIBIT A-2



August 23, 2021

**VIA OVERNIGHT COURIER AND EMAIL**

Jacqueline Yaft
Executive Director
Department of Aviation
Austin-Bergstrom International Airport
3600 Presidential Boulevard, Suite 411
Austin, Texas 78719

    Re:    South Terminal Lease and Concession Agreement by and between the City of Austin and Highstar Capital IV, L.P. dated as of March 24, 2016, as amended by the Assignment and Assumption Agreement between Highstar Capital IV LP and Lonestar Airport Holdings, LLC ("Lonestar") and consented to by the City of Austin dated as of March 24, 2016 (the "Concession")

Dear Ms. Yaft:

I am writing to follow up on my July 28, 2021 letter to you and the recent communications that have occurred between our counsel and counsel for the City.

As we have made clear, Lonestar is well-positioned to be a constructive and effective partner to the City in the further development of Austin-Bergstrom International Airport ("AUS") as contemplated by the Concession. Unfortunately, the City seems determined to ignore Lonestar's rights under the Concession and to improperly prevent its participation in the City's planned development of AUS. The City has made clear that it wishes to terminate the Concession and any future involvement by Lonestar in either the South Terminal or in general, notwithstanding explicit language in the Concession guaranteeing Lonestar a 40-year concession and the right to participate in any expansion of AUS. As described below, neither the Concession nor Texas law provide the City the right or ability to extinguish Lonestar's interests under the Concession. The City is thus seeking a result that it will not be able to achieve unless Lonestar voluntarily agrees to relinquish its rights in the Concession, which Lonestar is simply not willing to do at this time.

The Concession, which was entered into by the City in 2016 after extended discussions, negotiations and public hearings, established a long-term partnership between Lonestar and the City. The City and Lonestar spent countless hours considering, negotiating, and reviewing the deal in order to expand access to air travel options in Austin in a cost-effective way. The City Council received comment from public and other involved stakeholders and made the fully informed decision that the public-private partnership with Lonestar embodied in the Concession was the best way to provide for expansion of cost-effective flight options at AUS. The decision to grant the Concession to Lonestar was voted on three separate times by the Council, and was approved unanimously with the full support of the Mayor and the Council a mere six years ago. In order to induce Lonestar to fund the renovation and expansion of the South Terminal, the City granted

Jacqueline Yaft
August 23, 2021
Page - 2 -

Lonestar the right, as part of the Concession, to participate at its own option in any expansion of the South Terminal or in the creation of new facilities at AUS. The City has no right to unilaterally abrogate this essential part of the bargain it voluntarily entered into with Lonestar simply because new airport leadership would rather proceed on its own. Lonestar remains a fully capable and well-funded partner with deep operational expertise and a proven track record of being a good partner. No entity is better positioned than Lonestar to assist the City to facilitate AUS's growth. Rather than trying to back out of its commitment, the City should embrace the possibilities the Concession provides for accelerating continued improvements and expansion to create the best possible AUS of the future. But regardless of how the City decides to proceed, Lonestar has no intention of abandoning its rights under the deal it struck with the City.

There are several problems with the City's approach of threatening condemnation of the South Terminal. As an initial matter, the City's approach appears to be designed to account for Lonestar's leasehold interest only in the specific real estate leased pursuant to the Concession. But Lonestar enjoys significant rights under the Concession that are in addition to its leasehold interest over that property. The Concession expressly states that Lonestar, in addition to leasing the premises, will provide the City certain services in connection with the development and operation of the South Terminal. *See* Concession p. 1 (recognizing that the City "desires to outsource the rehabilitation, development and operation of the South Terminal"); *id.* § 4 ("Use of Premises"); *id.* § 14 ("Concession Program"). The Concession includes a 40-year term for Lonestar to occupy the premises and provide the agreed upon services. *Id.* § 3. And it provides that Lonestar "may exercise all of its rights hereunder, without ejection or interference by Owner." *Id.* § 2.03.

In addition, as noted above, Article 15 of the Concession grants Lonestar broad forward-looking rights with respect to any "Expansion" or "New Facility"—as those terms are defined in the Concession. Lonestar's ability to develop, construct, and/or operate any such Expansion or New Facility is a significant, valuable interest. As noted in my July 28 letter to you and our other numerous communications on this point, Lonestar is prepared to make a significant financial investment in exercising these rights and has reserved significant capital to make an investment in expansion at AUS in cooperation with the City under the terms of the Concession.

We understand that the City believes that it has the alternative to move forward with condemnation proceedings to accomplish its stated goal of extinguishing Lonestar's rights under the Concession and involvement in AUS. As our counsel has conveyed to your counsel, however, we disagree that acquiring Lonestar's rights under the Concession would be an appropriate or permissible exercise of eminent domain under Texas law or the terms of the Concession. Lonestar operates a profitable going concern at AUS which includes the Article 15 right to develop, construct and/or operate an Expansion or New Facility at AUS. This going concern will be extinguished if the underlying real estate is condemned, so that the City can operate the entirety of AUS itself. That going concern cannot simply be moved to another location – the City effectively has a monopoly at AUS. Under Texas law in such cases, the eminent domain process cannot be used to terminate a going concern so that the City can operate that going concern itself. While we understand that the value of a going concern is not ordinarily compensable in a condemnation case, under these specific facts it is, but the eminent domain system has been repeatedly found to be insufficient to provide adequate valuation procedures for a going concern. Therefore, as Texas courts have found, in such

Jacqueline Yaft
August 23, 2021
Page - 3 -

circumstances, a condemnation to wipe out that going concern cannot proceed because the condemnee's constitutional right to adequate compensation cannot be protected.

The terms of the Concession further demonstrate why the City's exercise of eminent domain would be improper under these circumstances. In Section 41.13 the City agreed "not take any action or omit to take any action the primary purpose of which is to avoid honoring any of its commitments and obligations under this Lease." The City's commitments and obligations under the Concession include all of the rights described above, as well as a clear right of quiet enjoyment of the premises described in the Concession for its full 40 year term. *See* Section 2.03. The course of communications and interactions with the Department of Aviation ("DOA") over the last two years demonstrates DOA's desire to avoid its obligations under Article 15 of the Concession in particular, and to "undo" a deal that the City, through a unanimous vote of the Austin City Council, duly committed to. The attempt to exercise eminent domain for the purpose of extinguishing the City's commitment to Lonestar with respect to any New Facility, as well as to communicate directly with Lonestar's vendors and indirectly with Lonestar's employees and other constituents about such improper efforts through the media, runs afoul of Section 41.13. We fully expect that discovery into DOA's actions and internal communications leading up to the most recent effort to purport to extinguish Lonestar's rights in the Concession will bear out Lonestar's concerns in this respect if litigation about the City's eminent domain efforts ensues.

Finally, the Concession agreement makes clear that Lonestar may vindicate its rights under the Concession in litigation—notwithstanding whether the City initiates condemnation proceedings. Indeed, Article 34 is clear that the remedies afforded by Section 29.02—*i.e.*, remedies for Owner default—are not extinguished by condemnation. And Section 41.11 waives the City's sovereign immunity for contract claims asserted by Lonestar seeking the remedies set forth in Section 29.02. While Lonestar has no desire to engage in a years' long battle with the City over whether the City can use condemnation in the manner the City currently proposes, Lonestar has both the resources and the resolve to fully vindicate its rights under the Concession in court as necessary. We expect any such litigation will make clear to the public that the City is seeking to undo the terms of a valid agreement that, if honored, would have allowed the City an efficient and economical path to accomplish the legitimate goal of addressing expansion needs at AUS.

We think it is important at this juncture to identify what we see as serious flaws in the approach suggested by the City. Simply put, the City is trying to compel a solution that it cannot achieve in court and that Lonestar is not willing to grant. Lonestar stands ready to continue to work with the City and your department under the Concession to continue delivering the best possible service to AUS's customers and the citizens of Austin.

Jacqueline Yaft
August 23, 2021
Page - 4 -

Sincerely,

Jeff Pearse
Chief Executive Officer
Lonestar Airport Holdings, LLC

cc:     Lonestar Board of Managers