**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| LONESTAR AIRPORT HOLDINGS, LLC, | |
| *Plaintiff*, | Civil Action No. 1:22-cv-00770-RP |
| v. | |
| CITY OF AUSTIN, TEXAS, | |
| *Defendant*. | |

## PLAINTIFF LONESTAR AIRPORT HOLDINGS, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR ABSTENTION

Plaintiff Lonestar Airport Holdings, LLC respectfully submits this memorandum in opposition to Defendant's Motion for Abstention filed on September 22, 2022 (Dkt. No. 29, the "Motion" or "Mot."). The City of Austin (the "City") asks the Court to abstain and dismiss this action in favor of a Texas state condemnation proceeding but, as shown below, dismissal on abstention grounds is inappropriate in this case.

## INTRODUCTION

Lonestar commenced this action to prevent the City of Austin from breaching its contract with Lonestar—a contract that specifically designated this Court as the proper venue for resolution of all disputes between the parties—and from taking Lonestar's business at the Airport under the color of state condemnation proceedings in violation of Texas law, the U.S. Constitution, and the plain terms of the parties' agreement. Lonestar filed its Complaint on August 1, 2022, six weeks after the City initiated a state condemnation proceeding (the "State Proceeding") that remains in its very preliminary stages.

Despite the City's efforts to characterize this action (the "Federal Lawsuit") as "parallel" to the State Proceeding (Mot. at 4), the two actions are significantly different. Federal courts find that actions are parallel for *Colorado River* purposes when they are "essentially the same," which includes seeking the same relief and the adjudication of the same issues. At the outset, only one of these actions is currently a judicial proceeding in a court. Moreover, the Federal Lawsuit requests injunctive and declaratory relief that is not being sought in the State Proceeding and involves the adjudication of Lonestar's contract claims that are not at issue in the State Proceeding. The City's suggestion that Lonestar can plead its contract claims as counterclaims in the State Proceeding (Mot. at 6) is disingenuous and ignores the bargained-for venue provision in the parties' contract that designated this Court as the forum in which those claims would be adjudicated.

The City acknowledges that the State Proceeding remains at the beginning of its administrative phase (the first of the two potential phases of the State Proceeding). (Mot. at 6.) The focus of the administrative phase is narrow: determining the value of Lonestar's interest in the South Terminal. During the administrative phase, that value determination is not made by a judge or in a court, but rather by a panel of three disinterested real property owners who reside in the county, acting as special commissioners. The special commissioners act in an administrative capacity and have no authority to rule on questions of law. Well-settled Texas law provides that the state trial court has no oversight over the special commissioners or jurisdiction over the State Proceeding unless and until timely objections to the special commissioners' award are filed and the second phase of the State Proceeding is initiated. The second phase is far off—objections can only be filed after the special commissioners conduct a hearing and issue an award, and the City has not yet taken any steps to have a hearing date set, despite having filed its petition four months ago.

The relief Lonestar seeks in its lawsuit is immediate and urgent. Lonestar described in painstaking detail in its Complaint and Motion for Preliminary Injunction the irreparable harm it will suffer without the Court's timely intervention. (Compl. (Dkt. No. 1), at ¶¶ 23, 106-07; Mot. for Preliminary Injunction (Dkt. No. 20), at 8, 16-18.) Some of that harm is due to the City's improper invocation of its eminent domain powers in a manner not intended under the parties' contract or Texas law. Far from parallel, therefore, the State Proceeding gave rise to the need for this action. It is therefore critical that this Court retain and exercise its jurisdiction.

The State Proceeding and Federal Lawsuit, which involve non-overlapping issues and seek different relief, are not parallel—rendering abstention under *Colorado River* unavailable. Because the actions are not parallel, the Court need not reach the *Colorado River* factors. But even if the Court did reach the six *Colorado River* factors, an analysis of those factors makes clear that this case does not present the "exceptional circumstances" that provide the "clearest of justifications" for the Court to abdicate its "virtually unflagging obligation" to exercise jurisdiction. The Court should thus deny the City's motion to abstain under *Colorado River*.

## RELEVANT BACKGROUND

The City commenced the State Proceeding on June 17, 2022, by filing its condemnation petition in Travis County Probate Court. (Mot. at 2.) The condemnation petition names Lonestar and Texas Capital Bank and seeks to condemn the leasehold interest in the land, improvements, and all other buildings on the property located at Austin-Bergstrom International Airport that is subject to the South Terminal Lease and Concession Agreement (the "Agreement"). (Mot. at 1-2.) On July 13, 2022, the Probate Court appointed the special commissioners. (*Id.*) No hearing date has been set by the special commissioners and the City has not otherwise taken steps to have a hearing be set. No other progress has been made in the State Proceeding.

Lonestar filed its Complaint in the Federal Lawsuit shortly after, on August 1, 2022. (Dkt. No. 1.) The Complaint seeks declaratory and injunctive relief based on the City's imminent and unlawful taking of Lonestar's property *and* the City's ongoing breaches of its Agreement with Lonestar. (*Id.*) Lonestar filed in this Court because the Agreement provides that "[v]enue for any action arising out of or concerning this Lease shall be proper and lie exclusively in the Austin Division of the United States District Court for the Western District of Texas." (*Id.* ¶ 32.) After a failed mediation, Lonestar filed its Motion for Preliminary Injunction on September 1, 2022. (Dkt. No. 20.) On September 21, the parties held a scheduling conference with the Court, during which the parties discussed the possible need for expedited discovery and timing for a hearing on Lonestar's Motion for Preliminary Injunction. A tentative hearing date was set for November 4, 2022. The day after the scheduling conference, on September 22, 2022, the City filed its Motion for Abstention (Dkt. No. 29).

## ARGUMENT AND CITATION TO AUTHORITY

### I.  ABSTENTION IS APPROPRIATE ONLY IN EXTRAORDINARY CIRCUMSTANCES

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Thomson v. Orr*, No. 1:18-CV-794-RP, 2018 WL 7286486, at *1 (W.D. Tex. Nov. 8, 2018) (Pitman, J.). The relief sought by the City—abstention in favor of a "parallel" state proceeding under the *Colorado River* doctrine—is available only in "extraordinary and narrow" circumstances. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Because the *Colorado River* test is extremely difficult to meet and rarely applicable, the Fifth Circuit Court of Appeals has, "[f]or more than thirty-five years ... reversed virtually all appealed *Colorado River* abstentions." Josue Caballero, *Colorado River Abstention Doctrine in the Fifth Circuit: The Exceptional Circumstances of a Likely Reversal*, 64 Baylor L. Rev. 277, 277

(2012); *see id.* at 288 ("In contrast, a decision not to abstain under *Colorado River* has never been reversed").

Accordingly, "only the clearest of justifications will warrant the federal court's staying its hand." *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (internal quotes omitted) (citing *Colorado River*, 424 U.S. at 819). The City has not provided such justification, nor can it on this record. The Court should accordingly reject the City's request for abstention.

## II.   ABSTENTION DOES NOT APPLY HERE BECAUSE THE STATE AND FEDERAL PROCEEDINGS ARE NOT "PARALLEL"

To begin, the City's Motion fails for a threshold reason—the City has not met its burden of showing that the State Proceeding and Federal Lawsuit are "parallel" proceedings. While the Fifth Circuit does not insist on "precise identity of parties and issues" in every case, *Brown v. Pacific Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006), abstention is proper only if the federal and state proceedings are "***essentially the same***; that is, there is an identity of parties, and ***the issues and relief sought are the same***." *E.E.O.C. v. Palafox Hosp., Ltd.*, 188 F. Supp. 2d 680, 683 (S.D. Tex. 2001) (emphasis added). "[A]ny doubt regarding the parallel nature of the [state proceeding] should be resolved in favor of exercising jurisdiction." *Rimkus Consulting Grp., Inc. v. Cammarata*, No. H-07-0405, 2007 WL 4223434, at *5 (S.D. Tex. Nov. 29, 2007) (internal quotes omitted).

It is clear that the two proceedings here are not "essentially the same." *E.E.O.C.*, 188 F. Supp. 2d at 683. While the State Proceeding and Federal Lawsuit arise from related facts and

involve mostly the same parties,[1] there is a significant difference between the issues involved in the two proceedings and the relief sought. In its current administrative phase, there is only one issue that will be decided in the State Proceeding: the amount of "just compensation" to which Lonestar is entitled. That decision will not be made by a judge or in a court, but rather by a panel of three disinterested real property owners who reside in the county, acting as special commissioners. *See* Tex. Prop. Code § 21.014. Special commissioners act in a purely administrative capacity and have no authority to rule on questions of law (such as whether the condemning entity has the right to condemn the property at all) or interpret contracts or their underlying rights. Once the special commissioners are sworn, and up until the point they enter an award that is timely objected to, the state court plays no role. *Gulf Energy Pipeline Co. v. Garcia*, 884 S.W.2d 821, 823 (Tex. App. 1994) ("The Property Code says nothing about giving the trial court power to oversee the exercise of the commissioners' powers during this administrative proceeding.").

The Federal Lawsuit is far broader, involving different claims and different requests for relief. In the Federal Lawsuit, Lonestar asserts five claims under the Texas and U.S. Constitutions and for breach of Lonestar's Agreement with the City. Even assuming that Lonestar's constitutional claims related to the City's unlawful taking might overlap in part with the issues that might eventually be adjudicated in the judicial phase of the State Proceeding (*i.e.*, the validity of the taking), none of the issues underlying these claims are ***currently*** at issue in the State Proceeding.

---

[1]     The identity of the parties in both actions are not exactly the same, as Texas Capital Bank is a party to the State Proceeding but not the Federal Lawsuit. *See City of Austin, Texas v. LoneStar Airport Holdings, LLC, and Texas Capital Bank*, Cause No. C-1-PB-22-001462.

Most critically, and undisputed by the City, is that Lonestar's contract claims (and the damages that Lonestar intends to seek) are not at issue in the State Proceeding. (Mot. at 6.) Under those claims, Lonestar is seeking injunctive relief preventing the City from excluding Lonestar from the future development of the Airport. Lonestar has not asserted those claims in the State Proceeding—nor could it have, both because the special commissioners cannot hear or adjudicate questions of law and because the Parties' venue provision requires that Lonestar's contract claims be filed here. The City's suggestion that Lonestar file these contract claims as counterclaims in the State Proceeding "upon completion of the administrative phase" (*id.*) tacitly concedes that such claims are not yet at issue and disregards "established authority that compulsory counterclaims do not trump [a] forum selection clause." *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:13-cv-00783-JRG, 2014 WL 2757541, at *5 n.6 (E.D. Tex. June 17, 2014); *see also Publicis Commc'n v. True N. Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997) (agreeing with the Second Circuit's view that "a party to a forum-selection clause may not raise in a different forum, even as a compulsory counterclaim, a dispute within the scope of that clause."). Even if Lonestar could assert its contract claims "upon the completion of the administrative phase," that will not occur until some unspecified time in the future after the special commissioners' hearing, a hearing the City has taken no steps to schedule.

In addition to the non-overlapping issues in both actions, the relief sought in the Federal Lawsuit is not being sought in the State Proceeding. This is fatal to the City's abstention request. *E.E.O.C.*, 188 F. Supp. 2d at 683 (relief sought in both proceedings must be the same). In the Federal Lawsuit, Lonestar seeks injunctive and declaratory relief to prevent it from being irreparably harmed by the City's unlawful taking and ongoing breaches of the Agreement. (Compl. (Dkt. No. 1), at ¶¶ 23, 106-07; Motion for Preliminary Injunction (Dkt. No. 20), at 8, 16-18.) The

same relief is not currently at issue in the State Proceeding, nor can it be until the special commissioners reach their valuation determination. *See Pearson v. State*, 315 S.W.2d 935, 937 (Tex. 1958) (finding that the "filing of timely objections" to the valuation determination of the special commissioners "confers jurisdiction" on a state court to "hear and determine the issues in the exercise of its judicial powers." Until then, the proceeding continues to be "administrative in character."). Simply put, there is currently no state court overseeing the State Proceeding that can grant Lonestar's requested injunctive and declaratory relief. *Gulf Energy Pipeline*, 884 S.W.2d at 823 ("an injunction … [is] outside the scope of the trial court's jurisdiction during the administrative proceeding"); *City of Carrollton v. OHBA Corp.*, 809 S.W.2d 587, 588 (Tex. App. 1991) (court appointing commissioners had no jurisdiction to enjoin commissioners' hearings). By the time the state trial court assumes jurisdiction over the State Proceeding, Lonestar's requested injunctive and declaratory relief would be at least practically, if not legally, rendered moot because the irreparable harm will have already ensued. For those reasons, Lonestar ***necessarily*** seeks injunctive and declaratory relief in this Court—which is the Parties' bargained for venue—because that relief cannot be sought in the State Proceeding until after Lonestar is already irreparably harmed and its requested relief rendered moot. *See, e.g.*, *M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc.*, 541 F. Supp. 3d 878, 884 (E.D. Wis. 2021) (although the parties' forum selection clause "is not dispositive [in the *Colorado River* analysis] … it is relevant.").

Because the relief at issue in both actions differs, the actions are not parallel. The Court should thus reject the City's invitation to decline its "virtually unflagging obligation" to exercise jurisdiction over the Federal Lawsuit for this threshold reason alone. *See Thomson*, 2018 WL 7286486, at *1 (W.D. Tex. Nov. 8, 2018) (Pitman, J.); *see also Rimkus*, 2007 WL 4223434, at *5 ("[A]ny doubt regarding the parallel nature of the [state proceeding] should be resolved in favor

of exercising jurisdiction." (internal quotation marks omitted)). The Court therefore need not reach the *Colorado River* factors at all, but as discussed below, the factors weigh heavily in favor of continued federal jurisdiction.

## III. THE *COLORADO RIVER* FACTORS STRONGLY SUPPORT CONTINUED FEDERAL JURISDICTION

The Supreme Court has identified six factors relevant to determining whether exceptional circumstances exist permitting abstention: (1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285-86 (1995); *see also Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 815 (5th Cir. 2016) (articulating six factors now known as the *Colorado River* doctrine). In *Moses H. Cone*, the Supreme Court stressed the very limited nature of abstention under the *Colorado River* doctrine and noted that a decision to dismiss did not rest on "a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2 (1983). Even if the Federal Lawsuit and State Proceeding were parallel, abstention would still be inappropriate under *Colorado River*'s six-part test.

### A. Assumption of Jurisdiction Over a *Res*

The first *Colorado River* factor—assumption of jurisdiction of a *res*—does not favor abstention. The rationale behind a federal court abstaining from exercising its jurisdiction when a state court has assumed jurisdiction over a *res* is to avoid conflicting orders or rulings regarding the disposition or allocation of interests in real property. *See Colorado River*, 424 U.S. at 819 ("the

concern ... is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property"). Even though the condemnation proceeding is *in rem*, there is no danger of conflicting rulings regarding the disposition or allocation of the parties' interest in the property at issue here, for a number of reasons.

*First*, because the State Proceeding is still in its administrative, non-judicial phase, no court has yet *assumed* jurisdiction over a *res*. Thus, the reason why this factor may in some cases favor of abstention simply does not apply here.[2]

*Second*, no court will assume jurisdiction over the property at issue in the State Proceeding at any point in the immediate future, as the *res* presumptively belongs to Lonestar until the City pays an appraised deposit into the court registry—which cannot occur until after the special commissioners' hearing, a date for which has still not been set. Tex. Prop. Code § 21.021; *see also Abercrombie v. College*, 438 F. Supp. 2d 243, 259 (S.D.N.Y. 2006) (this factor not met in action brought by estate to set aside a deed allegedly procured from decedent through fraud even in light of pending state court probate proceedings involving will contests because "no court has assumed jurisdiction over the property at issue in this action" as the res "presumptively belongs to [the defendant] unless a court agrees with [plaintiff's] claim that the Deed is invalid.").

The City's statement that "the Texas trial court necessarily assumed jurisdiction over the property at issue," is misleading. (Mot. at 5.) Because the State Proceeding is presently in an administrative phase, no state court has, or can, obtain jurisdiction over the property at issue. More than half a century of Texas case law has established that a condemnation proceeding does not become a civil case calling for the exercise of judicial powers until timely objections to the special

---

[2]     Contrary to the City's suggestion (Mot. at 5), this factor is not dispositive under controlling Fifth Circuit precedent. *See, e.g.*, *Conseco Fin. Servicing Corp. v. Shinall*, 51 F. App'x 483 (5th Cir. 2002).

commissioners' valuation determination are filed with the court. *See, e.g.*, *Lower Nueces River Water Supply Dist. v. Cartwright*, 328 S.W.2d 752, 754 (Tex. 1959) (administrative phase of condemnation proceedings is "in no sense judicial"); *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex. 2004) (initial filing of condemnation case and commissioners' hearing are an "administrative proceeding" that converts into a "normal pending case" when objections to commissioners' award filed). With no state court having taken control over a *res*, this factor weighs against abstention. *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).

*Third*, even giving weight to the City's argument that the state court has somehow already assumed jurisdiction over a *res* (it has not), Lonestar does not ask *this Court* to do the same. As the City's own authorities recognize, this first factor is not met unless "*the two suits* are *in rem*, or *quasi in rem*." (Mot. at 5) (citing *Princes Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (emphasis added)). The Federal Lawsuit is an *in personam* action, because "[i]njunctive relief, by its very nature, can only be granted in an *in personam* action commenced by one party against another in accordance with established process." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999); *see also Eighth Reg'l War Lab. Bd. v. Humble Oil & Ref. Co.*, 145 F.2d 462, 463 (5th Cir. 1944) (action by appellee for an injunction and a declaratory judgment was "purely *in personam*" because "[t]he subject matter of this suit is not real or personal property, but the legal effect of the acts, threats, orders, sanctions, directives, and predictions, of appellants with reference to the business of appellee. The controversy is over the rights and legal relations of the parties and their duties or breach of duties with respect thereto."). Because Lonestar seeks injunctive and declaratory relief, and asks the Court to adjudicate "the rights and legal relations of the parties and their duties or breach of duties with respect thereto," *see id.*, the State Proceeding

and Federal Lawsuit are not ***both*** *in rem*. As such, there is no risk of conflicting rulings regarding the disposition or allocation of the parties' interest in the property at issue.

Therefore, with neither the state nor federal court having yet assumed jurisdiction over the *res* disputed in this case, this factor supports the continued exercise of federal jurisdiction. *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006); *Murphy*, 168 F.3d at 738-39 (an absent factor is not just a neutral item, but instead weighs *against* abstention).

### B.    Relative Inconvenience of the Fora

The "inconvenience of the fora" factor favors this Court maintaining jurisdiction. The City acknowledges, and Lonestar agrees, that the state and federal fora "are located in Austin, Texas, within several city blocks of each other." (Mot. at 5.) The parties agree that the federal forum is convenient, evidenced by the parties' selection of this Court in the forum selection clause of the Agreement. *See* Agreement, § 41.03 (Dkt. No. 1-2) ("Venue for any action arising out of or concerning this Lease shall be proper and lie exclusively in the Austin Division of the United States District Court for the Western District of Texas."). Contrary to the City's suggestion, however, this factor is not neutral. (Mot. at 5.) The Fifth Circuit is clear that where neither forum presents any inconvenience, this factor weighs *against* abstention. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) (federal and state courts in approximately same geographic location within the state weighs against abstention); *see also Bank One, N.A. v. Boyd*, 288 F.3d 181, 185 (5th Cir. 2002) (federal and state courts in the same geographic region weighs in favor of the district court exercising jurisdiction).

### C.    Avoidance of Piecemeal Litigation

The "piecemeal litigation" factor also cuts against abstention. As the City indicates, "[t]he real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." (Mot. at 6

(citing *Black Sea Inv.*, 204 F.3d at 650-51).) This case does not present to those sorts of risks. As explained above, because the Federal Lawsuit is *in personam* and the State Proceeding has not reached a judicial phase yet (and therefore no state court has assumed jurisdiction over a *res*), there is no risk of inconsistent rulings with respect to a piece of property. Moreover, because the actions are not parallel, and the Federal Lawsuit is moving ahead at a more rapid pace than the State Proceeding, any fear of inconsistent judgments can be allayed by the application of principles of *res judicata. See Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 498-99 (5th Cir. 2002) ("Should one court render judgment before the other, *res judicata* will ensure proper order."); *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988) (upon the federal court's judgment, "the need for further proceedings in state court may be obviated through a plea of *res judicata*"). As such, this factor weighs against abstention.

### D.    Order in Which Jurisdiction Was Obtained by the Concurrent Fora

The order in which the two proceedings were filed also does not favor abstention. Priority is not measured exclusively by which action was commenced first, but rather is measured in terms of how much progress has been made in the two actions. *Black Sea Inv.*, 204 F.3d at 651. Here, although the State Proceeding was commenced six weeks before the Federal Lawsuit, the Federal Lawsuit has advanced much further. In the Federal Lawsuit, Lonestar's Motion for Preliminary Injunction is close to being fully briefed and the parties have conferred with the Court on a timeline for a hearing on the motion. (Dkt. Nos. 20 & 30.) A tentative hearing date has already been set for November 4, 2022. Lonestar has also filed a Motion for Expedited Discovery (Dkt. No. 32) and is currently briefing the City's Motion for Abstention (Dkt. No. 29) and Motion to Dismiss under Federal Rule 12(b) (Dkt. No. 33). The State Proceeding, by contrast, has made minimal progress— the special commissioners were appointed on July 13, 2022, but since then, little has happened, and the City has taken no steps to have a hearing date set. (Mot. at 7.) Accordingly, it is far from

clear when the State Proceeding will actually reach its "judicial phase." This factor therefore weighs strongly against abstention. *See Monarch Bay Capital Group, LLC v. Highline Technical Innovations, Inc.*, 4:11-CV-463-A, 2011 WL 6844621 (N.D. Tex. Dec. 28, 2011); *Black Sea Inv.*, 204 F.3d at 651 (even where "the state and federal suits are proceeding at approximately the same pace, this factor weighs against abstention").

### E.     The Extent to Which Federal Law Governs the Merits

The significant federal law questions presented by Lonestar's Complaint also weigh strongly against abstention. "The presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]." *Moses H. Cone*, 460 U.S. at 26. The City concedes that Lonestar's Complaint includes "federal-law claims," but argues that those claims are not ripe. (Mot. at 7-8.) The City's argument that Lonestar's federal-law claims are not ripe is incorrect, and in any case, does not tip the scales toward abstention.

The "basic rationale" behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Lonestar's federal-law takings claims are not "abstract disagreements" because the City has already initiated condemnation proceedings. The City relies on *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019), for the proposition that Lonestar's claim under the Takings Clause becomes ripe only after the government actually takes possession of the property. (Mot. at 7-8.) But *Knick* is a case about *inverse condemnation*, and is thus inapplicable here.[3] "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by

---

[3]     Ironically, the holding of *Knick* is that a property owner need not exhaust state remedies before having a ripe Takings claim, and thus the thrust of *Knick* favors federal jurisdiction of federal Takings claims, not the other way around. 139 S. Ct. 2162 (2019).

the governmental defendant" and "stands in contrast to direct condemnation." *Knick*, 139 S. Ct. at 2168 (internal quotation marks omitted). That an inverse condemnation claim is ripe only when "the government takes [the landowner's] property without paying for it," *see id.* at n.6, makes good sense: it creates finality by ensuring that the government has reached a final decision. Ripeness is a significant issue in virtually all inverse condemnation cases and often the factor on which those cases turn.

But where, as here, the government has already initiated a direct condemnation proceeding by following the applicable statutory procedures, no additional finality is required. *Knick* indicates as much. *See id.* at 2170-71. Indeed, the Supreme Court has recently held in the wake of *Knick* that where "there is no question about the city's position" and a party must "choose between surrendering possession of their property or facing the wrath of the government," a dispute is ripe for adjudication. *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230-31 (2021) ("once the government has adopted its final position," a dispute is ripe).[4] Such is the case here.

Furthermore, even if the City were correct that Lonestar's federal-law claims are not ripe (it is not) and thus this case involves only state law, "the presence of [only] state law issues weighs in favor of surrender only in rare circumstances." *Black Sea Inv.*, 204 F.3d at 651. The City does not contend that there are "rare circumstances" here. That is unsurprising, because there is nothing rare or unusual about a federal court adjudicating breach of contract claims governed by Texas state law. This factor thus also weighs against abstention.

---

[4]     Moreover, "the Supreme Court made clear [that] plaintiffs may sue for injunctive relief even before a physical taking has happened." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 389 (6th Cir. 2022) (citing *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2070, 2072-73 (2021)).

F.      **Adequacy of State Proceedings to Protect Lonestar's Rights**

The State Proceeding will also not sufficiently protect Lonestar's rights, further cutting against abstention. To abstain, a federal court must conclude that the state proceeding will provide "the complete and prompt resolution of the issues between the parties" and "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to [abstain] … ." *Moses H. Cone*, 460 U.S. at 28; *Murphy*, 168 F.3d at 739.

Here, the State Proceeding will not provide "complete" or "prompt" resolution of the issues. It will not provide "complete" resolution because it does not encompass Lonestar's breach of contract claims and cannot currently award the relief Lonestar seeks. Nor will it provide "prompt" resolution—the State Proceeding is still in its non-judicial, administrative phase, and Lonestar may only seek to enforce its rights after the harm has already been realized and on appeal, at some undetermined date in the future.

Finally, even if the foregoing were not true and the State Proceeding were adequate to protect Lonestar's rights, this "can only be a neutral factor or one that weighs against, not for, abstention." *Murphy*, 168 F.3d at 739 (quotation marks omitted); *see also Black Sea Inv.*, 204 F.2d at 651. This is especially the case given that this Court represents the parties' bargained-for forum. *M&J Gen. Contractors*, 541 F. Supp. 3d at 884 (the parties' forum selection clause is relevant).

\* \* \*

In sum, the balance of the *Colorado River* factors weigh strongly against abstention. Accordingly, even if the State Proceeding and Federal Lawsuit were parallel (which they are not), abstention would not be appropriate in this case.

## **CONCLUSION**

For all of the foregoing reasons, the City's Motion should be denied in its entirety.

Dated: October 6, 2022.                     Respectfully submitted,


                                            */s/ Edward F. Fernandes*
                                            **KING & SPALDING LLP**
                                            Edward F. Fernandes (SBN 06932700)
                                            Julia C. Barrett (SBN 24116075)
                                            500 W 2nd St #1800
                                            Austin, TX 78701
                                            T: 512 457 2000
                                            efernandes@kslaw.com
                                            jbarrett@kslaw.com

                                            Lawrence A. Slovensky (*pro hac vice*)
                                            Mandi Goodman (*pro hac vice*)
                                            1180 Peachtree St NE
                                            Atlanta, GA 30309
                                            T: 404 572 4600
                                            lslovensky@kslaw.com
                                            mgoodman@kslaw.com


                                            **MUNGER, TOLLES & OLSON LLP**
                                            Bethany Kristovich (*pro hac vice*)
                                            Michael Doyen (*pro hac vice*)
                                            John Major (*pro hac vice*)
                                            350 South Grand Avenue
                                            Los Angeles, CA 90071
                                            T: 213 683 9292
                                            Michael.doyen@mto.com
                                            Bethany.kristovich@mto.com
                                            John.major@mto.com


                                            **BARRON, ADLER, CLOUGH & ODDO, LLP**
                                            Christopher M. Clough (SBN 24044802)
                                            Christopher J. Oddo (SBN 24013257)
                                            808 Nueces Street
                                            Austin, TX 78701
                                            T: 512 478 4995
                                            clough@barronadler.com
                                            oddo@barronadler.com

                                            *Attorneys for Plaintiff*
                                            *Lonestar Airport Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 6, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the CM/ECF system of the Court, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.


*/s/ Edward F. Fernandes*

Edward F. Fernandes