# EXHIBIT N



Austin | Charlotte | Dallas | Fort Worth | Houston | San Antonio | The Woodlands

600 Travis Street
Suite 5200
Houston, TX  77002

713.650.8400 *OFFICE*
713.650.2400 *FAX*
winstead.com

May 11, 2022

Thomas J. Forestier
(713) 650-2749
tforestier@winstead.com

Christopher M. Clough  *via Email: clough@barronadler.com*
Barron, Adler, Clough & Oddo, LLP
808 Nueces Street
Austin, TX 7870

Re:   Your April 27, 2022 Letter on behalf of LoneStar Airport Holdings, LLC ("LoneStar") in response to the City of Austin's Initial Offer Letter dated March 29, 2022

Dear Mr. Clough:

I am writing on behalf of my client, the City of Austin ("City"), in order to reply to LoneStar's response referenced above.

A.   <u>The City has complied with all applicable Lease provisions and Texas eminent domain law.</u>

The City sent its Initial Offer Letter in full compliance with Article 34 of the Lease, entitled CONDEMNATION AND BUSINESS INTERRUPTION, and Chapter 21 of the Texas Property Code. That chapter contains a mandatory Bona Fide Offer process, which is designed to facilitate negotiations and resolution of eminent domain disputes. Your letter however does not contain a monetary counteroffer. The City received your letter after LoneStar invoked the Alternative Dispute Resolution procedures in Article 40 of the Lease, which makes it even more difficult to understand why no counteroffer was made. The City requests that LoneStar reconsider and make a counteroffer that will help the parties determine if this matter can be resolved without costly and protracted litigation.

B.   <u>The City is protecting the interests of all AUS passengers, employees and airlines.</u>

Your statements about wasting taxpayer dollars are misplaced and reflect a fundamental misunderstanding of how AUS is funded. AUS is a self-funded enterprise, which means it is not

Christopher M. Clough
May 11, 2022
Page 2

funded by taxpayer dollars. The City certainly uses public funds, including federal grant monies, to operate AUS, and the City intends to use those funds wisely and lawfully. The City has determined AEDP best serves the interests of all AUS passengers, employees and airlines and the public and is consistent with the 2040 Airport Master Plan. LoneStar opposes AEDP only because it believes it is not in the best interests of LoneStar. However, AUS is not allowed by law to consider only the best interests of LoneStar or elevate LoneStar's interests above other interests and remains firmly committed to AEDP.

        C.      <u>LoneStar, rather than the City, is seeking to avoid its obligations under the Lease.</u>

It is undisputed that the Lease is a valid and enforceable agreement. Two sophisticated parties[1], who were represented by very capable and competent legal counsel, negotiated the Lease provisions extensively for more than seven months in 2015 and 2016. In Article 34 of the Lease, both parties contemplated the risk of condemnation in general by any condemning authority and specifically by the City. In that article, the parties agreed to a detailed mechanism for compensating LoneStar for its leasehold interest. The parties agreed LoneStar, as Tenant, would be entitled to compensation for "the Fair Market Value of Tenant's Interest", which the Lease defined as including, among other things, the Tenant's rights under Article 15.[2] However, Article 15 does not impact the value of the Tenant's Interest because it is unenforceable for several different and independent reasons, including, but not limited to, the existence of unsatisfied conditions precedent, an unenforceable promise to negotiate towards a future agreement, and governmental immunities, which were expressly reserved in Articles 36.01(c) and 41.11 and elsewhere in the Lease.

By way of further explanation, the City's Department of Aviation, after participating in months of good faith negotiations with LoneStar, has repeatedly informed LoneStar that it does not agree to LoneStar's proposed "South Terminal 2.0." That plan on its face is not consistent with the 2040 Airport Master Plan, which, like its predecessor plans, calls for the removal of the South Terminal and the construction of a new and much more expanded terminal, such as Concourse B that will be connected to the Barbara Jordan Terminal under the AEDP. Additionally, Article 26.08 of the Lease confirms that the City has "absolute discretion" to determine what is necessary and appropriate when it comes to developing and improving AUS and all roadways, terminal facilities, land areas and taxiways and any other facilities at AUS. There are other reasons why Article 15 affords LoneStar no compensable rights. If it did, however, LoneStar should have quantified its

---

[1] LoneStar is owned and controlled by Oaktree Capital Management, which reportedly has $164 Billion in assets under management. https://www.oaktreecapital.com/about. In turn, Oaktree's majority interest owner, Brookfield Asset Management, has about $690 Billion in assets under management. *Id.*; https://www.brookfield.com/.

[2] The parties did not agree, in the event of condemnation, that the City was obligated to compensate LoneStar for its initial capital investment, any return on that investment or its going concern value. The parties addressed the concept of LoneStar recovering all or a portion of its initial capital investment in Article 25, entitled CAPITAL RECOVERY PAYMENT, which does not apply to the present circumstances and has expired by its own terms.

Christopher M. Clough
May 11, 2022
Page 3

value, made a demand for it, and explained the legal basis for the demand, but your letter, as stated above, does none of that.[3]

>   D.  In the Lease, the parties contractually ratified the City's right to condemn LoneStar's interest, and *Blue Mound* is inapplicable for multiple reasons.

LoneStar's reliance on the 2014 *Blue Mound* decision is a desperate attempt to apply irrelevant law in an effort to rewrite the Lease for the sole benefit of LoneStar. There are multiple reasons *Blue Mound* is inapplicable to the present dispute. I will highlight just a few of them.

Texas law is well-settled that lost business income, profits, capital investments and any alleged return on those investments are fatally remote and speculative and thus not compensable. That rule of law applies to this dispute. *Blue Mound,* which recognized a very narrow exception to that legal principle based on unique facts, did not involve an extensively negotiated commercial real estate lease agreement between highly sophisticated parties, which included a condemnation clause. Thus, in *Blue Mound*, there was no landlord-tenant relationship or other preexisting contractual relationship between the parties nor an express condemnation clause that describes a mechanism to compensate the tenant in the event of condemnation by the landlord/municipality. Also, the City here already owns the lease premises in fee simple as well as the South Terminal itself and is simply condemning the leasehold interest it granted to LoneStar through the Lease.[4] The City is not condemning LoneStar's business, which it is free to continue to conduct at other airports in Texas and other states. *Blue Mound* did not involve these important legal and factual distinctions.[5]

If *Blue Mound* barred the City's exercise of its power of eminent domain, LoneStar should have invoked it when negotiating Article 34, the condemnation clause, in 2015 and 2016.[6] LoneStar invokes that decision now only because it has tenant's remorse and wants to rewrite the deal. Of course, the City would never have been able to agree to a contract provision that restricts its freedom to decide whether to initiate eminent domain proceedings. *Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 225 (Tex. App.—Houston [14th Dist. 2008, no pet.) (citations omitted). That type of

---

[3] Your letter claims LoneStar has received "multiple offers for hundreds of millions of dollars" in exchange for some portion of its interests. The City's retained independent real estate appraiser requested that information in his November 11, 2021 letter addressed to you. Item 5 in that letter requested "[a]ny listings, listing agreements, offers to sell, or offers to purchase." LoneStar did not disclose any responsive information. It is unreasonable for LoneStar to complain that the City's Initial Offer disregarded information, which was requested but not disclosed.

[4] Article 41.05 of the Lease confirms the Lease merely created a landlord-tenant relationship between the parties and expressly disclaimed any partnership or joint venture.

[5] The Austin Court of Appeals rejected arguments similar to those made by LoneStar in a case involving a commercial lease tenant who sought to recover the going concern value of its business due to an alleged impossibility to relocate its business. *AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.,* 262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.).

[6] The parties amended the Lease in 2019. There is no record of LoneStar asking to modify Article 34, the condemnation clause, at that point in time either.

clause is illegal and void. *Id.* Thus, *Blue Mound* is inapplicable, and LoneStar will not be able to rely on it to ask a court to rewrite the Lease in its favor.

The City hopes that the Alternative Dispute Resolution process recently invoked by LoneStar and the Bona Fide Offer process commenced by the City will generate a result that obviates the need for the parties to waste valuable time and resources in litigation. The City reserves all legal rights and interests and does not waive the right to assert other claims, defenses, and legal theories in the event of litigation. Please contact me with any questions about this letter.

Sincerely,

Thomas J. Forestier
Counsel for the City of Austin

cc: Larry Slovensky         *via Email: lslovensky@kslaw.com*