UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LONESTAR AIRPORT HOLDINGS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF AUSTIN, TEXAS,<br><br>  Defendant. | Civil Action No. 1:22-cv-00770-RP |

**PLAINTIFF LONESTAR AIRPORT HOLDINGS, LLC'S OPPOSITION TO
DEFENDANT'S MOTION TO DEFER PRELIMINARY INJUNCTION PROCEEDINGS**

The City's request that the Court defer all preliminary injunction proceedings, including discovery, hearings, and rulings, until the Court rules on the City's pending Motion for Abstention (Dkt. 29) and its now-mooted Motion to Dismiss[1] (Dkt. 33) should be denied.  The Court has the inherent power to control its docket and decide pending motions in whatever order it chooses, but the City's suggestion on how the Court should exercise that power, if adopted, would severely prejudice Lonestar and reward gamesmanship by the City.  Moreover, the alleged "jurisdictional" issues that the City proffers as the basis for deferral are not actually jurisdictional and can easily be considered and disposed of in the context of the pending motion for preliminary injunction, as the City raised them in opposing the motion.  And they all lack merit.

In short, the Motion to Defer is a ploy to delay the proceedings while the City continues to violate its contract with Lonestar and moves forward with irreparably harming Lonestar's business. Indeed, after allowing the state condemnation proceedings to lie dormant for months, presumably

---

[1] Lonestar filed its First Amended Complaint (Dkt. 38) on October 12, 2022, to seek monetary damages in addition to injunctive and declaratory relief, as well as to address the City's arguments in its Motion to Dismiss.  As the Court recognized in an unnumbered text order entered on the docket October 14, 2022, the amended pleading moots the City's Motion to Dismiss (Dkt. 33).

- 1 -

in an attempt to support its argument that Lonestar's claims are not sufficiently ripe, the City has now suddenly changed course and is pushing to set a hearing on its condemnation petition in early November. The City's scheme to divert this Court from considering Lonestar's PI Motion while it takes aggressive steps to complete its plan to take Lonestar's business should be rejected.

## RELEVANT BACKGROUND

Lonestar commenced this action because the City is in breach of its contract with Lonestar and is about to take and destroy Lonestar's business in violation of the U.S. Constitution, Texas law, and the plain terms of the parties' agreement. That agreement, a 40-year Lease and Concession Agreement entered in 2016, required Lonestar to invest tens of millions of dollars in redeveloping the South Terminal at the Austin Airport. In return, the City granted Lonestar the right to operate the South Terminal and, under Article 15 of the Agreement, the exclusive first right to develop and operate any expansion of the South Terminal or other new facility at the Airport. But, following a change in Airport administration, the City deliberately decided to breach the Agreement and ignore Lonestar's rights. It has excluded Lonestar from plans for new facilities at the Airport and, in June of this year, initiated a state condemnation proceeding to oust Lonestar from the South Terminal.

Seeking to protect its rights and prevent irreparable harm to its business at the South Terminal, Lonestar filed a Complaint on August 1, 2022 (Dkt. 1) in this Court, which is named in the Agreement as the exclusive venue "for any action arising out of or concerning" the Agreement (Agreement, Dkt. 20-2, ¶ 41.03). On September 1, 2022, Lonestar moved for a preliminary injunction to enjoin the City from (1) excluding Lonestar from development and construction of "New Facilities" at the Airport; and (2) unlawfully attempting to take Lonestar's business at the South Terminal. (Dkt. 20 at 1, 20.) On September 21, the Court held a scheduling conference at which the parties discussed the PI Motion and the possibility of expedited discovery, and the Court

set a tentative hearing date of November 4, 2022 for the PI Motion. (Dkt. 28.) The City made no mention of a motion to defer the proceedings. The following day, the City filed a 25-page opposition to the PI Motion (Dkt. 30), along with a Motion for Abstention (Dkt. 29) that is now fully briefed (*see* Dkts. 34, 39). The City made no mention of a motion to defer in those filings.

After reviewing the City's PI Opposition and in light of factual assertions made therein, Lonestar raised its intent to seek expedited discovery from the City, and the parties discussed that request on September 27 and 30. Again, the City never mentioned any motion to defer. Lonestar filed its motion for limited, expedited discovery on September 30. (Dkt. 32.) On October 3, the City filed a Motion to Dismiss alleging a lack of subject-matter jurisdiction, based on ripeness and governmental immunity, as well as a failure to state a claim. (Dkt. 33.) At no point in that lengthy brief did the City move to defer the PI proceedings. On October 7, the City responded to Lonestar's Discovery Motion (Dkt. 36) and, at that time, filed the instant Motion to Defer (Dkt. 35).

The Motion seeks to stay all "discovery, hearings and rulings" related to Lonestar's PI Motion "pending the Court's rulings on the threshold jurisdictional issues raised in" the City's Motion for Abstention and Motion to Dismiss. (Dkt. 35 at 1.) The City has represented to the Court that the Special Commissioners' hearing in the state condemnation proceeding "is pending." (Dkt. 29 at 7.) Yet, the City refused to respond to a scheduling request from the Special Commissioners for 75 days and then, just yesterday, sought to schedule the Special Commissioners' hearing for some time between November 10 and November 15.[2] (Dkt. 39-1.)

---

[2] The City suggests that it is seeking to schedule the Special Commissioners' hearing in light of Lonestar's Amended Complaint, which adds a request for money damages. (Dkt. 39-1 at 2.) That reasoning makes no sense because the parties have engaged in extensive discussions regarding potential damages since August, and Lonestar's original Complaint makes clear its intent to seek damages. (*See, e.g.*, Dkt. 1, ¶¶ 131, 162, 177, 192.) Lonestar has also made clear that damages will be inadequate to remedy the harm from the City's condemnation of Lonestar's business at the South Terminal and continued violations of the Agreement.

**ARGUMENT**

A district court "has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). A stay pending the outcome of a motion to dismiss "is by no means automatic"; in fact, it "is the exception rather than the rule." *Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, 2008 WL 2038887, at *1 (N.D. Tex. Apr. 24, 2008) (citations omitted). The Court should decline to take the exceptional step of staying the preliminary injunction proceedings because the City's request is untimely, a stay is unnecessary and would be unduly prejudicial to Lonestar, and the alleged jurisdictional issues are all without merit.

**A.    The City's Deferral Request Is Untimely**

In the five weeks between the filing of Lonestar's PI Motion on September 1 and the filing of the City's Deferral Motion on October 7 and in the months since the initial Complaint seeking immediate injunctive relief was filed, the City had numerous opportunities to seek a stay of the proceedings, yet it never did. The City participated in a scheduling conference with the Court on September 21, filed a Motion for Abstention and 25-page response to the PI Motion on September 22, communicated several times with Lonestar's counsel between September 27 and 30, and filed its Motion to Dismiss on October 3. The City never mentioned a stay on any of those occasions. (*See* Dkt. 37 at 2.) The City's Motion to Defer comes too late and should be rejected for that reason alone. *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, 2008 WL 2930482, at *1–2 (N.D. Tex. July 23, 2008) (rejecting motion to stay in part because it was untimely).

**B.    A Stay of the Preliminary Injunction Proceedings Is Unnecessary and Unduly Prejudicial**

The City's Motion to Defer rests on the faulty premise that moving forward with the preliminary injunction proceedings "will require the Court to make rulings on the merits of this

case before determining its authority and discretion to hear this case in the first place." (*See* Dkt. 35 at 5.) A ruling on Lonestar's PI Motion is not a final merits decision, and "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The Court also is not confined to a strict order of operations in the face of imminent, irreparable harm, but "unquestionably ha[s] the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *United States v. Mine Workers of Am.*, 330 U.S. 258, 290 (1947); *see also United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1973) (affirming "the power of a court of equity to issue an order to preserve the status quo in order to protect its ability to render judgment in a case over which it might have jurisdiction").

Even if the Court needed to assure itself of its jurisdiction before deciding Lonestar's PI Motion, it could do so without deferring the proceedings. The City's Motion fails to mention that *every one* of the City's asserted jurisdictional issues was raised in response to the PI Motion and will be ripe for decision by the time the PI Motion is ready to be decided. First, the City asserts that Lonestar's takings and breach-of-the-covenant-of-quiet-enjoyment claims are not ripe. Those ripeness arguments were made in the City's opposition to the PI Motion. (*Compare* Dkt. 33 at 2–3, *with* Dkt. 30 at 12, 18–19.) Second, the City asserts that it has immunity with respect to Lonestar's contract claim under Article 15 of the Agreement. That argument, too, was raised in the City's opposition to the PI Motion. (*Compare* Dkt. 33 at 3–6, *with* Dkt. 30 at 8–9.) Last, the City argues that the Court should abstain under *Colorado River*. Yet, the City's Motion for Abstention is fully briefed and the Court need not "defer" all issues regarding injunctive relief while it considers that motion. (*See* Dkts. 29, 34, 39.) In short, a stay of the preliminary injunction proceedings is entirely unnecessary.

At the same time, a stay would prejudice Lonestar. With each passing day, the City continues to proceed with plans for new facilities at the Airport without Lonestar's involvement, in violation of the Agreement, and the City moves closer to ousting Lonestar from the South Terminal and irreparably destroying Lonestar's business at the South Terminal. In fact, just yesterday, the City sought to schedule a hearing with the Special Commissioners in the state condemnation proceeding for some time between November 10 and November 15. (Dkt. 39-1.) This harm is not theoretical. As outlined in Lonestar's briefing, the City's representations that Lonestar will not be running the terminal next year is having the predictable outcome that Lonestar's existing business is being substantially harmed by the cloud the City's threats have placed over the South Terminal's future. It is causing irreparable injury to Lonestar to have to run its business under the cloud of a condemnation proceeding that would allow the City to take Lonestar's property unlawfully. In light of the imminent and irreparable harm Lonestar faces and the fact that the Court need not delay the preliminary injunction proceedings to decide the City's purported jurisdictional defenses, a stay is unwarranted.

### C.  The City's Arguments Raise No Jurisdictional Impediment

A stay of the preliminary injunction proceedings is also unwarranted because the City's "jurisdictional" arguments do not actually affect this Court's subject-matter jurisdiction, and in any event, they are all meritless.[3]

To start, the City argues that Lonestar's takings claim is not ripe because the City has not actually condemned Lonestar's property. (Dkt. 30 at 18–19; Dkt. 33 at 2.) That argument, as an initial matter, relates to prudential concerns, not the Court's Article III jurisdiction. *See N. Mill*

---

[3] While the following discussion outlines why the City's assertedly jurisdictional arguments fail, Lonestar reserves the right to respond further to those arguments in its Reply in support of its PI Motion.

*St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021).[4]  "[W]here a plaintiff asserts a genuine case or controversy, ripeness implicates only prudential concerns," *id*. at 1228 (quotations omitted), and Lonestar has pleaded a "certainly impending" constitutional injury that establishes a case or controversy, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

In any event, even the non-jurisdictional principles on which the City relies do not require Lonestar to wait to be ousted from the South Terminal for its dispute to be ripe.  Rather, a takings dispute is ripe for adjudication when "there is no question about the city's position" and a party must "choose between surrendering possession of their property or facing the wrath of the government."[5]  *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021); *see also Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 389 (6th Cir. 2022) (citing *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2070, 2072–73 (2021)) ("As the Supreme Court made clear, plaintiffs may sue for injunctive relief even before a physical taking has happened. [Plaintiff]'s claims are therefore ripe.").  The City has instituted direct condemnation proceedings, sought to schedule a hearing to move forward with those proceedings, and made clear that it does not intend to compensate Lonestar fully for its interests under the Agreement. (*See* Dkt. 30 at 10–12, 13–16.)  The City has made clear that it intends to deprive Lonestar of its property without just compensation.  That is more than sufficient for Lonestar's takings claim to be ripe.

---

[4] The City's argument relies on *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019), which partially overruled *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  The Supreme Court has characterized *Williamson County* as imposing "two independent prudential hurdles." *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 733–34 (1997).

[5] The City attempts to distinguish *Pakdel* by arguing that it "has not taken a conclusive position" on whether to "take possession of [Lonestar's] leasehold," and will not until after the Special Commissioners' hearing. (Dkt. 39, at 8–9).  Prior courts have rejected similar posturing and warned against conflating ripeness issues with merits questions.  *See Barber*, 31 F.4th at 389 & n.4 (township's argument that "until the Dam is actually removed, there is no way to know whether Barber has a viable takings claim" is a merits, not ripeness question).

The City also argues that Lonestar's claim of breach of the covenant of quiet enjoyment is not ripe because the City has not formally evicted Lonestar from the premises. (Dkt. 30 at 12; Dkt. 33 at 3.) That argument really goes to whether Lonestar has stated a claim, not whether the Court has jurisdiction to consider it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The Court may address the argument in deciding the likelihood of success on the merits, and it is no reason to stay the preliminary injunction proceedings.

Regardless, the City's argument is meritless. Lonestar need not be evicted before seeking relief. *See Goldman v. Alkek*, 850 S.W.2d 568, 572 (Tex. App.–Corpus Christi 1993, no writ); *see also McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 762–63 (N.D. Tex. 2017) ("[A] tenant is not always required to abandon the premises to establish a claim for breach of the warranty of quiet enjoyment, particularly when the claim is being asserted affirmatively."). The City's actions have "hindered [Lonestar] in [its] occupation and enjoyment of the leased premises for purposes for which they were leased," and that is all that is required for Lonestar's claim to be ripe. *See Goldman*, 850 S.W.2d at 574.

Next, the City asserts that it is entitled to governmental immunity as to Lonestar's claim for breach of its exclusive rights under Article 15. (Dkt. 30 at 8–9; Dkt. 33 at 3–6.) The City, however, does not dispute that the Texas Legislature has waived the City's immunity to suit for breach-of-contract claims when the City enters a contract like the Agreement here. *See* Tex. Local Gov't Code §§ 271.151(2)(A), 271.152.[6] To invoke the Texas Legislature's waiver of immunity, a claimant need only "plead facts with some evidentiary support that constitute a claim for which immunity is waived," *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d

---

[6] The Agreement itself expressly waives the City's "rights to assert sovereign or governmental immunity from suit or liability for contract claims" asserted by Lonestar. (Agreement, Dkt. 20-2, ¶ 41.11.)

98, 109 (Tex. 2014), which Lonestar has done (*see* Dkt. 38, ¶¶ 163–239).  The City argues that this legislative waiver of immunity is inapplicable because Article 15 is an unenforceable "agreement to negotiate toward a future contract." (Dkt. 30 at 8; Dkt. 33 at 5.)  But that is also a merits argument and is not a reason to stay the preliminary injunction proceedings.

The City's argument also lacks merit on its own terms.  Article 15 is not a nebulous "agreement to negotiate toward a future contract."  It provides Lonestar a clear right—an exclusive first right to "develop, construct and operate" any "Expansion or New Facility" at the Airport.  (Agreement, Dkt. 20-2, ¶ 15.01.)  And though Article 15 leaves open aspects of the parties' future agreement to be set "on mutually agreeable terms," that does not make the parties' obligations any less clear.  Further, to the extent terms are left to be agreed upon later, those terms may be informed by the Agreement itself and the parties' course of dealing.  This type of agreement is legally enforceable. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 240–44 (Tex. 2016) (determining that a contract providing for a future payment in an amount "to be mutually agreed upon" was enforceable because the clause was "sufficiently definite to enable a court to determine [the breaching party's] obligations and to provide a remedy for its breach"); *see also McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (holding that an "agreement to agree" was enforceable because it contained all material terms).

The case on which the City relies in arguing otherwise is inapposite—there, the parties promised to "make a good faith effort" to lift an agreed-upon cap in a project's fees in the event the cap was exceeded, and the court held that such a contract was not sufficiently definite to be enforceable. *See Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 370–71 (Tex. 2019).  But Article 15, which contains the material terms of the parties' agreement and

makes clear the parties' obligations, is not ambiguous or indefinite.[7]

The City's last argument is that the Court should abstain under *Colorado River*. (Dkt. 35 at 4; *see generally* Dkt. 29.) Abstention under *Colorado River* is not jurisdictional; rather, it is an exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. 800, 817–18 (1976). Moreover, as detailed in Lonestar's opposition to the City's Motion for Abstention, *Colorado River* abstention is appropriate only in "extraordinary and narrow" circumstances not present here, and the threshold requirement for abstention—a parallel state-court proceeding—is lacking. (Dkt. 34 at 4–16.) This is not the rare case for the Court to abstain from its "virtually unflagging obligation" to exercise its jurisdiction.

Overall, in light of the weakness of the City's non-jurisdictional arguments, the Court should not stay the preliminary injunction proceedings on the basis of those arguments.

### D. The City's Argument that Discovery Is Not Permitted in the State Condemnation Proceeding Is Reason to Grant Lonestar Injunctive Relief

The City ends its motion by pointing out that Lonestar is seeking discovery it would not be permitted to obtain in the state condemnation proceeding until after the completion of the administrative phase. (Dkt. 35 at 6.) But far from supporting the City's request for deferral, the lack of discovery in the condemnation proceeding underscores why deferring the proceedings in this Court—the parties' bargained-for venue—is inappropriate. The City should not be permitted to delay the proceedings or to veto Lonestar's right to seek expedited discovery in this Court.

### CONCLUSION

Lonestar respectfully requests that the Court deny the City's Motion to Defer.

---

[7] In any event, questions of fact as to the parties' intent should not be decided as a threshold matter of jurisdiction. *See Karns v. Jalapeno Tree Holdings, LLC*, 459 S.W.3d 683, 690 (Tex. App.—El Paso 2015, pet. denied); *see also Bell v. Hood*, 327 U.S. 678, 683–85 (1946).

Dated: October 14, 2022.                    Respectfully submitted,

                                            */s/ Edward F. Fernandes*
                                            **KING & SPALDING LLP**
                                            Edward F. Fernandes (SBN 06932700)
                                            Julia C. Barrett (SBN 24116075)
                                            500 W 2nd St #1800
                                            Austin, TX 78701
                                            T: 512 457 2000
                                            efernandes@kslaw.com
                                            jbarrett@kslaw.com

                                            Lawrence A. Slovensky (*pro hac vice*)
                                            Mandi Goodman (*pro hac vice*)
                                            1180 Peachtree St NE
                                            Atlanta, GA 30309
                                            T: 404 572 4600
                                            lslovensky@kslaw.com

                                            **MUNGER, TOLLES & OLSON LLP**
                                            Bethany Kristovich (*pro hac vice*)
                                            Michael Doyen (*pro hac vice*)
                                            John Major (*pro hac vice*)
                                            350 South Grand Avenue
                                            Los Angeles, CA 90071
                                            T: 213 683 9292
                                            Michael.doyen@mto.com
                                            Bethany.kristovich@mto.com
                                            John.major@mto.com

                                            **BARRON, ADLER, CLOUGH & ODDO, LLP**
                                            Christopher M. Clough (SBN 24044802)
                                            Christopher J. Oddo (SBN 24013257)
                                            808 Nueces Street
                                            Austin, TX 78701
                                            T: 512 478 4995
                                            clough@barronadler.com
                                            oddo@barronadler.com

                                            *Attorneys for Plaintiff*
                                            *Lonestar Airport Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 14, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the CM/ECF system of the Court, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Edward F. Fernandes*
Edward F. Fernandes