**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LONESTAR AIRPORT HOLDINGS, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:22-CV-00770-RP** |
| | § | |
| **CITY OF AUSTIN, TEXAS,** | § | |
| *Defendant.* | § | |

<u>**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and as permitted by Rule 15(a)(3), Defendant City of Austin, Texas (the "City"), files this Motion to Dismiss Plaintiff LoneStar Airport Holdings, LLC's ("Plaintiff") First Amended Complaint (Dkt. No. 38) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

I.      INTRODUCTION ................................................................................................ 1

II.     RULE 12(B)(1) MOTION TO DISMISS ........................................................... 1

        A.      Legal Standard ......................................................................................... 1

        B.      Most of Plaintiff's Claims Are Not Ripe. ................................................ 2

                1.      The Taking Claims Are Not Ripe. ............................................... 2

                2.      The Contract Claims Arising from Article 2.03 of the Lease Are Not
                        Ripe. ............................................................................................. 3

        C.      Governmental Immunity Bars Plaintiff's Remaining Claims. ................. 3

                1.      Chapter 271 of the Local Government Code Does Not Waive
                        Immunity from Plaintiff's Contract Claims Arising from Article 15
                        of the Lease. ................................................................................. 4

                2.      The Declaratory Judgment Act Does Not Waive Immunity ........ 6

                3.      The City Is Immune from Plaintiff's Promissory-Estoppel Claims........... 7

III.    RULE 12(b)(6) MOTION TO DISMISS ............................................................. 8

        A.      Legal Standard ......................................................................................... 8

        B.      The City Cannot Breach the Lease by Exercising Its Statutory Power and
                Contractual Right of Eminent Domain. ................................................... 8

        C.      Plaintiff's Contract Claims Under Article 15 Fail as a Matter of Law. ............... 11

                1.      Article 15 Is Unenforceable Because of an Unsatisfied Condition
                        Precedent. .................................................................................... 11

                2.      Article 15 Is an Unenforceable Agreement to Negotiate. .......... 11

                3.      Plaintiff's Interpretation of Article 15 Is Contrary to the Federal
                        Aviation Act and FAA Policy. .................................................... 12

                4.      Plaintiff's Interpretation of Article 15 Is Inconsistent with Texas
                        Competitive Bidding Laws and City Ordinances. ...................... 16

D.   Plaintiff's Takings Claims Fail as a Matter of Law. ............................................. 17

1.   The Condemnation of Plaintiff's Leasehold Interest Is Supported by a Valid Public Purpose. ................................................................................. 17

2.   Plaintiff's Alleged Rights Under Articles 2.03 and 15 Cannot Support the Takings Claims. .................................................................... 18

3.   Plaintiff Is Not Legally Entitled to Recover "Going Concern" Value. ...................................................................................................... 18

E.   Plaintiff's Promissory-Estoppel Claims Are Foreclosed by the Existence of a Valid Contract Between the Parties. ................................................................. 20

IV.   CONCLUSION .......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................8

*AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.*,
  262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.) ............................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................8

*BMI Salvage Corp. v. FAA*,
  272 F. App'x 842 (11th Cir. 2008) ................................................................13, 15

*Centex Corp. v. Dalton*,
  840 S.W.2d 952 (Tex. 1992)................................................................................11

*City of Austin v. Whittington*,
  384 S.W.3d 766 (Tex. 2012)..................................................................................8

*City of Blue Mound v. Southwest Water Co.*,
  449 S.W.3d 678 (Tex. App.—Fort Worth 2014, no pet.)................................18, 19

*City of Bonham v. Sw. Sanitation, Inc.*,
  871 S.W.2d 765 (Tex. App.—Texarkana 1994, writ denied)................................16

*City of Bryan v. Page*,
  51 Tex. 532 (1879)..............................................................................................16

*City of Deer Park v. Ibarra*,
  No. 01-10-00490-CV, 2011 Tex. App. LEXIS 6899 (Tex. App.—Houston [1st
  Dist.] Aug. 25, 2011, no pet.) ..............................................................................7

*City of Glendale v. Super. Ct.*,
  23 Cal. Rptr. 2d 305 (Cal. Ct. App. 1993) ..........................................................10

*City of Hutchins v. Prasifka*,
  450 S.W.2d 829 (Tex. 1970)..................................................................................7

*City of New Braunfels v. Carowest Land, Ltd.*,
  432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.) ..............................................6

*Clear Lake City Water Auth. v. Clear Lake Utils. Co.*,
  549 S.W.2d 385 (Tex. 1977)................................................................................10

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*,
    576 S.W.3d 362 (Tex. 2019)...............................................................................4, 5, 12, 17

*Gay v. City of Wichita Falls*,
    457 S.W.3d 499 (Tex. App.—El Paso 2014, no pet.)..................................................7

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
    786 F.3d 400 (5th Cir. 2015) ...................................................................................20

*Goldman v. Alkek*,
    850 S.W.2d 568 (Tex. App.— Corpus Christi–Edinburg 1993, no writ).................3

*Goodyear Shoe Machinery Co. v. Boston Terminal Co.*,
    57 N.E. 214 (Mass. 1900) .......................................................................................10

*In re Great Lakes Dredge & Dock Co.*,
    624 F.3d 201 (5th Cir. 2010) .....................................................................................8

*Groba v. City of Taylor*,
    No. 03-19-00365-CV, 2021 Tex. App. LEXIS 811 (Tex. App.—Austin Feb. 3,
    2021, pet. denied)........................................................................................................8

*H&H Sand & Gravel, Inc. v. City of Corpus Christi*,
    No. 13-06-00677-CV, 2007 Tex. App. LEXIS 8878 (Tex. App.—Corpus
    Christi–Edinburg Nov. 8, 2007, pet. denied) .............................................................7

*Henderson v. Tex. Commerce Bank-Midland, N.A.*,
    837 S.W.2d 778 (Tex. App.—El Paso 1992, writ denied)........................................11

*Holmes v. P.K. Pipe & Tubing, Inc.*,
    856 S.W.2d 530 (Tex. App.—Houston [1st Dist.] 1993, no writ)..............................3

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ...................................................................................1

*Hous. Auth. of City of Dallas v. Higginbotham*,
    143 S.W.2d 79 (Tex. 1940).......................................................................................17

*J. Andrew Lange, Inc. v. FAA*,
    208 F.3d 389 (2d Cir. 2000)......................................................................................12

*Kimball Laundry Co. v. United States*,
    338 U.S. 1 (1949)................................................................................................18, 19

*Knick v. Township of Scott*,
    139 S. Ct. 2162 (2019)................................................................................................2

*Leeco Gas & Oil Co. v. Nueces Cnty.*,
  736 S.W.2d 629 (Tex. 1987) ................................................................................7

*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) ..............................................................................2

*Melton v. CU Members Mortg.*,
  586 S.W.3d 26 (Tex. App.—Austin 2019, pet. denied) .....................................10

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*,
  743 F.3d 964 (5th Cir. 2014) .............................................................................20

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  833 F.2d 583 (5th Cir. 1987) ..............................................................................2

*Niswonger v. Am. Aviation, Inc.*,
  411 F. Supp. 769 (E.D. Tenn. 1975) ..................................................................16

*Pac. Coast Flyers, Inc. v. Cnty. of San Diego*,
  FAA Dkt. No. 16-04-08, 2005 FAA LEXIS 514, Director's Determination
  (July 25, 2005) .................................................................................13, 14, 15

*Pakdel v. City and County of San Francisco*,
  141 S. Ct. 2226 (2021) ........................................................................................2

*Penobscot Air Servs. v. FAA*,
  164 F.3d 713 (1st Cir. 1999) .............................................................................12

*Pompano Beach v. FAA*,
  774 F.2d 1529 (11th Cir. 1985) .................................................................13, 15

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ..............................................................................1

*Rasmussen v. Hous. & Redevelopment Auth.*,
  712 N.W.2d 802 (Minn. Ct. App. 2006) ............................................................10

*RDM, LLC v. Ted Stevens Anchorage Int'l Airport*,
  FAA Dkt. No. 16-09-14, 2011 FAA LEXIS 373, Director's Determination
  (June 7, 2011) ...................................................................................................14

*Reeves v. City of Dallas*,
  195 S.W.2d 575 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.) .........................18

*Rivero v. Fid. Invs., Inc.*,
  1 F.4th 340 (5th Cir. 2021) .................................................................................6

*Seureau v. ExxonMobil Corp.*,
274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .............................9, 10, 19

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) ...................................................................................................6

*Skydance Helicopters, Inc. v. Sedona Oak-Creek Airport Auth.*,
FAA Dkt. No. 16-02-02, 2003 FAA LEXIS 92, Director's Determination
(Mar. 7, 2003) ...................................................................................................................13, 15

*Somerset Indep. Sch. Dist. v. Casias*,
No. 04-07-00829-CV, 2008 Tex. App. LEXIS 2895 (Tex. App.—San Antonio
Apr. 23, 2008, pet. denied) ......................................................................................................7

*State v. Central Expressway Sign Assocs.*,
302 S.W.3d 866 (Tex. 2009) .................................................................................................18

*State v. Rogers*,
772 S.W.2d 559 (Tex. App.—Amarillo 1989, writ denied) ..................................................18

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ...........................................................................................3, 4, 7

*Tex. Fruit Palace, Inc. v. City of Palestine*,
842 S.W.2d 319 (Tex. App.—Tyler 1992, writ denied) ........................................................17

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002) ............................................................................................3, 4, 6, 7

*Town of Shady Shores v. Swanson*,
590 S.W.3d 544 (Tex. 2019) ...................................................................................................4

*W. Seafood Co. v. United States*,
202 F. App'x 670 (5th Cir. 2006) ..........................................................................................17

*Wasson Interests, Ltd. v. City of Jacksonville*,
489 S.W.3d 427 (Tex. 2016) ...................................................................................................3

*Wasson Interests, Ltd. v. City of Jacksonville*,
559 S.W.3d 142 (Tex. 2018) ...................................................................................................3

*Weingarten Realty Inv'rs v. Albertson's, Inc.*,
66 F. Supp. 2d 825 (S.D. Tex. 1999) ......................................................................................2

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................1, 2, 17

49 U.S.C. § 40103(e) ...........................................................................................12, 13, 15, 16

49 U.S.C. § 47107(a)(4) ...................................................................................12, 15, 16

TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(10) .......................................................4

TEX. GOV'T CODE § 2206.001(d) ...............................................................................10

TEX. GOV'T CODE § 2269.101(b) ...............................................................................16

TEX. GOV'T CODE § 2269.451 ....................................................................................16

TEX. GOV'T CODE § 2269.452(a) ................................................................................16

TEX. LOC. GOV'T CODE § 251.001(a)(1) .....................................................................8

TEX. LOC. GOV'T CODE § 252.021(a) .........................................................................16

TEX. LOC. GOV'T CODE § 252.061 ..............................................................................16

TEX. LOC. GOV'T CODE § 271.151(2)(A) ......................................................................5

TEX. TRANSP. CODE § 22.002(a) ................................................................................9

TEX. TRANSP. CODE § 22.002(a)(2) ......................................................................4, 17

TEX. TRANSP. CODE § 22.011(c) ............................................................................8, 19

**Other Authorities**

AUSTIN, TEX., CHARTER, art. VII, FINANCE § 15 ..........................................................16

FAA, ADVISORY CIRCULAR 150/5190-6, EXCLUSIVE RIGHTS AT FEDERALLY-
    OBLIGATED AIRPORTS (2007)........................................................................13, 14

FAA ORDER 5190.6B, CHANGE 1, AIRPORT COMPLIANCE MANUAL (2009).................13

FED. R. CIV. P. 12(b)(1) ...................................................................................1, 2, 8, 20

FED. R. CIV. P. 12(b)(6) ...................................................................................8, 9, 20

TEX. CONST. art. XI, § 13.............................................................................................4

## I.     INTRODUCTION

Plaintiff's claims against the City fail as a matter of law and should be dismissed. First, this Court lacks subject-matter jurisdiction. Plaintiff's claims under 42 U.S.C. § 1983, the Declaratory Judgment Act, and the Texas Constitution, and for breach of contract arising from Article 2.03 of the South Terminal Lease and Concession Agreement (as amended, the "Lease," found at Dkt. No. 38, Ex. A) are not ripe.

Second, governmental immunity bars the claims for breach of contract arising from Article 15 of the Lease, declaratory judgment, and promissory estoppel.

Third, Plaintiff has failed to state a claim on which relief can be granted. The City cannot breach the Lease by exercising its statutory power and express contractual right of eminent domain. Moreover, Plaintiff's contract claims arising from Article 15 fail because that article has an unsatisfied condition precedent and is an unenforceable agreement to negotiate, and Plaintiff's differing interpretation would render the article contrary to federal aviation law and Texas competitive-bidding law. Plaintiff's takings claims fail because the commencement of state condemnation proceedings is supported by valid public policy recognized by the Texas legislature and does not breach the Lease, and because Plaintiff is not legally entitled to recover "going concern" value. Finally, the promissory-estoppel claim is foreclosed by the existence of the Lease.

## II.     RULE 12(B)(1) MOTION TO DISMISS

### A.     LEGAL STANDARD

A federal court properly dismisses a case for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the court lacks the constitutional or statutory power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

B.     **MOST OF PLAINTIFF'S CLAIMS ARE NOT RIPE.**

Because ripeness is a question of the Court's subject-matter jurisdiction, a party may contest ripeness through a Rule 12(b)(1) motion to dismiss. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). A plaintiff's claims should be dismissed for lack of ripeness when they are "abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).

1.     **The Taking Claims Are Not Ripe.**

A property owner's claims challenging a taking become ripe "as soon as a government takes his property for public purpose without paying for it." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019). "When statutory condemnation procedures are utilized, a 'taking' occurs when the condemnor takes actual possession of the property or takes constructive possession by depositing the special commissioners' award in the registry of the court." *Weingarten Realty Inv'rs v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 843 (S.D. Tex. 1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000).[1]

Plaintiff's claims under 42 U.S.C. § 1983 (Count I), the Declaratory Judgment Act (Count II), and the Texas Constitution (Count III) all challenge the City's right to condemn Plaintiff's leasehold interest. (*See* Dkt. No. 38 at ¶¶ 136–37, 148, 154–55.) These claims are not ripe and should be dismissed because, under Texas law, no taking will occur until the City takes constructive possession by depositing the special commissioners' award into the registry of the state court presiding over the pending condemnation proceeding. *See Weingarten Realty*, 66 F. Supp. 2d at 843.

---

[1]     *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021), which Plaintiff cites, does not apply for the reasons stated in the City's Reply in Support of Its Motion for Abstention. (*See* Dkt. No. 39 at 8–9.)

### 2.      The Contract Claims Arising from Article 2.03 of the Lease Are Not Ripe.

Plaintiff's claims arising from the alleged breach of the covenant of quiet enjoyment in Article 2.03 of the Lease (part of Count IV) are also not ripe. "A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission." *Holmes v. P.K. Pipe & Tubing, Inc*., 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ).[2] Plaintiff does not allege that it has been actually or constructively evicted from the South Terminal. For that reason, any claim arising under Article 2.03, including the derivative contract claims under Articles 34 and 41 to the extent those claims are based on Article 2.03,[3] are not ripe under Texas law and should be dismissed.

### C.      G̲O̲V̲E̲R̲N̲M̲E̲N̲T̲A̲L̲ ̲I̲M̲M̲U̲N̲I̲T̲Y̲ ̲B̲A̲R̲S̲ ̲P̲L̲A̲I̲N̲T̲I̲F̲F̲'̲S̲ ̲R̲E̲M̲A̲I̲N̲I̲N̲G̲ ̲C̲L̲A̲I̲M̲S̲.

A local governmental entity is immune from suit if it is "acting as the State's agent and performing governmental functions for the public benefit." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016). When a plaintiff sues a city or governmental official who is performing governmental functions,[4] the plaintiff must affirmatively demonstrate the Texas legislature consented to the lawsuit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

A local governmental entity cannot waive its immunity from suit by contract. *Tex. Nat.*

---

2     *Goldman v. Alkek*, 850 S.W.2d 568 (Tex. App.— Corpus Christi–Edinburg 1993, no writ), which Plaintiff cites, is inapplicable because it involved a quiet-enjoyment clause that departed from the "traditional elements of a breach of the warranty of quiet enjoyment." *Id.* at 572.

3     (*See* Dkt. No. 38 at ¶¶ 216 (asserting breach of Article 34 based on condemnation of rights under Articles 2 and 15) & 225 (asserting breach of Article 41 based on deprivation of rights under other parts of the Lease).)

4     Texas courts focus on the nature of the function the municipality was performing when it entered into a contract to determine whether the function was governmental or proprietary. *See Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 154 (Tex. 2018).

*Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 858 (Tex. 2002). Rather, the power to waive immunity from suit lies solely with the Texas legislature, which must use "clear and unambiguous language" to create a statutory waiver. *Id.* at 853–54. Any legislative statutory waiver of governmental immunity is limited to only the express relief provided in the statute. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 553–54 (Tex. 2019). Without a legislative statutory waiver, immunity from suit acts as a jurisdictional bar. *Miranda*, 133 S.W.3d at 224.[5]

The Texas legislature, consistent with its constitutional prerogative to classify municipal functions as either governmental or proprietary, *see* TEX. CONST. art. XI, § 13, has declared that the development and operation of a municipal airport are governmental functions. *See* TEX. TRANSP. CODE § 22.002(a)(2) (classifying the "planning, acquisition, establishment, construction, improvement, equipping, maintenance, operation, regulation, protection, and policing of an airport" as "public and governmental functions, exercised for a public purpose"); TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(10) (listing "airports" as a governmental function under the Texas Tort Claims Act); *accord Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 367 (Tex. 2019). Because the City entered into the Lease with Plaintiff "to reactivate the South Terminal" and "serve air carriers that serve the Airport and passengers served by such air carriers" (*see* Lease preamble E), it was acting in its governmental capacity, and governmental immunity therefore applies.

1.   **Chapter 271 of the Local Government Code Does Not Waive Immunity from Plaintiff's Contract Claims Arising from Article 15 of the Lease.**

The Texas legislature has established a single, limited waiver of immunity from suit for

---

[5]   Even if the City could waive its immunity from suit by contract, it has not done so here. Article 41.11 of the Lease provides: "Owner does not waive, and expressly reserves, all immunities existing under Applicable Law available to Owner as a Texas home-rule municipal corporation." Lease art. 41.11.

breach-of-contract claims brought against local governmental entities under Subchapter I of Chapter 271 of the Local Government Code. More specifically, immunity from suit is waived if the local governmental entity enters into a legally enforceable "written contract stating the essential terms of the agreement for providing goods and services to the local governmental entity." TEX. LOC. GOV'T CODE § 271.151(2)(A).

Plaintiff's contract claims (Count IV) are based in part on alleged breaches of Article 15 of the Lease. (*See* Dkt. No. 38 at ¶¶ 189–211.) According to Plaintiff, the City breached Article 15 by allegedly refusing to honor Plaintiff's "contractual right of participation" in any "Expansion" or "New Facility" at the airport. (*Id.* at ¶ 206.)

Article 15, however, fails to state the "essential terms" of a legally enforceable agreement under Chapter 271. As the Supreme Court of Texas explained in *Vizant*, "agreements to negotiate toward a future contract are not legally enforceable." 576 S.W.3d at 371 (citing cases). Article 15 provides that Plaintiff's participation in any "Expansion" or "New Facility" is "subject to [the City]'s approval," and further clarifies that "both Parties shall work together in good faith to enter into an agreement regarding such Expansion or New Facility on mutually acceptable terms." Lease art. 15.01. Because this language creates nothing more than an agreement to negotiate in good faith toward a future contract, Article 15 does not state the essential terms of a legally enforceable agreement and, consequently, is not subject to Chapter 271's waiver of immunity. *Vizant*, 576 S.W.3d at 371 (holding that a promise to make a "good faith effort" to receive board authorization for an increase in the plaintiff's compensation under the contract did not state the essential elements of a legally enforceable agreement under Chapter 271).[6]

---

[6]   This argument also applies to Plaintiff's derivative contract claims under Articles 34 and 41 to the extent those claims are based on the underlying alleged breach of Article 15. *See supra* note 3. Additionally, even if Article 15 were legally enforceable, Chapter 271 does not waive

### 2.    The Declaratory Judgment Act Does Not Waive Immunity.

While the Declaratory Judgment Act "authorizes federal courts to provide declaratory relief," the statute "does not of itself confer jurisdiction on the federal courts." *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 343 (5th Cir. 2021). Declaratory-judgment claims brought under Texas law against a governmental entity "will ordinarily be barred by immunity, thereby divesting the trial court of jurisdiction, unless the [Texas] legislature has waived immunity as to the subject matter of the claim." *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 530 (Tex. App.—Austin 2014, no pet.). Indeed, Texas courts have held that declaratory-judgment suits against governmental entities and officials "seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities" cannot be maintained without legislative permission. *IT-Davy*, 74 S.W.3d at 855–56. Moreover, private parties cannot circumvent governmental immunity by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim. *Id.*

Here, Plaintiff has characterized its declaratory-judgment claim (Count II) as seeking vindication of its alleged constitutional rights. (*See* Dkt. No. 38 at ¶¶ 146–51.) But, in actual fact, Plaintiff would have no basis for a declaratory judgment under the allegations in the Complaint if it did not have the rights it claims to have under the Lease. The specific declarations requested by

---

immunity for consequential damages, which are the remedy for breach of a promise to negotiate in good faith. *Id.* at 373–74. (See also Dkt. No. 38 at ¶ 133 (seeking damages for the "lost opportunity to develop and operate any Expansion or New Facility that the City ultimately constructs in violation of Lonestar's contractual rights").) The damages available under Chapter 271 are limited to "the balance due and owing by the local governmental entity under the contract," plus attorney's fees and interest. *Id.* § 271.153(a). The statute does not allow consequential damages (except for delay damages) or exemplary damages. *Id.* § 271.153(b). An action seeking such damages is deemed to be a suit for which immunity from suit has not been waived. *See, e.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 413 (Tex. 2011). Additionally, Plaintiff expressly "waive[d] all rights to recover consequential, incidental, exemplary or punitive damages" in the Lease. *See* Lease art. 41.12.

Plaintiff, which are expressly predicated on its state-law contract claims, prove this point. (*See id.* at 57 (seeking, in Request B, a declaration that "the City may not *breach its obligations* and attempt to take Lonestar's business and/or *rights and interest in the Agreement* without compensating Lonestar *for the full value of the rights it seeks to take*") (emphases added) & 58 (seeking, in Request F, a declaration that the City "is in breach of Articles 2.03, 15, 34.03, and 41.13 of the Agreement").) In other words, Plaintiff's declaratory-judgment claim seeks to establish the Lease's validity and enforceability, enforce the City's performance under the Lease, and impose contractual liabilities on the City under the Lease. The claim is, therefore, precisely the type of declaratory-judgment claim for which Texas has refused to waive governmental immunity. *See IT-Davy*, 74 S.W.3d at 855–56.

### 3.    The City Is Immune from Plaintiff's Promissory-Estoppel Claims.

The City has governmental immunity from Plaintiff's promissory-estoppel claims (Counts V and VI) because Plaintiff has failed to plead an applicable legislative statutory waiver. *See Miranda*, 133 S.W.3d at 224. As multiple Texas courts have held, a claim for promissory estoppel falls outside of the limited scope of the statutory waiver of immunity found in Chapter 271.[7] Moreover, estoppel does not apply to a governmental entity when the claim involves the exercise of its governmental powers. *Leeco Gas & Oil Co. v. Nueces Cnty.*, 736 S.W.2d 629, 630 (Tex. 1987).[8]

---

[7]    *E.g., Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso 2014, no pet.); *City of Deer Park v. Ibarra*, No. 01-10-00490-CV, 2011 Tex. App. LEXIS 6899, at *16–18 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.); *Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 Tex. App. LEXIS 2895, at *9 (Tex. App.—San Antonio Apr. 23, 2008, pet. denied); *H&H Sand & Gravel, Inc. v. City of Corpus Christi*, No. 13-06-00677-CV, 2007 Tex. App. LEXIS 8878, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 8, 2007, pet. denied).

[8]    The limited exception laid out in *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex. 1970), which Plaintiff cites, only concerns "whether and under what exceptional circumstances a city

### III.     RULE 12(b)(6) MOTION TO DISMISS[9]

**A.     LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     THE CITY CANNOT BREACH THE LEASE BY EXERCISING ITS STATUTORY POWER AND CONTRACTUAL RIGHT OF EMINENT DOMAIN.**

Plaintiff's contract claims (Count IV) are all based on the contention that the City is breaching the Lease by initiating condemnation proceedings to acquire Plaintiff's leasehold interest, including its rights under Articles 2.03 and 15 of the Lease. That contention fails as a matter of law because both Texas law and the Lease itself permit the City to condemn Plaintiff's entire leasehold interest.

The City is statutorily authorized to take Plaintiff's leasehold for airport purposes. TEX. TRANSP. CODE § 22.011(c); TEX. LOC. GOV'T CODE § 251.001(a)(1). The City may exercise its statutory power of eminent domain whenever the taking is necessary for a public use. *City of Austin v. Whittington*, 384 S.W.3d 766, 772 (Tex. 2012). And the City's acquisition of real-property interests for airport purposes is considered "public and governmental functions, exercised

---

could be estopped from *enforcing municipal ordinances*; not whether a city's actions could confer jurisdiction on the trial court." *Groba v. City of Taylor*, No. 03-19-00365-CV, 2021 Tex. App. LEXIS 811, at *7–8 (Tex. App.—Austin Feb. 3, 2021, pet. denied).

[9]     To the extent necessary, the City incorporates its Rule 12(b)(1) arguments into this motion to dismiss under Rule 12(b)(6).

for a public purpose, and matters of public necessity." TEX. TRANSP. CODE § 22.002(a).

The Lease also expressly recognizes the City's right to exercise its power of eminent domain under these circumstances. Article 34, which is entitled "**CONDEMNATION AND BUSINESS INTERRUPTION**," provides that the Lease will terminate if the "entire Tenant's Interest" is taken at the time the condemning authority takes possession. Lease art. 34.01. Importantly, the provision further states: "If the condemning authority is the City, Tenant shall be entitled to compensation for the Fair Market Value of Tenant's Interest so taken." Lease art. 34.03.[10] The Lease defines "Tenant's Interest" as "all Tenant's right, title and interest in, to, under or derived from this Lease, *including the rights of Tenant under Article 2 and Article 15*, and the Trade Fixtures." Lease art. 1.01 (emphasis added).

In other words, the parties contemplated and addressed in the Lease the exact scenario presented here, in which the City is exercising its power and right of eminent domain to condemn Plaintiff's entire leasehold interest under the Lease, including Plaintiff's right of quiet enjoyment under Article 2.03 and the right of participation under Article 15, if any. Article 34 specifically allows such a condemnation, and no other provision in the Lease prohibits it.

To interpret Article 34 as somehow limiting the City's power of eminent domain, rather than confirming it, ignores the plain language of the provision. (*See* Dkt. No. 38 at ¶ 215 (admitting that "Article 34 does not expand or otherwise modify the City's authority to use eminent domain").) It also directly contravenes the rule in Texas that a "governmental entity may not agree to a contract provision that would limit the free exercise of its governmental powers." *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 225 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see*

---

[10]   Article 34 specifies a compensation formula if the City is the condemning authority and a different compensation formula if the City is not the condemning authority. *Id.*

*also Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 391 (Tex. 1977). "[A] contract that restricts a governmental entity's freedom to decide whether to initiate eminent domain or condemnation proceedings would be illegal and void." *Seureau*, 274 S.W.3d at 225. Plaintiff's claims arising from Articles 2.03 and 15 require this Court to find that those articles restrict the City's power of eminent domain, which would necessarily make the articles illegal and void.[11] *See id.*

In any event, Plaintiff cannot plead a breach of Article 2.03. At least two courts have held that the exercise of the power of eminent domain is not a breach of the quiet-enjoyment covenant in a lease. *See Goodyear Shoe Machinery Co. v. Boston Terminal Co.*, 57 N.E. 214, 215 (Mass. 1900); *Rasmussen v. Hous. & Redevelopment Auth.*, 712 N.W.2d 802, 807 (Minn. Ct. App. 2006) (holding that the landlord did not breach the quiet-enjoyment covenant when it condemned the leasehold interest). Other courts have held that if the condemnor is the landlord, exercising eminent domain cannot constitute a breach of a lease. *E.g.*, *City of Glendale v. Super. Ct.*, 23 Cal. Rptr. 2d 305, 313 (Cal. Ct. App. 1993).[12] Consistent with these cases, the City, as the lessor, did not breach the covenant of quiet enjoyment in the Lease by condemning the leasehold interest according to its legal power and contractual right to do so. *See* Lease art. 2.03 (expressly conditioning the covenant of quiet enjoyment on "the provisions of this Lease and Applicable Law").

---

[11] For the same reasons, Plaintiff's contract claims are barred under the doctrine of estoppel by contract. Under the doctrine, a party to a contract cannot, to the prejudice of another, take a position inconsistent with the contract's provisions. *Melton v. CU Members Mortg.*, 586 S.W.3d 26, 32 (Tex. App.—Austin 2019, pet. denied). Plaintiff's contract claims are based on the City's exercise of its condemnation rights under Article 34. Thus, Plaintiff is taking a position inconsistent with Article 34 to the prejudice of the City and should be estopped from asserting contract claims based on the City's exercise of its rights under Article 34.

[12] Notably, the Texas "anti-*Kelo*" statute limiting the government's authority to exercise eminent domain power exempts the taking of a leasehold estate on land owned by the government. TEX. GOV'T CODE § 2206.001(d) ("This section does not affect the authority of a governmental entity to condemn a leasehold estate on property owned by the governmental entity.").

C.   **PLAINTIFF'S CONTRACT CLAIMS UNDER ARTICLE 15 FAIL AS A MATTER OF LAW.**

Plaintiff's contract claims arising from Article 15, including the derivative claims under Articles 34 and 41, fail as a matter of law for at least four additional reasons.

### 1.   Article 15 Is Unenforceable Because of an Unsatisfied Condition Precedent.

First, Plaintiff's alleged right of participation under Article 15 is subject to an unsatisfied condition precedent. Under Texas law, "[a] condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). The phrase "subject to" means "that any agreement between the parties was based on satisfaction of the conditions precedent." *Henderson v. Tex. Commerce Bank-Midland, N.A.*, 837 S.W.2d 778, 781 (Tex. App.—El Paso 1992, writ denied).

Article 15 states that it is "subject to [the City]'s approval." Lease art. 15.01. That phrase qualifies as a condition precedent under Texas law and requires the City's approval before Plaintiff can exercise its alleged right of participation. Article 26.08 of the Lease confirms that the City has "absolute discretion" to determine what is "necessary" and "appropriate" when it comes to developing and improving the "Airport and all roadways, terminal facilities, land areas and taxiways and any other facilities at the Airport." Lease art. 26.08. Plaintiff does not allege in the Complaint that the City ever approved Plaintiff's participation in the development, construction, or operation in an "Expansion" or "New Facility." Without that approval, the condition precedent of Article 15 is not satisfied, and Plaintiff cannot exercise its rights, if any, under Article 15.

### 2.   Article 15 Is an Unenforceable Agreement to Negotiate.

Second, as already explained above, Article 15 is nothing more than an agreement to negotiate toward a future contract. Not only is Article 15 "subject to [the City]'s approval," but it also expressly states that "both Parties shall work together in good faith to enter into an agreement regarding such Expansion or New Facility on mutually acceptable terms." Lease art. 15.01.

Article 15 therefore lacks essential terms and is unenforceable. *See Vizant*, 576 S.W.3d at 371 (citing cases for the proposition that "agreements to negotiate toward a future contract are not legally enforceable").

### 3. Plaintiff's Interpretation of Article 15 Is Contrary to the Federal Aviation Act and FAA Policy.[13]

If, as Plaintiff asserts, Article 15 provides only Plaintiff with the "*exclusive* first right to participate in any expansion at the South Terminal *or construction of new facilities at the Airport*" (Dkt. No. 38 at ¶ 8) (emphases added), then Article 15 would violate both federal law and the City's contractual federal grant obligations to the Federal Aviation Administration ("FAA").

The Federal Aviation Act of 1958 prohibits an "airport sponsor" who has received federal funding from granting any person an exclusive right at an airport. 49 U.S.C. § 40103(e). As the First and Second Circuits have explained, "The term exclusive right [in § 40103(e)] was intended to describe a power, privilege, or other right excluding or debarring another or others from enjoying or exercising a like power, privilege, or right." *Penobscot Air Servs. v. FAA*, 164 F.3d 713, 725 (1st Cir. 1999) (marks omitted); *accord J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 393 (2d Cir. 2000). Similarly, another federal statute obligates airport sponsors accepting federal funding to ensure that "a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport." 49 U.S.C. § 47107(a)(4).

Consistent with these statutes, FAA policy prohibits an airport sponsor from granting an exclusive right to any person to provide aeronautical services or facilities for use at the airport. *See*

---

[13] Article 18.01 of the Lease requires the City to operate and maintain the airport in accordance with the requirements of the Federal Aviation Act and all other "Applicable Laws." Lease art. 18.01. Similarly, Article 26.05 of the Lease requires Plaintiff to comply with all "Applicable Laws" in its use and occupancy of the Lease premises. Lease art. 26.05. "Applicable Laws" include, among other things, "all applicable federal, state, and local laws, codes, ordinances, rules, regulations, judgments, decrees or directives of any Governmental Authority." Lease art. 1.01.

FAA, ADVISORY CIRCULAR 150/5190-6, EXCLUSIVE RIGHTS AT FEDERALLY-OBLIGATED AIRPORTS at 1–2 (2007) ("Exclusive Rights Circular"). The intent of this prohibition, which remains in force so long as the airport operates, is "to promote fair competition." *Id.* at 2. The prohibition applies broadly "[w]ith few exceptions" to even a right granted to "a single operator . . . to the exclusion of others." *Id.* at 3. A right is "exclusive" even if multiple airport users enjoy it, so long as one or more similar users are denied such right. *Id.* at 8.[14]

One common means by which an airport sponsor may violate the federal prohibition on exclusive rights is by granting an airport lessee, such as Plaintiff, an option or other exclusive preference to lease additional property beyond its existing leasehold. As the FAA advises:

> Granting options or preferences on future airport lease sites to a single service provider may be construed as intent to grant an exclusive right. *Therefore, the use of leases with options or future preferences, such as rights of first refusal, must generally be avoided.* This is because a right of first refusal could allow an existing tenant to hold a claim on airport land at little or no cost. Then, when faced with the prospect of competition, that leaseholder could exercise its option to inhibit access by others and limit or prevent competition.

FAA ORDER 5190.6B, CHANGE 1, AIRPORT COMPLIANCE MANUAL at 8-6 (2009) (emphasis added); *see also Pac. Coast Flyers, Inc. v. Cnty. of San Diego*, FAA Dkt. No. 16-04-08, 2005 FAA LEXIS 514, Director's Determination at *85 (July 25, 2005) ("[T]he granting of rights of first refusal are generally inconsistent with applicable Federal obligations."). In fact, the FAA has specifically

---

[14] *See, e.g.*, *BMI Salvage Corp. v. FAA*, 272 F. App'x 842, 848 (11th Cir. 2008) ("a policy that awards [airport] leases merely based on whether a lessee operates an existing business [on the airport] or a new business likely violates the [sponsor's] duty to refrain from granting exclusive rights to certain tenants"); *Pompano Beach v. FAA*, 774 F.2d 1529, 1544 (11th Cir. 1985) ("an exclusive right may . . . be created by . . . lease terms that make "it virtually impossible for" an applicant "to start a similar business" as an incumbent provider at an airport "and to compete with" the incumbent); *Skydance Helicopters, Inc. v. Sedona Oak-Creek Airport Auth.*, FAA Dkt. No. 16-02-02, 2003 FAA LEXIS 92, Director's Determination at *85 (Mar. 7, 2003) (finding that the airport sponsor "constructively granted an exclusive right by imposing requirements that discourage competition among aeronautical service providers . . . in violation of" § 40103(e) and FAA's exclusive-rights prohibition).

found that it is not appropriate for a sponsor to grant such an option or right of first refusal to allow

an aeronautical service provider to expand in the future to accommodate greater demand. As the

Exclusive Rights Circular states:

> A lease that confers an exclusive right will be construed as having the intent to do
> so and, therefore, be an exclusive rights violation. Airport sponsors are better served
> by requiring that leases to a single aeronautical service provider be limited to the
> amount of land the service provider can demonstrate it actually needs and can be
> put to immediate productive use. In the event that additional space is required later,
> the airport sponsor may require the incumbent service provider to compete along
> with all other qualified service providers for the available airport land.

Exclusive Rights Circular at 6.

The FAA's own administrative case law makes clear that Plaintiff's interpretation of

Article 15 would constitute the impermissible grant of an exclusive right. The FAA has stated:

> Under the Exclusive Rights prohibition, the sponsor may not grant a special
> privilege or a monopoly to anyone providing aeronautical services on the airport or
> engaging in an aeronautical use, and that includes reserving airport land for a lessee
> for future development. The intent of this restriction is to promote aeronautical
> activity and protect fair competition at federally obligated airports.

*RDM, LLC v. Ted Stevens Anchorage Int'l Airport*, FAA Dkt. No. 16-09-14, 2011 FAA

LEXIS 373, Director's Determination at *90–91 (June 7, 2011). In another administrative

decision, the FAA held that, by granting a tenant a right of first refusal over "a majority of the

airport's properties," a sponsor "would have manifested the granting of an exclusive right" in

violation of the sponsor's grant obligations. *Pac. Coast Flyers*, 2005 FAA LEXIS 514, at *86.

Plaintiff's interpretation of Article 15 would violate the various statutory and regulatory

prohibitions on granting exclusive rights both by making such a grant an expressly exclusive right

and by enabling Plaintiff to exclude prospective competitors. As noted above, Plaintiff alleges that

Article 15 grants it the "exclusive first right to participate" not merely in the re-letting of its current

South Terminal leasehold, but also "in any expansion at the South Terminal or construction of new

facilities at the Airport." (Dkt. No. 38 at ¶ 8; *see also id.* at ¶ 117 (describing the right to participate

as "contractually guaranteed").) "New Facility," Plaintiff emphasizes, is "defined broadly" to include "the construction of any new passenger terminal or concourse, including . . . other facilities at the Airport . . . to accommodate the growth of operations of Airlines (or other air carriers) at the Airport." (*Id.* at ¶ 47.) Applying that definition of "New Facilities," Plaintiff reads Article 15 to grant it a right of first refusal over development and operation of any airport facilities that would serve any expansion in air-carrier service at the airport. Such a reading would render Article 15 an express grant of an exclusive right to develop, construct, and operate virtually any future facilities related to accommodate passenger air service in direct violation of 49 U.S.C. §§ 40103(e) and 47107(a)(4) and FAA policy.

Moreover, Plaintiff's reading of Article 15 would, in practice, allow Plaintiff to compel the City to exclude Plaintiff's potential competitors, and thus make it "virtually impossible" for them to compete with Plaintiff by entitling Plaintiff to develop, construct, and operate any additional airport facilities related to air-carrier service. *E.g.*, *Pompano* Beach, 774 F.2d at 1544. Moreover, it would also constitute "a policy that awards [airport] leases merely based" on incumbency by giving Plaintiff the right, through its current lease, to command an additional leasehold whenever such additional facilities are deemed "necessary." *See BMI Salvage*, 272 F. App'x at 848. At a minimum, entitling Plaintiff to disqualify preemptively any other prospective operator of passenger-related facilities at the airport would "discourage competition." *See Sedona Oak-Creek Airport Auth.*, 2003 FAA LEXIS 92, at *85. And by allowing Plaintiff to lay claim to any "construction of new facilities at the airport" (Dkt. No. 38 at ¶ 8), Plaintiff's reading of Article 15 would grant it a right of first refusal not merely over its own leasehold or any other single parcel, but rather, potentially, over "a majority of the airport's properties." *See Pac. Coast Flyers*, 2005 FAA LEXIS 514, at *86. Thus, whether such grant is express or implied, Plaintiff's interpretation

of Article 15 would give Plaintiff an unlawful exclusive right over potentially any possible airport

expansion related to air-carrier service.

Because Plaintiff's interpretation of Article 15 would cause that article to conflict directly

with federal statute and policy, the article would be unenforceable as a matter of law. *Niswonger v.*

*Am. Aviation, Inc.*, 411 F. Supp. 769, 771 (E.D. Tenn. 1975) (holding airport lease "void and

inoperable" to the extent it violated statutory prohibition on exclusive rights).[15]

### 4. Plaintiff's Interpretation of Article 15 Is Inconsistent with Texas Competitive Bidding Laws and City Ordinances.

Finally, Plaintiff's assertion of a guaranteed "exclusive first right" of participation under

Article 15 is inconsistent with Texas's competitive-bidding laws. Chapter 252 of the Local

Government Code requires a municipality to engage in competitive bidding before entering into a

contract requiring expenditures of more than $50,000 from municipal funds. Tex. Loc. Gov't

Code § 252.021(a). The Code also provides that a municipality may enter into a contract for the

construction of a public facility only after following competitive-bidding procedures. Tex. Gov't

Code § 2269.101(b). The failure to follow such procedures can result in a void or voidable contract

that may be enjoined. Tex. Loc. Gov't Code § 252.061; Tex. Gov't Code § 2269.451, .452(a).

In addition, any agreement that Plaintiff and the City might have struck under Article 15

could still require approval by the Austin City Council. Austin, Tex., Charter, art. VII, Finance

§ 15; *City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994,

writ denied); *City of Bryan v. Page*, 51 Tex. 532, 535 (1879). Article 15 does not and could not

---

[15] For the same reasons, Article 26.01 of the Lease, its subordination clause, would independently render Article 15, as interpreted by Plaintiff, unenforceable. The subordination clause provides that the Lease "is subject to the provisions of any" federal airport grant agreement. Lease art. 26.01. Under Plaintiff's reading, Article 15 would grant Plaintiff an exclusive right in violation of 49 U.S.C. §§ 40103(e) and 47107(a)(4) and express FAA policy. Therefore, Article 26.01 would render Article 15, as Plaintiff interprets it, subordinate to and unenforceable under those federal statutes and policies.

guarantee such approval. *See Vizant*, 576 S.W.3d at 373–74 (recognizing that any future agreements with the airport board still required approvals that would contain their own independent contingencies).

**D.      PLAINTIFF'S TAKINGS CLAIMS FAIL AS A MATTER OF LAW.**

Plaintiff's takings claims—under 42 U.S.C. § 1983 (Count I), the Declaratory Judgment Act (Count II), and the Texas Constitution (Count III)—rely on three contentions: that the condemnation (1) is "unsupported by a valid public purpose" (Dkt. No. 38 at ¶¶ 137, 155); (2) deprives Plaintiff of its rights under the Lease without just compensation (*see id.* at ¶¶ 136, 148, 155); and (3) deprives Plaintiff of its "going concern business" without just compensation.[16] (*See id.* at ¶¶ 136-37, 148, 154–55.) All three of these contentions fail as a matter of law.

**1.      The Condemnation of Plaintiff's Leasehold Interest Is Supported by a Valid Public Purpose.**

"[W]here the legislature has declared a certain thing to be for a public use, such declaration of the legislature must be given weight by the courts." *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 83 (Tex. 1940); *accord W. Seafood Co. v. United States*, 202 F. App'x 670, 676–77 (5th Cir. 2006) (applying Texas law). A court must defer to the legislative declaration "unless the purpose is clearly private in nature." *Tex. Fruit Palace, Inc. v. City of Palestine*, 842 S.W.2d 319, 322 (Tex. App.—Tyler 1992, writ denied).

The Texas legislature has declared the acquisition of real-property interests for airport purposes to be a "public and governmental function[ ], exercised for a public purpose." TEX. TRANSP. CODE § 22.002(a)(2). Plaintiff does not plead any facts in the Complaint plausibly challenging this legislative declaration or demonstrating that the City's purpose was really "private

---

[16]   It is worth noting that Plaintiff is using this federal action in an attempt to *block* the City from paying Plaintiff just compensation in the state-court condemnation proceeding.

in nature." Thus, Plaintiff cannot maintain its takings claims based on the contention that the City's condemnation lacks a valid public purpose.

### 2. Plaintiff's Alleged Rights Under Articles 2.03 and 15 Cannot Support the Takings Claims.

As explained above in section III.B, the City has the unrestricted contractual right to exercise its power of eminent domain to condemn Plaintiff's leasehold interest, thereby terminating the Lease and any rights under Articles 2.03 and 15. And as explained above in section III.C, Article 15 is legally unenforceable in any event. For these reasons, Plaintiff cannot maintain its takings claims by pointing to an alleged deprivation of rights under Articles 2.03 and 15 of the Lease.

### 3. Plaintiff Is Not Legally Entitled to Recover "Going Concern" Value.

Texas law is clear that "[l]oss of business, profits, good will, fixtures, and costs of removal and the like suffered by the tenants are obviously not lands or real estate, or rights or interest therein," and "such damages are 'consequential, and so remote and uncertain as to be incapable of just computation.'" *Reeves v. City of Dallas*, 195 S.W.2d 575, 583 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.). In such cases, the condemnor takes the real property, not the business, and the owner is free to continue the business at another location. *Id. at* 582–83. As a result, "Texas courts have refused to consider business income in making condemnation awards even when there is evidence that the business's location is crucial to its success." *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 871 (Tex. 2009); *see also State v. Rogers*, 772 S.W.2d 559, 561–62 (Tex. App.—Amarillo 1989, writ denied).

The cases cited by Plaintiff in the Complaint—*City of Blue Mound v. Southwest Water Co.*, 449 S.W.3d 678 (Tex. App.—Fort Worth 2014, no pet.), and *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949)—are distinguishable. In *Blue Mound*, the city was attempting to use eminent

domain to acquire an entire privately-owned water and wastewater utility system. 449 S.W.3d at 680. The court held that the applicable eminent-domain statutes did not grant the city the right to condemn the utility system as a going concern. *Id*. at 690, 692–93. The court's analysis focused on the deficiencies of the applicable statutes, the utility system's status as a monopoly, and the fact that the utility system could not "move to another location and reopen its utility business on a different parcel of real property." *Id.* at 684.

The facts in this case are different. Here, Plaintiff does not allege it is a public utility system or a monopoly, and the Lease is the sole source of all of the rights Plaintiff has in the South Terminal. As confirmed by Article 34, the City granted those lease rights to Plaintiff subject to the City's continuing power of eminent domain as a matter of Texas law and as a matter of contract. *Seureau*, 274 S.W.3d at 225. Further, unlike in *Blue Mound*, the City has express statutory authority to condemn airport facilities. *See* TEX. TRANSP. CODE § 22.011(c).

*Kimball Laundry* is also distinguishable. That case involved the federal government's *temporary* condemnation of an entire laundry facility for army occupancy and use as a laundry. 338 U.S. at 3. The Court allowed the laundry owner to recover its going-concern value, but the rationale for the decision was limited to the fact that the owner's "investment remained bound up in the reversion of the property." *Id*. at 13–14. In other words, the Court recognized that if the taking were *in fee*, rather than temporary, then the amount of compensation "should not include speculative losses consequent upon realization of the remote possibility that the owner will be unable to find a wholly suitable location for the transfer of going-concern value." *Id.* at 15.

Unlike in *Kimball Laundry*, the City's condemnation of Plaintiff's leasehold interest will be permanent, not temporary, and the amount of compensation awarded to Plaintiff for the condemnation should not include speculative losses relating to Plaintiff's alleged inability to find

a suitable location for the transfer of its going-concern value, which is not supported by any plausible allegations in the Complaint. *See AVM-Hou, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 584 (Tex. App.—Austin 2008, no pet.) (rejecting a claim to recover alleged going-concern value based on the lack of a suitable alternative business location because, "while temporary takings may 'inevitably' deprive the owner of the going-concern value, takings of fee title, as a matter of law, do not"). In any event, Plaintiff's allegations that the loss of its leasehold interest would destroy its business are conclusory and speculative.

**E.      PLAINTIFF'S PROMISSORY-ESTOPPEL CLAIMS ARE FORECLOSED BY THE EXISTENCE OF A VALID CONTRACT BETWEEN THE PARTIES.**

Plaintiff cannot maintain its promissory-estoppel claims (Counts V and VI) because, as Plaintiff concedes in its Complaint (*see* Dkt. No. 38 at ¶¶ 8, 44), a valid contract exists between Plaintiff and the City covering the alleged promises that form the basis of the estoppel claim, which bars the claim as a matter of law. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015); *see also* Lease art. 41.17(a) ("This Lease, together with its exhibits and attachments, contains the entire understanding and agreement between the Parties hereto with respect to the subject matter of this Lease.").[17]

## IV.     CONCLUSION

For these reasons, the City respectfully asks this Court to grant this motion under Federal Rule of Civil Procedure 12(b)(1) and dismiss the First Amended Complaint in its entirety for lack of subject-matter jurisdiction; grant this motion under Federal Rule of Civil Procedure 12(b)(6) and dismiss the First Amended Complaint in its entirety for failure to state a claim on which relief can be granted; and award to the City all other relief to which it is entitled.

---

[17]   Moreover, only reliance damages may be recovered under a claim for promissory estoppel under Texas law. *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977–78 (5th Cir. 2014).

Respectfully submitted,

**WINSTEAD PC**

By: _/s/ Thomas J. Forestier_
    Thomas J. Forestier
    State Bar No. 07256560
    tforestier@winstead.com
    Christopher Robertson
    State Bar No. 24107267
    crobertson@winstead.com
    600 Travis Street, Suite 5200
    Houston, Texas 77002
    Telephone: (713) 650-2749
    Facsimile No.: (713) 650-2400

    Andrew J. Schumacher
    State Bar No. 24051310
    aschumacher@winstead.com
    401 Congress Avenue, Suite 2100
    Austin, Texas 78701
    Telephone: (512) 370-2800
    Facsimile No.: (512) 370-2850 (Fax)

**-AND-**

    Anne L. Morgan
    CITY ATTORNEY
    Meghan L. Riley
    CHIEF, LITIGATION
    State Bar No. 24049373
    meghan.riley@austintexas.gov
    City of Austin Law Department
    P.O. Box 1546
    Austin, TX 78767-1088
    Telephone: (512) 974-2458
    Facsimile No.: (512) 974-1311

**ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN, TEXAS**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 25, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Thomas J. Forestier*
Thomas J. Forestier