**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| LONESTAR AIRPORT HOLDINGS, LLC, ) | |
| ) | |
| *Plaintiff,* ) | CIVIL ACTION NO. 1:22-CV-00770-RP |
| ) | |
| v. ) | |
| ) | |
| CITY OF AUSTIN, TEXAS, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| ) | |
| _____ ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ......................................................................................................... - 1 -

OPPOSITION TO THE CITY'S MOTION UNDER RULE 12(b)(1) ...................................... - 1 -

    I.    The City's ripeness arguments are not jurisdictional and do not require dismissal ..... - 1 -

        A.    Lonestar's Takings claims are constitutionally and prudentially ripe. .............. - 1 -

        B.    The City's argument that Lonestar's breach-of-quiet-enjoyment claim is not ripe is based on a purported merits defect that is not implicated here. ..................... - 2 -

    II.    The City's governmental immunity arguments fail. .................................................... - 3 -

        A.    The City's argument that Article 15 is unenforceable does not deprive the Court of jurisdiction. ............................................................................................... - 3 -

        B.    Lonestar does not depend on the federal Declaratory Judgment Act to establish jurisdiction. ...................................................................................................... - 4 -

        C.    Lonestar's promissory estoppel claim is within this Court's jurisdiction because of the City's misconduct. ................................................................................... - 5 -

OPPOSITION TO THE CITY'S MOTION UNDER RULE 12(b)(6) ...................................... - 7 -

    I.    The City's power of eminent domain does not permit it to breach the Agreement with impunity. ............................................................................................................... - 7 -

    II.    Lonestar has pleaded a breach of Article 15. ............................................................ - 9 -

        A.    Article 15 does not give the City a veto over Lonestar's exclusive rights. ....... - 9 -

        B.    Article 15 contains all material terms and is an enforceable grant to Lonestar of a right of first refusal. ........................................................................................ - 10 -

        C.    The City's FAA arguments cannot be decided here and, regardless, fail. ...... - 12 -

        D.    Article 15 does not implicate Texas competitive-bidding laws. .................... - 14 -

    III.    Lonestar's Takings claims do not fail as a matter of law. .......................................... - 16 -

        A.    Lonestar has alleged that the City's "public purpose" is pretextual. ............... - 16 -

        B.    The City cannot condemn Lonestar's contractual rights without paying just compensation. .................................................................................................. - 17 -

        C.    The City cannot appropriate the going-concern value of Lonestar's business without paying just compensation. ................................................................... - 17 -

    IV.    Lonestar's claim for breach of contract does not foreclose a claim for promissory estoppel in the alternative. ............................................................................... - 20 -

CONCLUSION ........................................................................................................... - 20 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AVM-HOU, Ltd. v. Capital Metro. Transp. Auth.*,
262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.) ..............................................19

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) .....................................................................................9

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) .................................................................................4, 8

*Bell v. Hood*,
327 U.S. 678 (1946).................................................................................................2

*Brit.-Am. Oil Producing Co. v. Buffington*,
116 F.2d 363 (5th Cir. 1940) ...................................................................................11

*Brooks-Scanlon Corp. v. United States*,
265 U.S. 106 (1924)................................................................................................17

*Burch v. City of San Antonio*,
518 S.W.2d 540 (Tex. 1975)......................................................................................8

*Buxani v. Nussbaum*,
940 S.W.2d 350 (Tex. App.—San Antonio 1997, no pet.).......................................12

*Caffe Ribs, Inc. v. State*,
487 S.W.3d 137 (Tex. 2016).....................................................................................17

*City of Blue Mound v. Sw. Water Co.*,
449 S.W.3d 678 (Tex. App.—Fort Worth 2014, no pet.)...........................17, 18, 19

*City of Dallas v. Mitchell*,
870 S.W.2d 21 (Tex. 1994)........................................................................................15

*City of El Paso v. High Ridge Const., Inc.*,
442 S.W.3d 660 (Tex. App.—El Paso 2014, pet. denied) ....................................6, 7

*City of Glendale v. Superior Court*,
18 Cal. App. 4th 1768 (Cal. Ct. App. 1993) ...........................................................8

*City of Minneapolis v. Schutt*,
256 N.W.2d 260 (Minn. 1977)..................................................................................19

*City of New Braunfels v. Carowest Land, Ltd.*,
    432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.) ...........................................5

*City of Omaha v. Omaha Water Co.*,
    218 U.S. 180 (1910)..........................................................................................18

*City of White Settlement v. Super Wash*,
    198 S.W.3d 770 (Tex. 2006)..............................................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................2

*Cont'l Ins. Co. of N.Y. v. Sherman*,
    439 F.2d 1294 (5th Cir. 1971) .........................................................................20

*Crisp Analytical Lab, LLC v. Jakalam Properties, Ltd.*,
    422 S.W.3d 85 (Tex. App.—Dallas 2014, no pet.)...........................................11

*Denver v. Denver Union Water Co.*,
    246 U.S. 178 (1918)..........................................................................................18

*Fed. Sign v. Tex. S. Univ.*,
    951 S.W.2d 401 (Tex. 1997)...........................................................................4, 5

*Fischer v. CTMI, LLC*,
    479 S.W.3d 231 (Tex. 2016)..............................................................10, 11, 12

*George v. SI Group, Inc.*,
    36 F.4th 611 (5th Cir. 2022) ..............................................................................7

*Gil Ramirez Group, LLC v. Houston Indep. Sch. Dist.*,
    786 F.3d 400 (5th Cir. 2015) ...........................................................................20

*Goldman v. Alkek*,
    850 S.W.2d 568 (Tex. App.—Corpus Christi 1993, no writ)..............................3

*Harris v. Rowe*,
    593 S.W.2d 303 (Tex. 1979)............................................................................10

*Holmes v. P.K. Pipe & Tubing, Inc.*,
    856 S.W.2d 530 (Tex. App.—Houston [1st Dist.] 1993, no writ)......................2

*Hoppenstein Properties, Inc. v. McLennan Cnty. Appraisal Dist.*,
    341 S.W.3d 16 (Tex. App.—Waco 2010, pet. denied)........................................3

*City of Hutchins v. Prasifka*,
    450 S.W.2d 829 (Tex. 1970)...........................................................................5, 6

*In Secure Comm, Inc. v. Anderson,*
    31 S.W.3d 428 (Tex. App.—Austin 2000, no pet.) ...............................................................20

*Kimball Laundry Co. v. United States,*
    338 U.S. 1 (1949)...........................................................................................17, 18, 19, 20

*KMS Retail Rowlett, LP v. City of Rowlett,*
    593 S.W.3d 175 (Tex. 2019)...........................................................................................16

*Komet v. Graves,*
    40 S.W.3d 596 (Tex. App.—San Antonio 2001, no pet.).......................................................11

*Lexmark Intern., Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014).....................................................................................................2

*Lone Star Gas Co. v. City of Fort Worth,*
    98 S.W.2d 799 (Tex. 1936)..........................................................................................17

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010) ..........................................................................................2

*Luce Bayou Public Utility District v. Kilpatrick,*
    653 S.W.3d 323 ((Tex. App.—Houston [14th Dist.] 2022, no pet. h.)....................................6

*Maguire Oil Co. v. City of Houston,*
    69 S.W.3d 350 (Tex. App.—Texarkana 2002, pet. denied) ...................................................5

*Michigan State Highway Comm'n v. L & L Concession Co.,*
    187 N.W.2d 465 (Mich. App. 1971)................................................................................19

*N. Mill St., LLC v. City of Aspen,*
    6 F.4th 1216 (10th Cir. 2021) ........................................................................................2

*Nat'l Org. for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013).............................................................................................2

*Nw. Television Club, Inc. v. Gross Seattle, Inc.,*
    634 P.2d 837 (Wash. 1981).............................................................................................10

*Paterson v. Weinberger,*
    644 F.2d 521 (5th Cir. 1981) ...........................................................................................1

*Redevelopment Authority of City of Philadelphia v. Lieberman,*
    336 A.2d 249 (Pa. 1975)...............................................................................................19

*Skypark Aviation, LLC v. Lind,*
    523 S.W.3d 869 (Tex. App.—Eastland 2017, no pet.) .................................................14, 15

*Smith v. Reg'l Transit Auth.*,
   756 F.3d 340 (5th Cir. 2014) ....................................................................................7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ....................................................................................................2

*Steele v. City of Houston*,
   603 S.W.2d 786 (Tex. 1980) .....................................................................................4

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
   74 S.W.3d 849 (Tex. 2002) .......................................................................................5

*Texas Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) .....................................................................................6

*Transtelco, Inc. v. Zayo Group, LLC*,
   2021 WL 2470367 (W.D. Tex. Apr. 5, 2021) ...........................................................7

*Truong v. City of Houston*,
   99 S.W.3d 204 (Tex. App.—Houston 2002, no pet.) ...............................................6

*Wasson Interests, Ltd. v. City of Jacksonville*,
   489 S.W.3d 427 (Tex. 2016) .....................................................................................5

*Wheeler v. White*,
   398 S.W.2d 93 (Tex. 1965) .....................................................................................20

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ....................................................................................4

*Wilmer-Hutchins Ind. Sch. Dist. v. Sullivan*,
   51 S.W.3d 293 (Tex. 2001) .......................................................................................6

*Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*,
   449 S.W.3d 98 (Tex. 2014) .......................................................................................3

**Statutes, Regulations, and Code Provisions**

14 C.F.R. § 16.1 ..............................................................................................................12

42 U.S.C. § 1983 ...............................................................................................................1

49 U.S.C. § 40103 ...........................................................................................................13

49 U.S.C. § 47107 ...........................................................................................................13

Tex. Gov't Code § 2269.101 ...........................................................................................15

Tex. Loc. Gov't Code § 22.001 .......................................................................................14

Tex. Loc. Gov't Code § 252.021 ........................................................................14, 15

Tex. Loc. Gov't Code § 262.023 ...............................................................................14

Tex. Loc. Gov't Code § 271.151 .................................................................................3

Tex. Transp. Code § 22.020 ................................................................................14, 15

Tex. Transp. Code § 22.021 ................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................20

Fed. R. Civ. P. 9 ..........................................................................................................9

Fed. R. Civ. P. 12 ...............................................................................................*passim*

Tex. Att'y Gen Op. No. KP-0246 ..............................................................................15
    2019 WL 1599276 (April 19, 2019)

Tex. Att'y Op. No. GA-0190 ...............................................................................14, 15
    2004 WL 1140408 (May 19, 2004)

Tex. R. Civ. P. 48 ......................................................................................................20

U.S. Const, Art. III ......................................................................................................1

*Williston on Contracts* § 32:11 (4th ed.).................................................................10

## INTRODUCTION

In its First Amended Complaint ("FAC") (Dkt. 38), Lonestar has pleaded facts plausibly establishing that the City of Austin embarked on a long-running course of breaching the parties' Lease and Concession Agreement (the "Agreement") (Dkt. 38-1). The City's contract breaches, which the parties expressly agreed would be remedied in this Court, began well before its more-recent scheme to pursue condemnation improperly. The City's unlawful conduct also threatens an imminent violation of Lonestar's constitutional rights in violation of 42 U.S.C. § 1983, a claim which is ripe and within this Court's jurisdiction. In response, the City asserts a scattershot patchwork of defenses that are either legally flawed or so fact-bound they cannot be decided on a motion to dismiss. None warrants dismissal.

## OPPOSITION TO THE CITY'S MOTION UNDER RULE 12(b)(1)[1]

The City's arguments under Rule 12(b)(1) do not rely on "affidavits, testimony, or other evidentiary materials," and thus are facial, not factual, challenges to jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The inquiry "is limited to whether the complaint is sufficient to allege … jurisdiction," and Lonestar's "allegations … are presumed to be true." *Id*. The City's ripeness arguments and fact-bound arguments about governmental immunity do not implicate this Court's jurisdiction and thus do not justify dismissal here.

**I.     The City's ripeness arguments are not jurisdictional and do not require dismissal.**

**A.     Lonestar's Takings claims are constitutionally and prudentially ripe.**

The City argues that the Court lacks jurisdiction over Lonestar's Takings claims (Counts I, II, and III) because those claims are not ripe. Ripeness implicates subject-matter jurisdiction only when an action does not present a "case or controversy" under Article III of the U.S.

---

[1] The City tacitly acknowledges that many of its Rule 12(b)(1) arguments are not jurisdictional by "incorporat[ing]" those arguments into its "motion dismiss under Rule 12(b)(6)," Dkt. 43 ("Mot.") at 8 n.9—which just confirms that those arguments actually go to the merits of Lonestar's claims.

Constitution. "[T]he best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing ... Constitutional ripeness, in other words, is really just about" whether a plaintiff's injury is "(a) concrete and particularized and (b) actual or imminent." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). The City's own case recognizes the same. *See Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010).

Lonestar has pleaded facts showing an imminent risk of constitutional injury (FAC ¶¶ 117-128, 136-37) that is "certainly impending"—which is all that is required to satisfy Article III where injunctive relief is at issue. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). The City's argument—that this Court lacks the *adjudicatory power* to enjoin an impending violation of the U.S. Constitution—cannot be squared with the decades of Supreme Court precedent holding otherwise. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 684 (1946).

Where, as here, "a plaintiff asserts a genuine case or controversy, ripeness implicates only prudential concerns." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1228 (10th Cir. 2021). The City's non-jurisdictional, prudential ripeness arguments are not properly raised under Rule 12(b)(1) and should be rejected, as Lonestar's prior briefing states. Dkts. 34 at 14-15, 40 at 6-8.

### B. The City's argument that Lonestar's breach-of-quiet-enjoyment claim is not ripe is based on a purported merits defect that is not implicated here.

Arguing that Lonestar's quiet-enjoyment claim is not ripe, the City cites one case only: *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ), which is not about ripeness, but merely says that "eviction, actual or constructive" is an *element* of quiet enjoyment. An argument that a plaintiff lacks a valid cause of action "does not implicate subject-matter jurisdiction." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). And, as explained in Lonestar's prior briefing, Dkt. 40 at 8, the City is wrong: Lonestar

has stated a breach-of-quiet-enjoyment claim. *Goldman v. Alkek*, 850 S.W.2d 568 (Tex. App.—Corpus Christi 1993, no writ) (holding a plaintiff affirmatively claiming breach of quiet enjoyment is "not required to prove the traditional elements of a breach of the warranty of quiet enjoyment").[2]

## II.   The City's governmental immunity arguments fail.

The City's factually intensive arguments about the scope and enforceability of one clause of the Agreement do not elevate that merits dispute into an issue of immunity, and the City is not immune from Lonestar's promissory-estoppel claims.

### A.   The City's argument that Article 15 is unenforceable does not deprive the Court of jurisdiction.

The Texas legislature has waived governmental immunity wherever a municipality enters a "written contract stating the essential terms of the agreement for providing goods and services to the local governmental entity." Tex. Loc. Gov't Code § 271.151(2)(A). To invoke this waiver, a claimant need only "plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail." *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014). For several reasons, the City's argument, that there is no valid waiver of immunity because Article 15 is assertedly unenforceable, fails.

First, the City does not dispute that *the Agreement* is a written contract for services containing all essential terms. By its plain terms, the immunity waiver applies to a "contract," and does not require or permit piecemeal analysis of individual contractual provisions. *See Hoppenstein Properties, Inc. v. McLennan Cnty. Appraisal Dist.*, 341 S.W.3d 16, 20 (Tex. App.—Waco 2010, pet. denied) (agreeing that "the waiver of immunity provided by section 271.152

---

[2] The City argues that *Goldman* "is inapplicable because it involved a quiet-enjoyment clause that departed from the traditional elements of a breach of the warranty of quiet enjoyment." Mot. at 3 n.2. That merits argument also does not affect this Court's jurisdiction, nor does it support dismissal at the pleadings stage.

applies on a 'contract-by-contract basis' rather than a 'promise-by-promise basis'").

Second, Rule 12(b)(6) only allows dismissal of a "claim," not a part of a claim. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The City does not argue that most of the provisions it has breached—i.e., Articles 2, 34, 41, or 18—are unenforceable. So, there is no basis to dismiss Lonestar's entire breach-of-contract claim.

Third, the Court does not have to resolve this merits dispute before deciding that it has jurisdiction. "[N]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). As explained further below—in response to the City's motion under Rule 12(b)(6), where this merits argument belongs—Article 15 creates enforceable obligations. FAC ¶¶ 163-239. Lonestar's allegations are presumed true, and its interpretation of Article 15 is at least a reasonable one that is not foreclosed as a matter of law. *Infra*, pp. 10-12. The City's facial challenge to this Court's jurisdiction therefore cannot succeed, as Lonestar has stated in prior briefing. Dkt. 40 at 8-10.

## B. Lonestar does not depend on the federal Declaratory Judgment Act to establish jurisdiction.

The City argues that Count II fails because the Declaratory Judgment Act ("DJA") does not confer jurisdiction over contract claims. Mot. at 6-7. This argument fights a straw man: Lonestar invokes the federal Declaratory Judgment Act only with respect to the City's constitutional violations. FAC ¶¶ 149-150. The City does not (and could not) argue that it has governmental immunity for those claims. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997); *see also Steele v. City of Houston*, 603 S.W.2d 786, 788, 791 (Tex. 1980). Lonestar does not invoke the DJA with respect to its contract claims. FAC ¶¶ 134-51. Lonestar is not disguising a contractual claim as a constitutional one, as the City argues, but rather alleges that the City's use of eminent domain is unconstitutional. FAC ¶¶ 134-51. The City is not immune from

that claim. *Fed. Sign*, 951 S.W.2d at 404.

In any event, in the case cited by the City, *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 860 (Tex. 2002), the legislature had not waived immunity for the contract claim, but here it has. *Supra*, pp. 3-4. Case in point: *City of New Braunfels v. Carowest Land, Ltd*., 432 S.W.3d 501, 530-31, 535 (Tex. App.—Austin 2014, no pet.), cited by the City, where the court sustained jurisdiction due to "various statutory waivers of immunity that are independent of and external to the [Texas Uniform Declaratory Judgment Act]." *Id*. So too here.

The City largely complains about the *form* of the declaration Lonestar seeks, but that is a question of remedies, not jurisdiction. Lonestar's prayer for relief seeks a declaration of Lonestar's rights under the Agreement as a remedy under other causes of action apart from the DJA. That relief is well within the Court's remedial discretion.

### C.   Lonestar's promissory estoppel claim is within this Court's jurisdiction because of the City's misconduct.

According to the City, the Court lacks jurisdiction over Lonestar's claims for promissory estoppel because there is no legislative waiver of immunity. Mot. at 7. The City's overly simplistic view of governmental immunity is incorrect. Although the task of *waiving* immunity is generally committed to the legislature, there is a threshold question of whether immunity *exists at all*, and this common-law inquiry is entrusted solely to the judiciary. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016).

Notwithstanding the general rule that a government exercising governmental functions cannot be estopped, "a municipality may be estopped" where 1) "justice requires its application," and 2) "there is no interference with the exercise of its governmental functions." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970). *Prasifka* defeats immunity. *See, e.g.*, *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 369 (Tex. App.—Texarkana 2002, pet. denied) (applying

*Prasifka* to hold "[s]ummary judgment was inappropriate on Maguire's claims for … promissory estoppel based on sovereign immunity); *City of El Paso v. High Ridge Const., Inc.*, 442 S.W.3d 660, 674 (Tex. App.—El Paso 2014, pet. denied) (recognizing "the 'justice requires' exception to the City's immunity from the equitable estoppel claim").[3] Courts "look at the totality of the circumstances" and permit estoppel where "justice, honesty, and fair dealing require it." *Truong v. City of Houston*, 99 S.W.3d 204, 212 (Tex. App.—Houston 2002, no pet.).

Here, *Prasifka* is satisfied because justice requires estopping the City from sidestepping its contractual obligations, and there would be no interference with governmental functions.[4] The City induced Lonestar to invest over $20 million through its promises that Lonestar would have the first right to participate in future developments and that its entire interest would be protected in case of eminent domain. FAC ¶¶ 242-46, 256-60. Permitting the City to escape these provisions would result in a massive windfall to the City and equally massive prejudice to Lonestar. *See City of White Settlement v. Super Wash*, 198 S.W.3d 770, 775 (Tex. 2006) ("Evidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception."). Nor would estoppel interfere with governmental functions. As pleaded, Lonestar is a capable partner, FAC ¶¶ 52-65, 93, so holding the City to its promises would further, not inhibit, the operation of the Airport.

Finally, even if Lonestar's *claim* for promissory estoppel is dismissed for lack of

---

[3] One court recently held that *Prasifka* does not provide "a waiver of the District's governmental immunity." *Luce Bayou Public Utility District v. Kilpatrick*, 653 S.W.3d 323, 326 ((Tex. App.— Houston [14th Dist.] 2022, no pet. h.). That decision overread *Wilmer-Hutchins Ind. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001), which stated "[a]s a *general rule*, a court cannot acquire subject-matter jurisdiction by estoppel." *Id*. (emphasis added). But neither *Sullivan* (nor any case it relies on) involved *Prasifka*—a narrow exception to this "general rule." *Id*. at 294-95.

[4] The cases cited by the City are not to the contrary. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004), did not involve any estoppel or equitable claims. None of the cases cited by the City in its footnote 7 discusses or even cites *Prasifka*.

jurisdiction, the City is still estopped from denying the enforceability of Article 15, or the full scope of Article 34, as a defense to Lonestar's breach-of-contract claim. FAC ¶¶ 208-90, 219-20; *see High Ridge*, 442 S.W.3d at 675 (plaintiff can "foreclose a defensive issue raised by the City in response to [plaintiff's] breach of contract claim" without satisfying *Prasifka*).

## OPPOSITION TO THE CITY'S MOTION UNDER RULE 12(b)(6)

"[A] Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the merits of the case." *George v. SI Group, Inc*., 36 F.4th 611, 619 (5th Cir. 2022). Thus, "well-pleaded factual allegations … must be taken as true and viewed in the light most favorable to the plaintiff," *id*., and "disputed questions of fact are anathema to Rule 12(b)(6)," *Smith v. Reg'l Transit Auth*., 756 F.3d 340, 347 (5th Cir. 2014). "[I]ssues of contract interpretation, contractual ambiguity, parole evidence, and whether to consider the facts and circumstances surrounding the contract's execution … are more appropriately addressed on a motion for summary judgment." *Transtelco, Inc. v. Zayo Group, LLC*, 2021 WL 2470367, at \*4 (W.D. Tex. Apr. 5, 2021).

I.     **The City's power of eminent domain does not permit it to breach the Agreement with impunity.**

The City's argument that Texas law and the Agreement excuse its past and ongoing breaches is unavailing. The City does not dispute Lonestar's allegations concerning the nature of its underlying conduct, or that its conduct breached the Agreement, but instead asks the Court to find that its breaches are excused by virtue of its eminent domain power. Mot. at 8. But eminent domain is not a shield allowing the City to breach any contractual obligation at will.

Lonestar alleges a pervasive pattern of contractual breaches stretching back to 2019. *E.g.*, FAC ¶¶ 176, 183, 193. The City was not acting pursuant to its eminent domain power until, at the earliest, June 22, 2022—the date on which the City obtained approval from the City Council to initiate condemnation proceedings. FAC ¶ 100. "The city council is the authority to exercise the

power of eminent domain and must itself officially express the intention and necessity to condemn." *Burch v. City of San Antonio*, 518 S.W.2d 540, 545 (Tex. 1975). As Magistrate Judge Hightower recently held, "Lonestar … asserts breach of contract claims [under Articles 2 and 15] arising out of events that predate the condemnation proceeding." Dkt. 47 at 13.[5] The City's motion cannot succeed on this basis unless its argument covers *all* breaches alleged, because a motion to dismiss under Rule 12(b)(6) does not permit piecemeal dismissals of parts of claims. *See BBL*, 809 F.3d at 325. Thus, the Court need not reach the substance of the City's argument.

Lonestar has never argued that Article 34 limits the City's statutory eminent domain power. But Article 34 does not expand the City's statutory power either, and it (along with Texas and federal law) guarantees Lonestar full and just compensation for any interest taken, including Articles 2.03 and 15. *See* Agreement, § 34.03 (Lonestar "shall be entitled to compensation for the Fair Market Value of Tenant's Interest so taken."); *see also id.* at 9 (Tenant's Interest "include[es] the rights … under Article 2 and Article 15."). The City has refused to compensate Lonestar for those rights by explicitly refusing to value Article 15 in the eminent domain proceeding. FAC ¶ 95.[6] The City cannot exclude Lonestar's contractual rights from the eminent domain proceeding for determining compensation but include them for using eminent domain as a defense Lonestar's breach-of-contract claims. The City's own case, *City of Glendale v. Superior Court*, 18 Cal. App. 4th 1768, 1780 (Cal. Ct. App. 1993), recognizes as much: It held that even though a governmental entity cannot contract away its eminent domain power, "[t]hat is not to say … that the contractual commitments made by the City … are not to be considered … in determining the fair market value

---

[5] Lonestar alleges breaches of Article 2.03 before condemnation, so the City's argument that Lonestar has no claim because "the exercise of the power of eminent domain is not a breach of the quiet-enjoyment covenant in a lease," and the City's cited cases (Mot. at 10), are not instructive.

[6] The City argues that Lonestar is estopped from claiming a breach of Article 34 (Mot. at 10 n.11), amounting to the obviously wrong suggestion that a party to a contract can never sue for its breach.

of the [condemned] leasehold." Government contracts would be rendered illusory if municipalities could disavow them without consequence, as the City seeks to do here.

## II. Lonestar has pleaded a breach of Article 15.

### A. Article 15 does not give the City a veto over Lonestar's exclusive rights.

The City argues that Article 15 is subject to an unsatisfied condition precedent. This argument is without merit: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Lonestar has so pleaded. *See, e.g.*, FAC ¶¶ 165, 169.

The City's argument that Lonestar failed to allege "that the City ever approved [Lonestar's] participation in the development, construction, or operation in an 'Expansion' or 'New Facility'" (Mot. at 11) is plainly contradicted by the FAC. *E.g.*, FAC ¶ 193 (parties agreed that an Expansion was necessary), ¶ 194 (DOA approached Lonestar regarding ST 2.0), ¶ 196 (the City's "prior express approval" of Lonestar's role in ST 2.0). The City's argument is a fact dispute that is not properly raised on a Rule 12(b)(6) motion. *See, e.g.*, *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005) ("We agree with the plaintiffs that the defendants' argument is fact-based and is therefore insufficient to support a motion to dismiss.").

Besides, Article 15 does not mean what the City says. It provides that "[i]f Tenant determines that the growth of operations … requires an Expansion," or if "if Tenant or Owner determines that the growth of operations … requires a New Facility," the expansion or new facility will go forward only "subject to Owner's agreement and in accordance with the Airport Master Plan." That makes sense—the "subject to Owner's agreement" language requires the City to agree

that an expansion or new facility is required before Article 15 comes into play.[7] Lonestar has alleged, and there can be no doubt, that the City so agrees—after all, it initially planned to partner with Lonestar to construct ST 2.0 and continues to pursue the AEDP (without Lonestar, in violation of Article 15). FAC ¶¶ 66-68, 118.

The City's reading also should be rejected because it would give the City a unilateral veto right, rendering Article 15 illusory and meaningless. "Interpretations which give a contract [clause] meaning are preferred to those which render it meaningless." *Williston on Contracts* § 32:11 (4th ed.); *see also Nw. Television Club, Inc. v. Gross Seattle, Inc.*, 634 P.2d 837, 842 (Wash. 1981) (rejecting interpretation of contract that "render[ed] illusory lessee's 'right' of first refusal, a bargained-for privilege for which lessee gave valuable consideration" because "[i]t is difficult to imagine the parties could have intended such a result"). Even if the City's reading of Article 15 creates ambiguity (and it does not), the proper construction of Article 15 would depend on the parties' intent—a question for the factfinder, not for this Court in a Rule 12(b)(6) motion. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979).

**B.     Article 15 contains all material terms and is an enforceable grant to Lonestar of a right of first refusal.**

The City's argument that Article 15 is an unenforceable agreement to negotiate fails. Even if Article 15 were an *actual* "agreement to agree" (which it is not), those are not always void in Texas. "[A]n agreement that contains all of its essential terms is not unenforceable merely because the parties anticipate some future agreement." *Fischer v. CTMI, LLC*, 479 S.W.3d 231, 238 (Tex. 2016). Instead, the contractual clause need only be (i) "sufficiently definite to confirm that both parties actually intended to be contractually bound," and (ii) "sufficiently definite to 'enable a

---

[7] If the Court thinks this provision is ambiguous, Lonestar requests leave to amend its pleading to allege facts showing that the parties contemporaneously understood, based on their negotiations, that the City granted Lonestar an exclusive first right, not an unenforceable option to negotiate.

court to understand the parties' obligations … and to give 'an appropriate remedy' if they are breached." *Id.* at 237. And courts must "find terms to be sufficiently definite whenever the language is reasonably susceptible to that interpretation." *Id.* at 239.

The City's conclusory argument that Article 15 lacks essential terms is both wrong on the law and proves too much. Mot at 11-12. Under Texas law, that Article 15 leaves some terms to be agreed upon later does not render it unenforceable. *See, e.g.*, *Komet v. Graves*, 40 S.W.3d 596, 602 (Tex. App.—San Antonio 2001, no pet.) ("Parties to a contract, however, may agree to some contractual terms and leave other matters open for later negotiation"); *Crisp Analytical Lab, LLC v. Jakalam Properties, Ltd.*, 422 S.W.3d 85, 89 (Tex. App.—Dallas 2014, no pet.) (similar). Most (if not all) rights of first refusal leave some terms for later. If the City's version of the law were accepted, preferential rights would be categorially unenforceable, because some terms remain to be negotiated upon the later exercise of that right. That is not (and should not be) the law in Texas.

Consider *Brit.-Am. Oil Producing Co. v. Buffington*, 116 F.2d 363, 364-65 (5th Cir. 1940), where the Fifth Circuit held that a provision giving preference on all future drilling rights was enforceable, even though it included no details as to the drilling operations, because the parties to the contract were experienced oil operators who knew and understood what was to be done under the contract. Likewise, the City and Lonestar are experienced airport operators, with a preexisting relationship, who were more than capable of understanding each of the parties' respective rights and obligations under Article 15. The City demonstrated as much during the negotiations of ST 2.0, before the prior administration was replaced by the current one. FAC ¶¶ 66-83.

When an agreement is "as definite and certain as the parties could have made it under the circumstances," and "furnish[es] a basis for arriving with reasonable certainty at the minimum damages," it is enforceable. *Fischer*, 479 S.W.3d at 241. Article 15 meets that standard, and the

City's three-sentence argument (Mot. at 11-12) does not show otherwise.[8] Debates over Article 15's scope and its application to the facts do not support dismissal at the pleading stage.

### C.     The City's FAA arguments cannot be decided here and, regardless, fail.

The City's argument, which it never raised in the years of negotiations that preceded this dispute, that the plain meaning of Article 15 puts the City in violation of its own federal grant obligations is as wrong as it is ironic.

Any determination about the City's compliance with its federal grant obligations is both highly fact-bound and outside of the scope of this proceeding. The FAA has exclusive jurisdiction to determine whether the City violated the prohibition on exclusive rights and has established a robust set of regulations outlining its investigative process for doing so. *See* 14 C.F.R. § 16.1(a)(1). Exclusive rights are not categorically forbidden; rather, the FAA makes that determination on a case-by-case basis after considering a litany of facts—including the nature of the services provided (aeronautical or not), and whether any potential competitors in fact have been excluded. These facts are simply undeveloped in this litigation and, not being in Lonestar's pleading, are outside the scope of the City's motion. Moreover, Article 3.02 of the Agreement required the City to submit a copy to the FAA for review following the effective date. Discovery will show the absence of any objection from the FAA, indicating (dispositively) that the FAA did not consider Article 15 as an exclusive right violating the City's federal obligations. So, the City's argument is at best premature; at worst, it does not belong in this Court at all.

What is clear now is that Lonestar and the City are sophisticated entities that understood the distinction between a permissible and a forbidden exclusive right. The prohibition on exclusive

---

[8] If the Court finds that there are terms missing from Article 15, these terms may be supplied by the Court or factfinder. *See Fischer*, 479 S.W.3d at 240. "[E]ven when the price term is considered lacking, the trial court may imply a reasonable price when all other elements of a contract have been met." *Buxani v. Nussbaum*, 940 S.W.2d 350, 353 (Tex. App.—San Antonio 1997, no pet.).

rights applies only to aeronautical activities (e.g., rights to operate at an airport granted to an airline or a fixed based operator ("FBO") providing fuel or ground services to airlines) and not to non-aeronautical activities.[9] The definition of an "aeronautical activity" in the FAA guidance cited by the City includes an extensive list of activities (air carrier operations, pilot training, aircraft sales and service, etc.) but does not include the development, construction, or operation of terminals. Ex. A at 8, FAA Advisory Circular 150/5190-6 (2007).[10] Based on the lines drawn by the FAA, Lonestar's pleading—the allegations in which are presumed as true, and from which inferences are drawn in Lonestar's favor—shows that Article 15 does not give Lonestar an exclusive right to use the airfield or engage in aeronautical services.

The Agreement confirms this understanding. Lonestar essentially stands in the City's shoes and is prohibited from granting (and has not granted) an exclusive right to aeronautical service providers (e.g., FBOs) or aeronautical users (e.g., airlines). In other words, the City has passed through the prohibition on granting exclusive rights for aeronautical services to Lonestar, and Lonestar, in turn, has passed it on to its tenants. Agreement, §§ 26.01, 12.01. Discovery will show, for example, that Lonestar's contracts with its tenants include standard provisions passing through applicable federal compliance obligations of the City (and Lonestar) to the airline. And, as alleged in Lonestar's pleading, the City (presumably under the advice of capable counsel) for years acted

---

[9] The statutes cited by the City form the basis for the FAA's interpretation of the exclusive rights prohibition. 49 U.S.C. § 40103(e) prohibits the grant of an "exclusive right to use an air navigation facility." 49 U.S.C. § 47107(a)(4) says that "a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport."

[10] Similarly, FAA guidance notes that the agency has "interpreted the exclusive rights prohibition principally in terms of the airfield," and thus, "activities that used the airfield (e.g., air carriers, flight schools, and charter service) [are] subject to the prohibition." Ex. B at 8-4, FAA Order 5190.6B, Change 1, Airport Compliance Manual (2009). By contrast, "[a]ll nonaeronautical activities, such as restaurants and other terminal concessions, ground transportation, and car rentals are excluded from the prohibition." *Id*.

as if Article 15 were enforceable, FAC ¶¶ 66-68, illustrating that the City believed it had granted a permissible exclusive right (otherwise, the City would have risked its federal grant money by engaging with Lonestar on an exclusive basis).

Lonestar has stated a claim for breach of Article 15. The City's new argument that the broadest possible reading of Article 15 would violate FAA policy intrudes on the FAA's jurisdiction, injects a slew of undeveloped factual issues into this litigation, and cannot be ruled on as a matter of law in this Rule 12(b)(6) posture.[11]

### D.   Article 15 does not implicate Texas competitive-bidding laws.

The City's argument that Article 15 is inconsistent with Texas's competitive-bidding laws is astonishing—the City Council approved the Agreement unanimously—and it misses the mark legally. Airport leases are governed by Sections 22.020 and 22.021 of the Transportation Code (the City discusses neither), which do not contain a competitive-bidding requirement and are not subject to other general competitive-bidding laws. *See Skypark Aviation, LLC v. Lind*, 523 S.W.3d 869, 875 (Tex. App.—Eastland 2017, no pet.) ("[T]he leasing of a county airport … is not subject to competitive bidding requirements [of Tex. Loc. Gov't § 262.023(a)].").[12] The Texas Attorney General has twice confirmed this understanding. Tex. Att'y Gen. Op. No. GA-0190, 2004 WL 1140408 (May 19, 2004), concluded, "A lease of county airport land under section 22.020 or 22.021 does not have to be made at an auction." The opinion found "no indication that the Legislature intended [general competitive bidding laws] to prevail over" sections 22.020 or 22.021,

---

[11] If the Court finds any merit in the City's argument, Lonestar requests leave to amend its pleading to allege facts showing that, while negotiating the Agreement, the City did not consider Article 15 to be a forbidden exclusive right, and that the FAA did not object to Article 15.

[12] Tex. Loc. Gov't § 262.023(a) is the competitive-bidding provision applicable to counties, analogous to Tex. Loc. Gov't § 252.021, which is applicable to municipalities, and on which the City relies here. Transportation Code section 22 applies to "local governments," which is defined to include both counties and municipalities. *Id.* § 22.001(6).

especially because another provision in the chapter (subsection 22.024) expressly incorporates certain competitive-bidding requirements. *Id.*[13] Tex. Att'y Gen. Op. No. KP-0246, 2019 WL 1599276 (April 19, 2019), confirmed that conclusion and cited *Skypark Aviation* with approval.

The City's argument is based primarily on Tex. Loc. Gov't Code § 252.021, which requires competitive bidding for municipal expenditures over $50,000. But the Agreement did not require the City to spend a dime; rather, Lonestar bore all risk. *See Skypark Aviation*, 523 S.W.3d at 875 ("Ector County was not purchasing anything in seeking a fixed base operator to operate the airport."). The other code provision, Tex. Gov't Code § 2269.101(b), generally requires competitive bidding for facility construction, but that section does not apply where "otherwise provided by … other law." As explained, Tex. Transp. Code §§ 22.020 and 22.021 provide otherwise by not requiring competitive bidding for airport contracts, and "the specific [statute] controls over the general." *City of Dallas v. Mitchell*, 870 S.W.2d 21, 23 (Tex. 1994). Competitive bidding is not required for any future agreement contemplated by Article 15.

Finally, whether any future agreement contemplated by Article 15 would require approval by the City Council has nothing to do with the question presented in this litigation: Whether the City has breached, and continues to breach, its obligations under Article 15. Even if a subsequent agreement may require City Council approval—which is all the City's cited cases suggest—Article 15 required the City to "work together in good faith to enter into an agreement regarding such Expansion or New Facility on mutually agreeable terms." Lonestar has alleged that the City has not done so, FAC ¶¶ 189-211, and the City cannot hide behind its speculative suggestion that the City Council might withhold any future approval to excuse its breach.

---

[13] One reason why airport leases are not subject to competitive bidding is because "it would not necessarily secure the expertise and other qualities needed to carry out the responsibilities that accompany the lease." Tex. Att'y Gen. Op. No. GA-0190.

**III.     Lonestar's Takings claims do not fail as a matter of law.**

    **A.     Lonestar has alleged that the City's "public purpose" is pretextual.**

The City's argument regarding the "public purpose" of condemnation is inapposite. Mot. at 17-18. The legislature's decision that "the acquisition of real-property interests for airport purposes" is a public purpose is not at issue. Mot. at 17. Rather, Lonestar has alleged that the City's condemnation is an arbitrary, capricious, and bad-faith attempt to avoid its contractual obligations, and that the City's stated public purpose is a pretext. FAC ¶¶ 20-22, 105, 138. A taking ostensibly for a "public use" may still be nullified "where the condemnor's decision was fraudulent, in bad faith, or arbitrary and capricious." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 187 (Tex. 2019). For example, if "the city's reasons for taking [Lonestar's] land were pretexts for an impermissible, ulterior motive," the taking must be invalidated. *Id.* at 188.

Lonestar alleges that the City's proposed taxiway on top of the South Terminal is a pretext to achieve the City's real desire to "regain local control" of the Airport. FAC ¶¶ 77, 94; *see id.* ¶ 83. Lonestar has pleaded that it presented numerous viable (and superior) alternatives for expansion of the Airport that do not involve demolition of the South Terminal or condemnation of Lonestar's interests. In 2019, Lonestar initially submitted a proposal to the City to construct a new South Terminal (ST 2.0) that would add 6-10 new gates on the property, FAC ¶ 66, which would have built needed terminal capacity for the Airport—benefitting the City, air carriers, and Austin consumers, FAC ¶ 65. The City rejected this proposal. FAC ¶ 86. In 2020, Lonestar continued to explain that it was prepared "to move quickly to develop a new cost-efficient facility at no cost and no risk to the City of Austin." FAC ¶ 87 (citing Exhibit. G). The City refused to consider these viable alternatives. FAC ¶ 92. The City never explained why it rejected these proposals, other than blanketly asserting that its plan was better. Lonestar has alleged, based on these facts, that the City's stated public purpose is pretextual, which is sufficient to survive a challenge under Rule

12(b)(6). *See KMS Retail*, 593 S.W.3d at 188.

**B.    The City cannot condemn Lonestar's contractual rights without paying just compensation.**

The City cannot use condemnation to extinguish rights "connected with and constituting the [going-concern] business," such as Articles 2.03 and 15. *Lone Star Gas Co. v. City of Fort Worth*, 98 S.W.2d 799, 803 (Tex. 1936) ("personal property, franchises, easements, contracts, etc." cannot be condemned). Even if the City is permitted to condemn freestanding contractual rights, it must pay just compensation. *See Brooks-Scanlon Corp. v. United States*, 265 U.S. 106, 120 (1924) (just compensation required if government "take[s] from claimant its contract and its rights thereunder"). Nor does the City's purportedly "unrestricted contractual right to … condemn [Lonestar's] leasehold interest" permit such a result. Agreement, § 34.03 (Lonestar "shall be entitled to compensation for the Fair Market Value of Tenant's Interest so taken"); *see also Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142-43 (Tex. 2016) (just compensation requires fair market value of interest *prior to* any devaluation resulting from condemnation project). Lonestar has alleged that the City intends to take Lonestar's rights under Articles 2.03 and 15 without paying for them. FAC ¶¶ 95, 99, 111. That states a claim under the Takings clause.

**C.    The City cannot appropriate the going-concern value of Lonestar's business without paying just compensation.**

The City's condemnation is an improper taking of Lonestar's rights under the Agreement, which include far more than the right to occupy the property. This taking is improper under *Blue Mound* and *Kimball Laundry*, and the City's attempt to distinguish these cases is meritless.

A taking constitutes an improper taking of a "going concern" where the condemnor takes the condemnee's business in addition to the real property it seeks to condemn. *City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678, 685 n.6 (Tex. App.—Fort Worth 2014, no pet.). The key inquiry is whether the condemnee can transfer its business elsewhere after the taking occurs. *Kimball*

- 17 -

*Laundry Co. v. United States*, 338 U.S. 1, 11-13 (1949). Where "the owner may simply move the business to another location," after the condemnation, there is no taking of a going concern. *Blue Mound*, 449 S.W.3d at 684 (citing *Kimball Laundry*, 338 U.S. at 11-13). But where, as here, Lonestar cannot simply relocate its business because after the taking, Lonestar will "retain[] nothing of the going-concern value that it formerly possessed," *Kimball Laundry*, 338 U.S. at 13, a taking of going-concern value has occurred, for which just compensation is owed. Lonestar has stated a Takings claim by alleging that the City has committed to taking and operating Lonestar's going-concern business without paying just compensation. *E.g.*, FAC ¶¶ 120-25, 136-41, 148.[14]

The City attempts to distinguish *Blue Mound* by cabining its holding to public-utility systems. Mot. at 19. That "going-concern" cases often involve utilities is not surprising, because they cannot ordinarily be operated profitably except as a monopoly; when the government takes a utility, the former owner cannot viably relocate the business. *See, e.g.*, *City of Omaha v. Omaha Water Co.*, 218 U.S. 180 (1910) (utility system); *Denver v. Denver Union Water Co.*, 246 U.S. 178 (1918) (same). But the seminal going-concern case, *Kimball Laundry*, did not involve a utility. 338 U.S. at 12 (taking of a laundry factory during the World War II effort). And *Blue Mound* relied on *Kimball Laundry*, so it would make no sense to cabin *Blue Mound*'s holding to public utilities.

Nor is *Kimball Laundry* limited to temporary takings. There, the United States condemned a laundry plant for military use. 338 U.S. at 3. Because the government's use of the laundry wrested control of the laundry from its owners, *id.* at 14, the taking completely destroyed the laundry's operation as a viable going concern, *id.* at 16. The key holding was that "an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern

---

[14] Lonestar has been granted leave for expedited discovery on the City's plan to take and operate Lonestar's business. Dkt. 48. If the Court has any question about the Takings claims as pleaded, Lonestar requests leave to amend its pleading with additional facts showing the City's plans.

value of his business is a compensable 'taking' of property." *Id*. at 13. The court in *Blue Mound* explicitly refused to limit *Kimball Laundry* to temporary takings. 449 S.W.3d at 685 n.6. Other state appellate courts have done the same.[15] For example, the Minnesota Supreme Court in *City of Minneapolis v. Schutt*, 256 N.W.2d 260, 262, 265 (Minn. 1977), relied on the Michigan Court of Appeals decision in *Michigan State Highway Comm'n v. L & L Concession Co.*, 187 N.W.2d 465, 471 (Mich. App. 1971), which explained: "The efforts to limit *Kimball* to temporary takings elides the central meaning of that case. The Federal government was not required to pay for the route lists because the plant was only temporarily taken or because they represented customer goodwill but because their value was destroyed by the taking." *Id*. at 471; *see also Redevelopment Authority of City of Philadelphia v. Lieberman,* 336 A.2d 249, 251 (Pa. 1975) (*Kimball Laundry* not limited to temporary takings). That reasoning should carry the day here, too.

  The City attempted to talk its way around *Kimball Laundry* when it suggested to Lonestar "[it] is not condemning LoneStar's business" because Lonestar "is free to continue to conduct [its business] at other airports in Texas and other states." FAC ¶ 111 (citing Exhibit N). But Lonestar's business—the operation of ultra-low-cost carriers at the Austin Airport—is even less moveable than the laundry in *Kimball Laundry*. The laundry could have relocated elsewhere in Omaha, but Lonestar cannot run its business of providing low-cost air carrier services at ABIA anywhere but ABIA. And the idea that Lonestar can "relocate" its business falsely presumes that there will be anything left of the business after the taking. Lonestar cannot take its contractual redevelopment rights, or its relationships with its tenants, to another market, nor can it sell those rights. As in *Kimball Laundry*, the City's taking would completely destroy Lonestar's business. The City will

---

[15] The City cites *AVM-HOU, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 584 (Tex. App.—Austin 2008, no pet.), to say that *Kimball Laundry* is limited to temporary takings only. Mot. at 20. That case was incorrect, was explicitly rejected by *Blue Mound*, and is not binding.

"fully occup[y] … [Lonestar's] shoes" and Lonestar will retain "nothing of the going-concern value that it formerly possessed." *Kimball Laundry*, 338 U.S. at 13.

## IV.    Lonestar's claim for breach of contract does not foreclose a claim for promissory estoppel in the alternative.

The City's final argument deserves only a brief response. Lonestar is entitled to plead claims in the alternative. *See* Fed. R. Civ. P. 8(d)(3); *accord* Tex. R. Civ. P. 48. "[I]nconsistent pleadings" cannot be construed "as admissions negating each other," and "two inconsistent pleas cannot be used as evidence in the trial of the other." *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971). Texas courts consistently hold that both breach-of-contract and promissory-estoppel claims can be *submitted to the factfinder* together. *See, e.g.*, *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965); *In Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 431 (Tex. App.—Austin 2000, no pet.). Unlike in *Gil Ramirez Group, LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015), where (in a summary-judgment posture) there was no dispute about the validity or enforceability of a governing contract, here the City continues to dispute the validity and enforceability of key provisions in the Agreement. Until the City stipulates that these provisions are enforceable, its baseless argument that Lonestar's breach-of-contract claim precludes its promissory estoppel claims *at the pleading stage* will continue to ring hollow.

## CONCLUSION

The City's motion to dismiss under Rules 12(b)(1) and 12(b)(6) should be denied. In the alternative, Lonestar requests that any dismissal be without prejudice so it can amend its pleading to cure any deficiency by alleging, as necessary, additional facts showing: the Court has subject-matter jurisdiction, the City is not immune from the claims asserted, the enforceability of Article 15, and the illegality of the City's taking.

Dated: November 8, 2022

Respectfully submitted,

*/s/ Edward F. Fernandes*

**KING & SPALDING LLP**
Edward F. Fernandes (SBN 06932700)
Julia C. Barrett (SBN 24116075)
500 W 2nd St #1800
Austin, TX 78701
T: 512 457 2000
efernandes@kslaw.com
jbarrett@kslaw.com

Lawrence A. Slovensky (*pro hac vice*)
Mandi Goodman (*pro hac vice*)
1180 Peachtree St NE
Atlanta, GA 30309
T: 404 572 4600
lslovensky@kslaw.com

**MUNGER, TOLLES & OLSON LLP**
Bethany Kristovich (*pro hac vice*)
Michael Doyen (*pro hac vice*)
John Major (*pro hac vice*)
350 South Grand Avenue
Los Angeles, CA 90071
T: 213 683 9292
Michael.doyen@mto.com
Bethany.kristovich@mto.com
John.major@mto.com

**BARRON, ADLER, CLOUGH & ODDO, LLP**
Christopher M. Clough (SBN 24044802)
Christopher J. Oddo (SBN 24013257)
808 Nueces Street
Austin, TX 78701
T: 512 478 4995
clough@barronadler.com
oddo@barronadler.com

*Attorneys for Plaintiff*
*Lonestar Airport Holdings, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 8, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the CM/ECF system of the Court, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Edward F. Fernandes*

Edward F. Fernandes