IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **LONESTAR AIRPORT HOLDINGS, LLC** §§§<br>*Plaintiff,* § <br> § **CIVIL ACTION NO. 1:22-CV00770-RP** <br> **v.** §§ <br> § <br> **CITY OF AUSTIN, TEXAS,** § <br> *Defendant.* § | |

# DEFENDANT'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE ON THE CITY'S MOTION FOR ABSTENTION

Defendant City of Austin, Texas (the "City") files this Objection to the Report and Recommendation of the United States Magistrate Judge (the "Recommendation") (Dkt. No. 47) on the City's Motion for Abstention (Dkt. No. 34).

## I.   INTRODUCTION

The Recommendation concludes that this action and the Condemnation Lawsuit are not sufficiently parallel for abstention under *Colorado River* because there is not a substantial likelihood that the Condemnation Lawsuit will encompass all of the issues raised in this case. (Dkt. No. 47 at 13.) The Court should not adopt the Recommendation.

Despite Plaintiff's artful pleading, almost all of Plaintiff's claims directly arise from the City's decision to close the South Terminal and condemn Plaintiff's property interest under the Lease. The Recommendation distinguishes and limits *In re Breviloba* to cases that involve a challenge to the "authority" to condemn. But *In re Breviloba* is not so limited; and it supports the City's arguments that all of Plaintiff's claims challenging the City's right to take and the amount of compensation Plaintiff is entitled to receive as a result of the condemnation are part of the

Condemnation Lawsuit. All other claims can still be asserted as counterclaims. The only way Plaintiff's claims will not be resolved in the Condemnation Lawsuit is if Plaintiff unilaterally elects not to assert them as counterclaims. Accordingly, there is a substantial likelihood that all of Plaintiff's claims will be resolved in the Condemnation Lawsuit.

## II.   ARGUMENT AND AUTHORITIES

### A.   STANDARD OF REVIEW.

The Recommendation is reviewed *de novo*. *See* FED. R. CIV. P. 72(b)(3). This Court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions. *See id.*; *see also* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's finding and recommendations, the court must examine the entire record and make an independent assessment. *Campos v. U.S. Parole Comm'n*, 984 F. Supp. 1011, 1014 (W.D. Tex. 1996), *aff'd*, 120 F.3d 49 (5th Cir. 1997). A magistrate judge's recommendation has no presumptive weight; the responsibility to make a final determination rests with the district court. *Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court also retains the authority to dismiss Plaintiff's claims *sua sponte* based on its *de novo* review of the entire record. *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### B.   THE CONDEMNATION LAWSUIT AND THIS CIVIL ACTION ARE PARALLEL PROCEEDINGS.

#### 1.   THE RECOMMENDATION INCORRECTLY APPLIES *IN RE BREVILOBA*.

The City's Motion for Abstention principally relies on the Texas Supreme Court's recent decision in *In re Breviloba* for the proposition that all of Plaintiff's claims in this case will be resolved in the judicial phase of the Condemnation Lawsuit. The question before the Court in *In re Breviloba* was whether the property owner's counterclaims challenging the authority to condemn and seeking damages in excess of the jurisdictional limit of the county court at law

required a transfer to the district court. *In re Breviloba*, 650 S.W.3d 508, 509 (Tex. 2022). The determination was necessary because the Texas Property Code provides for the transfer of condemnation cases to a district court when the eminent domain case involves any "matter that cannot be fully adjudicated" in the county court at law. TEX. PROP. CODE § 21.002. The property owner's counterclaims included allegations that Breviloba did not have authority to condemn because it was a not a common carrier and claims for bad-faith trespass and fraud based on the alleged improper taking. *In re Breviloba*, 650 S.W.3d at 509-10. The Texas Supreme Court held that because "the counterclaims are part of an eminent domain case and can be fully adjudicated by the Walker County Court at Law, that court retained jurisdiction over the entire case." *Id.* at 512.

In *In re Breviloba*, the Texas Supreme Court relied on a line of cases holding that jurisdiction over eminent-domain cases "includes jurisdiction to adjudicate the condemnor's eminent domain authority." *Id*. ("Jurisdiction over 'eminent domain cases' would be a hollow grant without the ability to adjudicate condemnation authority."). The Court recognized that the gravamen of the landowner's counterclaims challenged Breviloba's authority to condemn, which meant that Section 21.001 of the Texas Property Code granted the county court at law jurisdiction over the counterclaims because they were part of the eminent-domain case. *Id*.

The Recommendation distinguishes *In re Breviloba* from this case by concluding Plaintiff does not challenge the City's authority to condemn but instead "seeks to enjoin it from allegedly violating terms of the Agreement by its exercise of eminent domain." (Dkt. No. 47 at 12.) This conclusion, however, fails to address *In re Breviloba's* holding that a plaintiff's artful pleadings cannot avoid jurisdiction when the true nature of the claims is to challenge the right to condemn. *See In re Breviloba*, 650 S.W.3d at 512 ("We are guided by the 'nature' and 'gravamen' of a claim,

not how the claim is artfully pleaded or recast."). Regardless of whether the Plaintiff's claims are couched as a challenge to the City's "authority" or the "right to take," the claims are a direct attack on the City's right to condemn the leasehold interest.[1] Notably, Plaintiff failed to address *In re Breviloba* in its briefing. Nor does Plaintiff assert that the Texas state courts are incapable of deciding whether the City has the right to condemn or the right to determine Plaintiff's entitlement to going-concern value. Indeed, many of the decisions cited or discussed by Plaintiff involve Texas state courts adjudicating the same right to take and going-concern valuation arguments made by Plaintiff in this lawsuit.[2] Accordingly, all of Plaintiff's claims relating to the City's right to condemn the Lease will be resolved in the Condemnation Lawsuit. *Id*.

### 2. ALL OF PLAINTIFF'S BREACH OF CONTRACT CLAIMS WILL BE RESOLVED IN THE CONDEMNATION LAWSUIT.

The majority of Plaintiff's breach-of-contract claims are related to the City's condemnation of Plaintiff's interest under the Lease, which means they should be resolved in the Condemnation Lawsuit. Plaintiff asserts breaches of five different Lease articles. There is no dispute that Plaintiff's claims alleging the City breached Articles 34 and 41 of the Lease are part of the eminent-domain case and will be resolved by the Condemnation Lawsuit because the alleged breaches are based entirely on the City's condemnation of the leasehold interest (Dkt. No. 38 at 49-51.)

---

[1]  As pointed out in the Recommendation, Plaintiff does not challenge the City's condemnation authority, and there is no dispute the City has authority to condemn a leasehold interest on property owned by the City. (Dkt No. 47 at 12.) The Legislature specifically excepted the City's right to condemn the Lease from the Government Code provision limiting the power of eminent domain for economic development purposes. *See* TEX. GOV'T CODE § 2206.001(d) ("This section does not affect the authority of a governmental entity to condemn a leasehold estate on property owned by the governmental entity.").

[2]  *See generally Lone Star Gas Co. v. Fort Worth*, 128 Tex. 392, 98 S.W.2d 799 (1936); *City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678 (Tex. App.—Fort Worth 2014, no pet.); *AVM-HOU, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574 (Tex. App.—Austin 2008, no pet.); *Houston v. S. Water Corp.*, 678 S.W.2d 570 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd w.o.j.).

The Recommendation highlights Plaintiff's alleged breaches of Articles 2.03, 15, and 18 as claims that will not be disposed of in the Condemnation Lawsuit. (Dkt No. 47 at 13). But these claims all include allegations that the breaches arise from the City's decision to condemn. Plaintiff claims the City breached the Lease's covenant of quiet enjoyment (Article 2.03) with its decisions to shut down the South Terminal and condemn the leasehold interest. (Dkt. No. 38 at 43-45.) Plaintiff claims the City breached Article 15 when it elected to not move forward with ST 2.0 and sought to condemn the leasehold interest without compensating Plaintiff for its Article 15 rights. (Dkt No. 38 at 46-49.) Thus, the gravamen of Plaintiff's claims for breaches of Articles 2.03 and 15 are tied to the condemnation and are part of the Condemnation Lawsuit.

Plaintiff's breach-of-contract claims related to Article 18 are the only claims that do not include allegations related to the condemnation. (Dkt. No. 38 at 52-53). In addition to the Article 18 claims, the Recommendation relies on a portion of the allegations relating to the breaches of Articles 2.03 and 15 that "predate the condemnation proceeding" in making its determination that the cases are not parallel. (Dkt. No. 47 at 13.) While those alleged breaches may have predated the filing of the Condemnation Lawsuit, they are all based on statements allegedly made by the City merely expressing its intent to acquire Plaintiff's leasehold interest—either through a voluntary buy-out or by condemnation. (Dkt. 38 at ¶¶ 175 (complaining of statement of "intent to take control of the property"), 177 (letter communicating "desire to buy-out Lonestar and regain control"), 178 (memorandum discussing "intention to buy out Lonestar's interest"), 180 (statement of intent to "demolish the South Terminal and build a New Facility, purportedly requiring the City to pursue condemnation"), 181 (condemnation notice).)

Even if some of Plaintiff's allegations cannot be tied back to the condemnation, all such claims can be disposed of in the Condemnation Lawsuit as counterclaims. *See Telesco v. Telesco*

*Fuel & Mason's Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which still may be raised in state court, is not enough to differentiate the federal suit from the state suit."). Indeed, all of Plaintiff's claims can be asserted as counterclaims and will be resolved in the Condemnation Lawsuit as permissive counterclaims. *See* TEX. R. CIV. P. 97(b). Importantly, *In re Breviloba* does not stand for the proposition that counterclaims are precluded from being raised in the Condemnation Lawsuit if they do not directly relate to the condemnation claims. As referenced above, the question before the Texas Supreme Court was whether the case should have been transferred from the county court at law to the district court under Tex. Prop. Code § 21.002 due to the counterclaims seeking amounts greater than the jurisdictional limits of the county court at law. *In re Breviloba*, 650 S.W.3d at 509. Thus, all of Plaintiff's claims will be resolved in the Condemnation Lawsuit.

There is a substantial likelihood that all of Plaintiff's breach-of-contract claims will be resolved in the Condemnation Lawsuit. The only way Plaintiff's claims will not be resolved in the Condemnation Lawsuit is if Plaintiff elects not to assert those counterclaims. In that event, the dismissal without prejudice sought in the Motion for Abstention would not foreclose Plaintiff from returning to federal court, if necessary. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("[a]ssuming that for some unexpected reason the state forum does turn out to be inadequate in some respect . . . [a party] could seek to return to federal court if it proved necessary."). Accordingly, the Recommendation erred in determining that Plaintiff's breach-of-contract claims would not be disposed of in the Condemnation Lawsuit.

   **3. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF WILL BE RESOLVED IN THE CONDEMNATION LAWSUIT.**

The Recommendation further errs in determining that the Condemnation Lawsuit will not dispose of Plaintiff's claims for injunctive and declaratory relief. The specific declarations

requested by Plaintiff are expressly predicated on its state-law contract claims. (Dkt. No. 38 at 57 (seeking, in Request B, a declaration that "the City may not *breach its obligations* and attempt to take Lonestar's business and/or *rights and interest in the Agreement* without compensating Lonestar *for the full value of the rights it seeks to take*") (emphases added) & 58 (seeking, in Request F, a declaration that the City "is in breach of Articles 2.03, 15, 34.03, and 41.13 of the Agreement"). Thus, these declaratory claims will be resolved in the Condemnation Lawsuit for the same reasons that Plaintiff's breach-of-contract claims will be resolved in that case.

Three of Plaintiff's four requests for injunctive relief seek to enjoin the Condemnation Lawsuit. Two include the specific request to enjoin the City "from pursuing the improper condemnation proceedings" under its breach-of-contract and constitutional claims. (Dkt. No. 38 at 58). The other one artfully pleads a request to enjoin the City from "violating Lonestar's rights in its property by asserting control over Lonestar's business and/or rights and interests in the [Lease], including without limitation its right to occupy the South Terminal." These three requests all challenge the City's right to condemn and will be resolved in the Condemnation Lawsuit.

The Recommendation's determination appears to be based on Plaintiff's argument that it will not be able to obtain injunctive relief until it has already allegedly been irreparably harmed. Arguments from condemnees that injunctive relief is necessary prior to a Special Commissioners' award are not uncommon. As addressed in the City's reply brief, Plaintiff's attempts to enjoin the Condemnation Lawsuit prior to the Special Commissioners' award are contrary to well-established Texas law. *Bd. of Regents v. Comanche Apartments, Inc.*, 568 S.W.2d 449, 451 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e). And there is a long-standing federal prohibition on awarding injunctive relief in takings claims. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2176 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the

government's actions effecting a taking.") Under Texas law, claims for injunctive relief concerning the right to take are the exclusive jurisdiction of the county court at law. *See Mo-Kan-Tex, R.R. Co. v. Jones*, 24 S.W.2d 366, 366-67 (Tex. Comm'n App. 1930, judgm't affirmed).

The *Mo-Kan-Tex R.R.* Court, which the Texas Supreme Court relied upon in *In re Breviloba*, explained in its holding:

> If plaintiff in error's contention be sound, then we would have the anomalous situation of the county court, which is vested with exclusive jurisdiction in all matters of eminent domain, being impotent to exercise such jurisdiction in many instances until the district court should determine, under conflicting evidence, whether the right to condemn in fact exists. In all cases in which the defendant in the county court should raise by its pleadings an issue as to the right to condemn under existing circumstances it would be necessary to halt the proceedings in the county court until the issue thus raised could be tried and determined in another and different court. It is difficult to reach the conclusion that the legislature intended any such result when it sought to vest jurisdiction in the county court in matters of eminent domain. *It is more reasonable to assume that the legislature contemplated the power thus conferred upon county courts should be effective to fully accomplish the determination of condemnation matters instead of requiring parallel suits in different courts in regard to the same subject matter.*[3]

As for Plaintiff's fourth request for injunctive relief, which is tied to Article 15, there is nothing precluding Plaintiff from asserting that request in the Condemnation Lawsuit at the jurisdictional phase.[4] Plaintiff also cannot demonstrate any pending irreparable injury relating to any alleged Article 15 breach because Plaintiff has been excluded from AEDP since at least July 2021. (Dkt. No. 20-3 Ex. B at ¶¶ 40–41.) Accordingly, the Condemnation Lawsuit can and will dispose of Plaintiff's claims for injunctive relief.

---

[3]  24 S.W. 2d at 367 (emphasis added).

[4]  The Recommendation also addresses Plaintiff's argument that the forum selection clause precludes Plaintiff from raising its breach-of-contract claims as counterclaims in the Condemnation Lawsuit when it agrees that the "forum selection clause is not dispositive of the *Colorado River* analysis." (Dkt No. 47 at 11 n. 3.)

As addressed above, the only way Plaintiff's rights will not be adequately protected in the Condemnation Lawsuit is if Plaintiff elects not to assert counterclaims in that case. By dismissing this matter without prejudice, Plaintiffs would not be foreclosed from returning to this Court with any valid claims. *See Mercury Constr. Corp.*, 460 U.S. at 28. Because the Recommendation determined that the proceedings were not parallel, it did not address any of the other *Colorado River* factors. For all of the reasons above, the Court should decline to adopt the Recommendation because there is a substantial likelihood the Condemnation Lawsuit will encompass all of the issues raised in this case, which makes the cases parallel.

### IV.   CONCLUSION

Accordingly, the City requests that the Court conduct a *de novo* review of the City's Motion for Abstention, grant the City's Motion for Abstention, and dismiss this action without prejudice to refiling after the Condemnation Lawsuit has been resolved by a non-appealable, final judgment. Alternatively, the City requests that the Court decline to adopt and recommit to the Magistrate Judge to make findings related to the remaining *Colorado River* factors based on the Court's finding that the proceedings are parallel. The City also requests any and all other relief to which it may be entitled.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Andrew J. Schumacher*
    Thomas J. Forestier
    State Bar No. 07256560
    tforestier@winstead.com
    Christopher Robertson
    State Bar No. 24107267
    crobertson@winstead.com

600 Travis Street, Suite 5200
Houston, Texas 77002
Telephone: (713) 650-2749
Facsimile No.: (713) 650-2400

Andrew J. Schumacher
State Bar No. 24051310
aschumacher@winstead.com
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 370-2800
Facsimile No.: (512) 370-2850

-and-

Anne L. Morgan, CITY ATTORNEY
Meghan L. Riley, CHIEF, LITIGATION
State Bar No. 24049373
meghan.riley@austintexas.gov

City of Austin Law Department
P.O. Box 1546
Austin, TX 78767-1088
Telephone: (512) 974-2458
Facsimile No.: (512) 974-1311

**ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN, TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 18, 2022, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                                        */s/ Andrew J. Schumacher*
                                        Andrew J. Schumacher