# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **LONESTAR AIRPORT HOLDINGS, LLC,** §<br>§<br>*Plaintiff* §<br>v. §<br>§<br>**CITY OF AUSTIN, TEXAS,** §<br>*Defendant* § | **CIVIL NO. 1:22-CV-00770-RP** |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Now before the Court are Defendant's Motion to Dismiss First Amended Complaint, filed October 25, 2022 (Dkt. 43); Lonestar Airport Holdings, LLC's Opposition to Defendant's Motion to Dismiss, filed November 8, 2022 (Dkt. 49); and Defendant's Reply, filed November 15, 2022 (Dkt. 50). By Text Order entered November 2, 2022, the District Court referred Defendant's Motion to Dismiss to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Lonestar Airport Holdings, LLC ("Lonestar") operates the South Terminal at Austin-Bergstrom International Airport. In March 2016, Lonestar and Defendant the City of Austin (the "City") entered into a 40-year South Terminal Lease and Concession Agreement (the "Agreement") under which Lonestar alleges that it spent $12.5 million renovating the terminal. The City has announced plans to demolish the terminal. The City filed a Petition for Condemnation of Lonestar's leasehold estate in Probate Court in Travis County, Texas on June 17, 2022, and a Special Commissioners' Hearing pursuant to Texas Property Code § 21.015 is set for January 31

and February 1, 2023. *City of Austin, Tex. v. LoneStar Airport Holdings, LLC & Texas Cap. Bank*, No. C-1-PB-22-001462 (Probate Court No. 1, Travis Cnty., Tex. June 17, 2022).

Lonestar filed this lawsuit against the City on August 1, 2022. In its First Amended Complaint, Lonestar alleges claims for takings under 42 U.S.C. § 1983 (Count I), the Declaratory Judgment Act (Count II), and the Texas Constitution (Count III), as well as breach of contract (Count IV) and, in the alternative, promissory estoppel (Counts V and VI). Dkt. 38. Lonestar also seeks a preliminary injunction, asking the Court to enjoin City officials from (1) excluding it from developing new facilities at the airport, and (2) "attempting to take possession of Lonestar's business at the South Terminal, or interfering with Lonestar's relationships with its vendors and tenants, until Lonestar's legal challenges are decided in accordance with the parties' Agreement that all disputes will be heard in this Court." Dkt. 32 at 2. The District Court has set a hearing for January 20, 2023 on Lonestar's motion for preliminary injunction. Dkt. 46.

The City now moves to dismiss Lonestar's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court addresses Defendants' jurisdictional arguments first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.") (citation omitted).

## II.     Rule 12(b)(1) Motion to Dismiss

The City contends that Lonestar's Amended Complaint should be dismissed because (1) most of its claims are not ripe, and (2) its remaining claims are barred by governmental immunity.

### A.  Legal Standard

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The ripeness doctrine of justiciability originates in the case-or-controversy requirement of Article III. *Trump v. New York*, 141 S. Ct. 530, 535 (2020). To be "ripe," a case must not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness is a question of law that implicates the court's subject-matter jurisdiction. *Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006). The party seeking to invoke subject-matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

Motions filed under Rule 12(b)(1) allow a party to challenge the subject-matter jurisdiction of the district court to hear a case. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor. *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021). At the pleading stage, the plaintiff's burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021).

## B. Ripeness

The City first asserts that the Court lacks subject-matter jurisdiction because Plaintiff's takings claims under 42 U.S.C. § 1983, the Declaratory Judgment Act, and the Texas Constitution (Counts I through III) and its claim for breach of contract arising from Article 2.03 of the Agreement (Count IV in part) are not ripe.

### 1. Takings Claims (Counts I through III)

The Fifth Amendment to the Constitution proscribes the taking of private property "for public use, without just compensation." U.S. CONST. amend. V. "While the property interest at the heart

3

of taking claims is typically real or personal property, the Fifth Amendment's protections also extend to many intangible rights, such as leaseholds, liens, and contracts." *Ogden Reg'l Airport Ass'n, Inc. v. Ogden City Airport*, --- F. Supp. 3d ----, 2022 WL 2670037, at *5 (D. Utah July 11, 2022) (citation omitted), *appeal docketed*, No. 22-4083 (10th Cir. Sept. 13, 2022); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 n.19 (2002) ("Condemnation of a leasehold gives the government possession of the property, the right to admit and exclude others, and the right to use it for a public purpose.").

This case involves direct condemnation, in which the City has initiated a condemnation proceeding to acquire Lonestar's leasehold interest in the South Terminal under its eminent domain authority.[1] The government commits a physical taking when it uses its power of eminent domain to formally condemn property. *Cedar Pt. Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425-26 (1982). And when it does so: "The government must pay for what it takes." *Cedar Pt. Nursery*, 141 S. Ct. at 2071.

In the Report and Recommendation issued November 4, 2022, the undersigned described condemnation proceedings under the Texas Property Code, which begin as an administrative proceeding followed, if necessary, by a judicial proceeding. Dkt. 47 at 7. During the administrative proceeding, the state trial court lacks jurisdiction to grant injunctive relief. *Gulf Energy Pipeline Co. v. Garcia*, 884 S.W.2d 821, 823 (Tex. App. —San Antonio 1994, no writ); *see also In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 542 (Tex. 2016) ("We have said that trial courts lack jurisdiction to interfere with proceedings pending before the commissioners."); *Peak Pipeline Corp. v. Norton*,

---

[1] Taking claims "rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity." *Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 553 (5th Cir. 2022) (quoting *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001)). Thus, when rights related to a contract with a government are in dispute, "interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978).

4

629 S.W.2d 185, 186 (Tex. App.—Tyler 1982, no writ) ("It is well settled in Texas that a court is not to enjoin or otherwise hinder or delay the special commissioners from proceeding with the condemnation inquiry."); *cf. Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701 (5th Cir. 2017) (affirming dismissal of federal suit without deciding whether Anti-Injunction Act, 28 U.S.C. § 2283, bars federal court from enjoining administrative phase of condemnation proceeding).

A taking occurs, the City argues, "when the condemnor takes actual possession of the property or takes constructive possession by depositing the special commissioners' award in the registry of the court." Dkt. 43 at 10 (quoting *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 843 (S.D. Tex. 1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000)). Accordingly, the City contends that Lonestar's claims under 42 U.S.C. § 1983 (Count I), the Declaratory Judgment Act (Count II), and the Texas Constitution (Count III) all challenge the City's right to condemn Lonestar's leasehold interest and should be dismissed because, under Texas law, no taking will occur until the City takes constructive possession of the South Terminal by depositing the special commissioners' award into the registry of the state court presiding over the pending condemnation proceeding. The City also argues that Lonestar may seek compensation at the Special Commissioners' hearing.

Lonestar responds that it has pleaded facts showing an imminent risk of constitutional injury that is "'certainly impending'—which is all that is required to satisfy Article III where injunctive relief is at issue." Dkt. 49 at 9 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

Both parties focus much of their arguments on the recent Supreme Court opinion *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).[2] In its response to the City's motion for abstention, for example, Lonestar argues that "where, as here, the government has already initiated a direct

---

[2] Lonestar also cites *Pakdel v. City & Cnty. of San Francisco, Cal.*, 141 S. Ct. 2226, 2230-31 (2021), which is distinguishable as a regulatory takings case.

condemnation proceeding by following the applicable statutory procedures, no additional finality is required. *Knick* indicates as much." Dkt. 34 at 15. The Court disagrees with Lonestar's position.

In *Knick*, the Court held that a property owner may bring a federal takings claim under § 1983 without first seeking compensation by bringing an "inverse condemnation" action under state law. The Court explained that: "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant. Inverse condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority." *Knick*, 139 S. Ct. at 2168 (cleaned up). The Court held that

> a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it. . . . If a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court for the "deprivation" of a right "secured by the Constitution."

*Id.* at 2170 (quoting 42 U.S.C. § 1983).

Because this is a case in which the City has initiated a direct condemnation proceeding, it "stands in contrast" to *Knick*. *See City of Jamaica Beach v. Williams*, No. 3:20-CV-00241, 2020 WL 6120469, at *2 (S.D. Tex. Sept. 29, 2020), *R. & R. adopted*, 2020 WL 6060705 (Oct. 14, 2020) (distinguishing *Knick* from direct condemnation claim). An alleged physical taking in itself satisfies the need to show finality. *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 513 (2d Cir. 2014). Lonestar's takings claims thus will become ripe for adjudication when the City takes actual or constructive possession of Lonestar's leasehold interest in the South Terminal. Unless and until the City takes Lonestar's property without just compensation, its takings claims remain dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump*, 141 S. Ct. at 535.

The Court finds that Lonestar has not shown that injury to its Fifth Amendment rights is "certainly impending" and thus has failed to meet its burden to invoke the Court's subject-matter jurisdiction. Accordingly, the undersigned Magistrate Judge recommends that the District Court find that Lonestar's takings claims are not ripe for adjudication and dismiss Counts I through III without prejudice for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

**2. Breach of Covenant of Quiet Enjoyment (Count IV in part)**

The City further argues that Lonestar's claims arising from the alleged breach of the covenant of quiet enjoyment in Article 2.03 of the Agreement (part of Count IV) are not ripe because Lonestar does not allege that it has been actually or constructively evicted from the South Terminal. The City quotes *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ): "A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission."

Lonestar responds that *Holmes* says only that eviction is an element of quiet enjoyment, and such a pleading defect does not implicate subject-matter jurisdiction. Dkt. 49 at 9 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Lonestar further contends that it has stated a claim for breach of quiet enjoyment. In its reply brief, the City essentially concedes its jurisdictional argument, stating: "Whether that defect warrants dismissal under Rule 12(b)(1) or 12(b)(6) is irrelevant; either way it should be dismissed." Dkt. 50 at 10 n.10.

The undersigned finds that Lonestar has met its burden to establish that the Court has subject-matter jurisdiction to decide this claim. The Court therefore recommends that the District Court deny the City's motion to dismiss under Rule 12(b)(1) Lonestar's contract claims arising from Article 2.03 of the Agreement (Count IV in part).

## C. Governmental Immunity

Next, the City argues that Lonestar's remaining claims for contract (Count IV) and promissory estoppel (Counts V and VI) are barred by governmental immunity.

### 1. Remaining Contract Claims (Count IV)

When a plaintiff sues a city performing governmental functions, the plaintiff must demonstrate that the Texas Legislature consented to the suit; otherwise, immunity from suit deprives a trial court of subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The "planning, acquisition, establishment, construction, improvement . . . [and] operation" of an airport are governmental functions. TEX. TRANSP. CODE § 22.002(a); *see also* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(10) (listing "airports" as a governmental function under the Tort Claims Act). Accordingly, the City argues, it was acting in its governmental capacity when it entered into the Agreement, and governmental immunity from suit applies.

The parties agree that the Texas Legislature has waived governmental immunity from suit for breach of contract claims if the governmental entity enters into "a written contract stating the essential terms of the agreement for providing goods and services to the local governmental entity." TEX. LOC. GOV'T CODE § 271.151(2)(A). To be subject to Chapter 271, a contract must (1) be in writing, (2) state the agreement's essential terms, (3) require the contractor to provide goods or services to the governmental entity, and (4) be properly executed on the entity's behalf. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 368 (Tex. 2019) (citing TEX. LOC. GOV'T CODE § 271.151(2)). "An agreement's essential terms are those that parties would reasonably regard as 'vitally important ingredient[s]' of their bargain." *Id.* at 368-69 (quoting *Fischer v. CTMI L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

Focusing on the second element, the City argues that Article 15 of the Agreement "fails to state the 'essential terms' of a legally enforceable agreement under Chapter 271" because it "creates nothing more than an agreement to negotiate in good faith toward a future contract." Dkt. 43 at 13. The City relies on *Vizant*, 576 S.W.3d at 371, in which the Texas Supreme Court found that a contractual provision to "make a good faith effort to receive board authorization to increase the compensation" for a consultant was not legally enforceable and thus not subject to waiver under Chapter 271.

Lonestar responds that the City is attacking the merits of its claim, when at this stage, it need only "plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail." *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014). Lonestar also submits that "agreements to agree" are not always void in Texas. *Fischer v. CTMI, LLC*, 479 S.W.3d 231, 238 (Tex. 2016).

Article 15 of the Agreement, "Expansion or New Facility," provides:

> If Tenant determines that the growth of operations of existing or new air carriers requires an Expansion or if Tenant or Owner determines that the growth of operations of existing or new air carriers requires a New Facility, either Tenant or Owner, as applicable, shall provide a written notice to the other Party of such determination. If Tenant provides a written notice to Owner that it is interested in investing in such Expansion or New Facility, then, **subject to Owner's agreement** and in accordance with the Airport Master Plan, (a) in the event of an Expansion that does not require additional land or other material changes to this Lease, Owner and Tenant will amend this Lease to reflect such Expansion, and (b) in the event of an Expansion that requires additional land or the construction of a New Facility, **Owner will provide Tenant with the exclusive first right to, as applicable, develop, construct and operate such Expansion or New Facility, and both Parties shall work together in good faith to enter into an agreement regarding such Expansion or New Facility on mutually agreeable terms**. . . .

Dkt. 1-2 (emphasis added).

9

In support of its governmental immunity argument, the City contends that Article 15 "creates nothing more than an agreement to negotiate in good faith toward a future contract." Dkt. 43 at 13; *see also* Dkt. 50 at 7 (characterizing Article 15 as "inscrutable"). Lonestar responds that although Article 15 creates enforceable obligations, "the Court does not have to resolve this merits dispute before deciding that it has jurisdiction." Dkt. 49 at 11.

The Court agrees with Lonestar that interpretation of the "exclusive first right" language goes to the merits of Lonestar's contract claims and distinguishes Article 15 from the language at issue in *Vizant*. Whether or not Lonestar ultimately prevails on its contract claims, the Court finds that Lonestar's allegations in Count IV are sufficient to state a substantial claim that meets the conditions for waiver of governmental immunity under Chapter 271, thereby demonstrating subject-matter jurisdiction. The undersigned Magistrate Judge therefore recommends that the District Court deny the City's motion to dismiss pursuant to Rule 12(b)(1) as to Count IV.

### 2. Promissory Estoppel (Counts V and VI)

For its last argument for dismissal under Rule 12(b)(1), the City asserts that Lonestar has failed to plead an applicable legislative statutory waiver of governmental immunity for its promissory estoppel claims (Counts V and VI). The City contends that claims for promissory estoppel are outside the limited scope of the statutory waiver of immunity in Chapter 271, and that estoppel does not apply to claims for exercise of governmental powers.

The Court agrees that governmental immunity from suit is not waived under Section 271 for a promissory estoppel claim because it is not a claim on a written contract. *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso 2014, no pet.); *see also Crook v. Galaviz*, No. EP-14-CV-193-KC, 2015 WL 502305, at *12 (W.D. Tex. Feb. 5, 2015) (stating that "there is no statute waiving Texas' immunity from suit for promissory estoppel claims" and collecting cases), *aff'd*, 616 F. App'x 747 (5th Cir. 2015).

Lonestar contends that, due to the City's misconduct, the City should be estopped from violating the Agreement in the interests of justice under *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex. 1970). The Texas Supreme Court held in *Prasifka* that a municipality may be estopped where justice requires and there is no interference with the exercise of the municipality's governmental functions. *Id.* at 836. Subsequently, in *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006), the court "thoroughly presented the reasons for th[e] settled rule" that "a city cannot be estopped from exercising its governmental functions." The court explained that: "As we noted in *Prasifka*, even if justice requires estoppel, a city will not be estopped if doing so would interfere with its ability to perform its governmental functions." *White Settlement*, 198 S.W.3d at 776. The court stated that "the relevant inquiry is whether estopping the city in a single instance will bar the future performance of that governmental function or impede the city's ability to perform its other governmental functions." *Id.* A court also should consider whether estoppel will "otherwise impede the city's ability to serve the general public." *Id.* at 777.

The City cites cases distinguishing *Prasifka* and *White Settlement* as addressing the merits of whether an entity may be estopped from taking action – in those cases, enforcing city ordinances – not jurisdiction, the question now before the Court. *Luce Bayou Pub. Util. Dist. v. Kilpatrick*, 653 S.W.3d 323, 328 (Tex. App. —Houston [14th Dist.] 2022, no pet.); *Groba v. City of Taylor*, No. 03-19-00365-CV, 2021 WL 359203, at *3 (Tex. App.—Austin Feb. 3, 2021, pet. denied).

As stated above, the planning, construction, improvement, and operation of an airport are governmental functions. TEX. TRANSP. CODE § 22.002(a). Taking the allegations in Lonestar's complaint as true, the City has publicly announced that it intends to demolish the South Terminal and build in its place a concourse with at least 10 new gates and two new taxiways, actions that fall within the City's ability to perform its governmental functions of planning, construction,

11

improvement, and operation of Austin-Bergstrom International Airport. Dkt. 38 ¶ 89. "When a governmental unit is exercising governmental powers it is not subject to estoppel." *Leeco Gas & Oil Co. v. Nueces Cnty.*, 736 S.W.2d 629, 630 (Tex. 1987).

Lonestar has not met its burden to show that the Court has subject-matter jurisdiction over its promissory estoppel claims, which are barred by governmental immunity. For these reasons, the undersigned Magistrate Judge recommends that the District Court grant the City's motion to dismiss Lonestar's promissory estoppel claims (Counts V and VI) for lack of subject-matter jurisdiction under Rule 12(b)(1).[3]

### D. Conclusion as to Rule 12(b)(1) Motion to Dismiss

In summary, the undersigned recommends that the District Court dismiss Counts I-III and V-VI of Lonestar's First Amended Complaint for lack of subject-matter jurisdiction.

### III. Rule 12(b)(6) Motion to Dismiss

Finally, the City moves to dismiss Lonestar's First Amended Complaint in its entirety for failure to state a claim on which relief can be granted. Because the Court concludes that Lonestar has failed to establish subject-matter jurisdiction over its claims for takings (Counts I-III) and promissory estoppel (Counts V-VI), the Court addresses the City's Rule 12(b)(6) motion to dismiss only as to Lonestar's contract claims (Count IV).

### A. Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. "A motion to dismiss for failure to state a claim concerns the formal

---

[3] The Court agrees with Lonestar that dismissal of its promissory estoppel claims does not preclude Lonestar from arguing that "the City is still estopped from denying the enforceability of Article 15, or the full scope of Article 34, as a defense to Lonestar's breach-of-contract claim." Dkt. 49 at 13-14. *See City of El Paso, Tex. v. High Ridge Constr., Inc.*, 442 S.W.3d 660, 675 (Tex. App.—El Paso 2014, pet. denied) (concluding that plaintiff's estoppel argument sought to foreclose defensive issued raised by defendant city in response to plaintiff's breach of contract claim).

sufficiency of the statement of the claim for relief, not a lawsuit's merits." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (internal quotation marks and citation omitted). Therefore, in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). "Although this framework is one-sided, the issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell*, 974 F.3d at 582 (internal quotation marks and citation omitted).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely

13

granted." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

**B. Analysis**

The Court must determine whether, in Count IV of the First Amended Complaint, Lonestar has alleged sufficient facts to state a claim for relief that is plausible on its face. As stated, at the motion to dismiss stage, the Court accepts all well-pleaded facts as true. *Katrina*, 495 F.3d at 205.

In Count IV, which spans 11 pages and 76 paragraphs, Lonestar seeks specific performance, a preliminary and permanent injunction, and money damages for the City's alleged breach of multiple provisions of the Agreement, including Article 2.03 (covenant of quiet enjoyment), Article 15 ("exclusive first right to, as applicable, develop, construct and operate" any "Expansion or New Facility" at the airport), Article 34 (compensation for interests taken), Article 41 (taking any action "the primary purpose of which is to avoid any of [the City's] commitments and obligations" under the Agreement), and Article 18 (shuttle bus service).

The City first argues that Lonestar's contract claims fail as a matter of law because they "are all based on the contention that the City is breaching the Lease by initiating condemnation proceedings to acquire Plaintiff's leasehold interest," while "both Texas law and the Lease itself permit the City to condemn Plaintiff's entire leasehold interest." Dkt. 43 at 16. As the undersigned concluded in the pending Report and Recommendation to deny the City's motion for abstention, however, some of Lonestar's breach of contract claims arise out of events that predate the condemnation proceeding and are unrelated to it. Dkt. 47 at 11-13. Lonestar does not dispute that a governmental entity "cannot contract away its eminent domain power," but instead argues that the City's refusal to compensate Lonestar for its enforceable contractual rights constitutes a breach. Dkt. 49 at 15.

The remainder of the City's arguments generally go to the merits of Lonestar's contract claims, not their plausibility as pleaded. The City asserts that Article 15 is unenforceable because it (1) contains an unsatisfied condition precedent; (2) as interpreted by Lonestar, is contrary to the Federal Aviation Act and Federal Aviation Administration policy; and (3) is inconsistent with Texas competitive bidding laws and Austin city ordinances.[4]

First, Lonestar has pleaded that all conditions precedent have been performed. *See* Dkt. 38 ¶¶ 165, 169; *see also* Rule 9(c) ("In pleading conditions precedent it suffices to allege generally that all conditions precedent have occurred or been performed."). Second, the Court agrees with Lonestar that resolution of the City's federal aviation arguments would rely on facts as yet undeveloped here. Third, while the City argues that an "exclusive first right" provision under Article 15 of the Agreement would be inconsistent with the Texas Local Government Code, Lonestar argues that airport leases are governed instead by the Texas Transportation Code, which are not subject to competitive bidding laws. Dkt. 49 at 21-22. The City makes no reply to the latter argument. The Court is not persuaded that Lonestar's contract claims should be dismissed on these grounds and recommends that the District Court deny the City's Rule 12(b)(6) motion.

## IV. Recommendation

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss First Amended Complaint (Dkt. 43). The Court recommends that the District Court **DISMISS** Plaintiff's takings claims (Counts I-III) **without prejudice** and **DISMISS** Plaintiff's promissory estopped claims (Counts V-VI) **with prejudice** pursuant to Rule 12(b)(1); and **DENY** Defendant's Motion to Dismiss as to Plaintiff's contract claims (Count IV).

---

[4] The City's argument that Article 15 contains an unenforceable agreement to negotiate is addressed in Section II(C)(1) *supra*.

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 19, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE