# EXHIBIT D

| | |
|---|---|
| Message | |
| **From**: | Carbajal, Susana [Susana.Carbajal@austintexas.gov] |
| **Sent**: | 8/6/2015 9:52:50 AM |
| **To**: | Tasugi, Brent [btasugi@oaktreecapital.com]; Burchetta, James [jburchetta@oaktreecapital.com]; McCann, Emmett [emccann@oaktreecapital.com]; Andrew Vasey (avasey@vaseyaviation.com) (avasey@vaseyaviation.com) [avasey@vaseyaviation.com] |
| **CC**: | Smith, Jim [Jim.Smith@austintexas.gov] |
| **Subject**: | AUS Highstar Memo to Council |
| **Attachments**: | 08-06-15 Memo to M&C re- Limited Services Terminal at Austin-Bergstrom I....pdf |
| **Importance**: | High |

Gentlemen: the attached was sent to Mayor and Council this morning.

Thank you.

Susana

LNSTR-000288



# MEMORANDUM

TO: Mayor and Council

CC: Marc A. Ott, City Manager
Sue Edwards, Assistant City Manager

FROM: Jim Smith, Executive Director
Aviation Department

DATE: August 6, 2015

SUBJECT: Limited Services Terminal at Austin-Bergstrom International Airport (ABIA)
_____

## Purpose
The purpose of this memo is to update you on the status of the negotiations between the City of Austin Department of Aviation (Aviation) and Highstar Capital IV, L.P. (Highstar) to improve, operate, and maintain a limited services airport terminal at ABIA.

## Background
On June 18, 2015, Council authorized negotiation of a lease with Highstar for up to 30 acres of land at ABIA to improve, operate, and maintain a limited services terminal for a 30 year term with two 5 year extensions.

Aviation has negotiated the main terms of the lease with Highstar. Please find attached to this memo a letter of intent outlining the main terms of the lease. Below are the some of the main terms of the lease that have been reached with Highstar.

1. <u>Term for the Lease</u>. Highstar will lease up to 30 acres of land at ABIA for a 30 year lease period with the option to extend the lease term for 2 additional 5 year extensions.

2. <u>Title</u>. Title to and ownership of the South Terminal shall remain in the City and any and all improvements shall vest in the City as such are constructed.

3. <u>Rent</u>. Highstar will pay Aviation rent the greater of Fixed Rent or Variable Rent:

    - Fixed Rent is $80,000 per year during renovations and/or construction. Fixed Rent increases to $300,000 per year on the date the first flight arrives at or departs from the South Terminal. Fixed Rent will be adjusted annually based on Consumer Price

1

LNSTR-000289

Index for Urban Consumers published by the U.S. Department of Labor, Bureau of Labor Statistics, or a comparable index.

- Variable Rent is a percentage of Gross Revenue upon reaching specific annual enplanements at the South Terminal as follows:

    0 to 399,999 enplanements = 0% of Gross Revenue
    400,000 to 699,999 enplanements = 5% of Gross Revenue
    700,000 to 999,999 enplanements = 10% of Gross Revenue
    1,000,000 to 1,299,999 enplanements = 15% of Gross Revenue
    > 1,299,999 enplanements = 20% of Gross Revenue

- All Landing Fees and Passenger Facility Charges shall be paid to Aviation on the date the first flight arrives at or departs from the South Terminal.

4. <u>Investment</u>. Highstar will invest approximately $11.2 million for rehabilitation and start-up costs and working capital requirements of the South Terminal. Highstar expects to invest an additional approximately $3.9 million for maintenance capital in the first 10 years after operations commence. Thereafter, the City and Highstar will determine the capital investment needed for every 5 year periods remaining in the Lease Term.

5. <u>Operation and Management</u>.

    - Highstar will operate the South Terminal under a predetermined and mutually agreeable set of operating standards that will ensure that the South Terminal and the City remain in compliance with all Federal Aviation Administration, Code of Federal Regulations, and Transportation Security Administration Regulations and Circulars, in addition to any and all applicable local, state, and federal laws, rules, policies, and regulations.

    - Highstar will be responsible for operating and managing all South Terminal and airside operations, as well as all adjacent landside operations, of the South Terminal, including terminal parking, rental car operations, in-terminal food and beverage, retail, news and gift concessions, ground transportation and other passenger services.

    - Aviation will remain solely responsible for operation and maintenance of the airfield, other non-terminal leaseholds, and airport roadways.

6. <u>City Policies</u>. Highstar will comply with City policies including the following:

    - **Airport Concession Disadvantaged Business Enterprise** (ACDBE) plan.

    - Minority and Women-owned Business Enterprise (MWBE) ordinance. Highstar has

LNSTR-000290

met with the Assistant Director of City of Austin's Small and Minority Business Resources Department (SMBR) to begin discussions on a community outreach plan and establishing **MWBE goals** for the South Terminal in accordance with the City's ordinance.

- Highstar shall pay **prevailing wages** in accordance with City ordinances and policies for construction related projects at the South Terminal.

- Highstar shall pay the **living wage rate** adopted by the City for ongoing operations of the South Terminal.

7. Capital Recovery. In the first 6 years after operations at the South Terminal commence, Highstar has the option to terminate the lease and seek a recovery of its capital investment if the passenger enplanement level at the South Terminal falls below 200,000 enplanements over a 12-month period. Upon termination of the lease, the City has the option to assume operations of the South Terminal or close the South Terminal. If the City chooses to close the South Terminal, the air carriers operating out of the South Terminal will be allowed to operate at the Barbara Jordan Terminal. After year 6 of the Lease Term, Highstar's option to terminate the lease and seek a recovery of its capital investment shall expire.

On August 13, 2015, Aviation will seek your authorization to execute the lease with Highstar with the terms outlined in the attached letter of intent. Due to the Barbara Jordan Terminal operating at maximum capacity and the high demand for air service at ABIA, reactivating the South Terminal and making it available for the community no later than early 2016 is critical.

Should you have any questions or need additional information, please do not hesitate to contact me.

Attachment



# City of Austin

**Aviation Department**
**Austin-Bergstrom International Airport**
*3600 Presidential Blvd., Ste. 411, Austin, Texas 78719*
*512/530-ABLA(2242) Fax: 512/530-7686*
*www.abia.org*

August 4, 2015

Mr. Brent Tasugi           (email/*BTasugi@oaktreecapital.com*)
Senior Vice President
Oaktree Capital Management, L.P.
277 Park Avenue, 45th Floor
New York, NY 10172

Re:    Proposed South Terminal at Austin-Bergstrom International Airport

Dear Mr. Tasugi:

     The City of Austin Department of Aviation (the "City") owns and operates the Austin-Bergstrom International Airport (the "Airport"). In conjunction with certain air carriers ("Airlines") currently doing business at the Airport and Highstar Capital IV, L.P. ("Highstar"), the City is considering reactivating the South Terminal, a capacity-enhancing, limited amenities terminal at the Airport (the "Project"). Accordingly, the City and Highstar have met and discussed the planning, improvement, financing, and operation of the proposed South Terminal at the Airport. Those meetings and discussions have resulted in certain understandings among the City and Highstar regarding the proposed South Terminal. Furthermore, on June 18, 2015, the Austin City Council authorized the negotiation of a lease with Highstar for up to 30 acres of land at the Airport to improve, operate, and maintain the South Terminal for a 30 year term with two 5 year extension options (the "Lease"). The City and Highstar now intend for this letter to outline the understandings reached to date and anticipate that the execution of this letter will be followed by (1) further negotiations between the City and Highstar of the terms of the Lease which will obligate Highstar to improve, operate, and maintain the South Terminal at the Airport; (2) continue negotiations between Highstar and the Airlines to operate at the South Terminal at the Airport; (3) update the Airport Advisory Commission on August 11, 2015 regarding the Project; and (4) seek authorization from the Austin City Council on August 13, 2015 to execute the Lease with Highstar.

### A.    PURPOSE

     The purpose of this letter is to set forth the current mutual understandings between the City and Highstar and include the minimum terms and conditions upon which the City would lease the South Terminal to Highstar to improve, operate, and maintain the South Terminal at the Airport. The undersigned on behalf of the City and Highstar understand that each will rely on this letter to continue negotiations in good faith and propose final, mutually agreeable terms and conditions of the Lease to the Austin

1

City Council for approval. Notwithstanding the foregoing, except for Section C of this letter which is intended to be a binding obligation of each of the parties hereto, nothing else in this letter shall be construed as creating any rights or obligations binding on any party until (1) the Lease has been fully executed by the parties with terms and conditions approved by the Austin City Council and (2) agreements have been signed between the Airlines and Highstar allowing the Airlines to operate at the South Terminal.

**B.    LEASE**

The following are the minimum terms and conditions to be included in the Lease as applicable.

1.    Term for the Lease. A period of time (the "Lease Term") commencing on the effective date of the Lease (the "Effective Date") and expiring at 11:59 p.m., Austin, Texas time on the last day (the "Expiration Date") of the three hundred sixtieth (360th) full calendar month, provided, that the parties shall have the option to extend the Lease Term for 2 additional 5 year extensions at the election of Highstar, and with the reasonable consent of the City, which shall not be denied if, at the end of the Lease Term, the lessee is not in material default under the Lease and lessee has met certain economic and performance requirements to be mutually agreed by the City and Highstar and included in the Lease ("Extension Options"). Title to and ownership of the South Terminal shall remain in the City and any and all improvements shall vest in the City as such are constructed. The Lease shall include and cover all existing fixtures and equipment at the South Terminal and its adjacent landside facilities, including, but not limited to, all existing holdroom seating currently in storage in the South Terminal, baggage belt systems, mechanical, HVAC and plumbing, fire alarm and protection, and security equipment.

2.    Rent and Other Payables.

a.    Highstar shall pay the City rent which shall be calculated, on an annual basis, as the greater of Fixed Rent or Variable Rent:

i.    Fixed Rent shall equal:

a. $80,000* per year from Effective Date through the date the first flight arrives at or departs from the South Terminal (the "Commencement of Operations Date"), prorated for any partial years; and

b. $300,000* per year from and after the date immediately after the Commencement of Operations Date, prorated for any partial years.

*Amount subject to annual adjustment based on Consumer Price Index for Urban Consumers published by the U.S. Department of Labor, Bureau of Labor Statistics, or a comparable index.*

LNSTR-000293

ii. Variable Rent shall be calculated as a percentage of Gross Revenue and shall be based on the actual annual enplaned passenger volumes passing through the South Terminal:

    a. 0 to 399,999 enplanements = 0% of Gross Revenue*
    b. 400,000 to 699,999 enplanements = 5% of Gross Revenue*
    c. 700,000 to 999,999 enplanements = 10% of Gross Revenue*
    d. 1,000,000 to 1,299,999 enplanements = 15% of Gross Revenue*
    e. > 1,299,999 enplanements = 20% of Gross Revenue*

*Gross Revenue means all cash collected by Highstar arising from its operation of the South Terminal. The following, to the extent properly documented and recorded, may be deducted from the computation of Gross Revenue:*

    *1) Federal, state, and local excise, sales, and use taxes that are passed through to and collected from the customer, and remitted to the taxing authority by Highstar; and*

    *2) The amount of any refunds or adjustments (either cash or credit) granted by Highstar to customers.*

*Highstar shall submit reasonably detailed quarterly and annual Gross Revenue reports to the Aviation Department Director on a form prescribed for in the Lease.*

    b. Landing fees accrued, due, and owed by the Airlines to the City in accordance with the Airport's Rates & Charges as well as the Passenger Facility Charges collected by the Airlines shall be paid to the City commencing on the Commencement of Operations Date.

    3. <u>Initial Investment</u>. Highstar shall invest approximately $11.2 million for South Terminal rehabilitation and start-up costs and working capital requirements (the "Initial Capital Investment") of the South Terminal. On or prior to the Commencement of Operations Date, Highstar shall provide the City with a reasonably detailed calculation of the actual Initial Capital Investment amount and the City and Highstar shall work in good faith to agree on the Initial Capital Investment within a reasonable period of time. Additionally, Highstar expects to invest an additional approximately $3.9 million for maintenance capital in the first 10 years after the Commencement of Operations Date. Thereafter, the City and Highstar shall work in good faith to agree on any additional capital investment for every 5 year periods remaining in the Lease Term.

    4. <u>Expansions Rights</u>. In the event that Highstar and the City determines that the growth of the Airlines' (or other air carriers') operations at the Airport requires either expansion of the South Terminal or construction of a new facility, and Highstar informs the City that it is interested in investing in such an expansion and/or construction project, then: (a) in the event of an expansion of the South Terminal doesn't require additional

3

LNSTR-000294

land or other material changes to the current Lease terms, the City and Highstar will amend the Lease to reflect such expansion and (b) in the event the construction of a new facility is necessary, the City shall inform Highstar of such and shall give Highstar the exclusive first right to work with the City on the plans for the development of any additional land required to accommodate such expansion or construction on terms mutually agreeable to the parties.

5.  Operation and Management.

a.  Highstar will operate the South Terminal under a predetermined and mutually agreeable set of operating standards that will ensure that the South Terminal and the City remain in compliance with all Federal Aviation Administration ("FAA"), Code of Federal Regulations, and Transportation Security Administration ("TSA") Regulations and Circulars, in addition to any and all applicable local, state, and federal laws, rules, policies, and regulations, provided that if material additional costs to Highstar result from changes to any of such laws, rules, policies and regulations, Highstar may, in coordination with the City, seek funding from the applicable governmental entities to defray some or all of such costs.

b.  Highstar shall be solely responsible for the operation, maintenance, and repair of the South Terminal and employ or contract with such staff as necessary to provide for a responsible person to be available at all times. Highstar shall be solely responsible for operating and managing all South Terminal and airside operations (excluding glycol recovery), as well as all adjacent landside operations, of the South Terminal, including terminal parking, rental car operations (excluding shuttle bus operations), in-terminal food and beverage, retail, news and gift concessions, ground transportation and advertising and other passenger services. Notwithstanding the foregoing, the City shall be responsible for (i) maintaining Part 139 Certification and all compliance responsibilities vis-à-vis the FAA and TSA and will remain solely responsible for operation and maintenance of the airfield, other non-terminal leaseholds and airport access roadways at no cost to Highstar, (ii) (A) using reasonable good faith efforts to work with Texas Department of Transportation ("TXDOT") to authorize and fund (at no cost to Highstar) the installation of additional roadway signage required to distinguish the South Terminal from the Barbara Jordan Terminal and the airlines using such terminals, and (B) providing similar, airline- and terminal- identifying signage on applicable airport roadways and properties at no cost to Highstar, (iii) financing and installing roadway lighting along Emma Browning Drive, the South Terminal entrance, exit roadways and the surface parking lots surrounding the South Terminal, and providing law enforcement and security on such roadways, (iv) providing telecommunications and administrative IT infrastructure similar to the Barbara Jordan Terminal, and (v) providing flight information display monitors in the South Terminal which show departing and arriving flights for the South Terminal and the Barbara Jordan Terminal; provided that, with respect to (iv) and (v) above, Highstar acknowledges that it shall be responsible to pay for the City's actual, documented, cost of equipment, installation, and ongoing annual support costs for such systems. Actual costs may be subject to annual adjustments based on the actual costs incurred by the City. In addition,

4

LNSTR-000295

the City will provide the deicing infrastructure to the Airlines necessary for the City to meet its regulatory requirements regarding its Storm Water Pollution Prevention Plan ("SWPPP") permits. The Airlines will be responsible for the cost of the deicing fluid used and its application.

      c.    The City will continue to be responsible for operation of the airfield, other non-terminal leaseholds and airport roadways, and will retain all airside responsibilities, its Passenger Facility Charge ("PFC") collection authority and its Airport Improvement Program ("AIP") sponsor status.

      d.    Highstar and the City will meet regularly, no less often than quarterly, to discuss:

      a. General Airport affairs;
      b. Necessary capital projects, maintenance, and repair expenses;
      c. Other items relevant to the operation of the South Terminal;
      d. Determine a mutually agreeable air service development and marketing plans; and
      e. Other opportunities to enhance operations at Airport.

    **6.**    <u>Assignment</u>. No assignment by Highstar of its rights in and under the Lease shall be made prior to Commencement of Operations Date. Thereafter, Highstar may assign all of its rights and obligations under the Lease if Highstar (i) is not at the time of assignment in material default under the Lease and (ii) with the consent of the City, which shall only be denied if the City reasonably determines that such proposed transferee is not capable of performing the obligations and covenants under the Lease, which determination shall be based upon: (x) the financial strength and integrity of the proposed transferee and its beneficial owners; and (y) the experience of the day-to-day team managing the airport (in airports or other comparable or relevant businesses), background, and reputation of the proposed transferee and its beneficial owners, respective officers, directors, and employees.

    **7.**    <u>City Policies</u>. The Lease will contain provisions which address compliance, initiatives and outreach efforts related to various City policies, including, without limitation:

      a.    <u>Airport Concession Disadvantaged Business Enterprise ("ACDBE")</u>. In accordance with Part 23, the City has implemented an Airport Concession Disadvantaged Business Enterprise ("ACDBE") plan ("City ACDBE Plan") under which qualified firms may have the opportunity to operate an Airport concession. A copy of the City ACDBE plan may be obtained from Jolene Cochran, City of Austin Department of Disadvantaged Small Minority Business Resources, Telephone: (512) 974-7678, E-mail: Jolene.cochran@austintexas.gov. Highstar will take all necessary and reasonable steps to achieve the established ACDBE goal related to the South Terminal. ACDBE participation may be in the form of one or more subleases, joint ventures,

LNSTR-000296

partnerships, or other legal or contractual arrangements meeting the eligibility standards Part 23. Highstar shall also submit information in the form of a DBE Compliance Plan concerning the ACDBE firms that will participate in South Terminal concessions, including the name and address of each firm, the annual estimated gross receipts to be earned by each named firm, a description of the legal arrangements utilized, and the total overall estimated annual gross receipts to be earned by such concessions.

        b.      <u>Minority and Women-owned Business Enterprise ("MWBE")</u>. Highstar will work with City of Austin's Small and Minority Business Resources Department ("SMBR") to establish a community outreach plan and to establish MWBE goals for the South Terminal in accordance with the City's ordinance.

        c.      <u>Prevailing Wages</u>. Highstar shall pay prevailing wages in accordance with City ordinances and policies for construction related projects at the South Terminal.

        d.      <u>Living Wage</u>. For ongoing operations of the South Terminal, Highstar shall pay the living wage rate adopted by the City.

    8.      <u>Rental Car Operations</u>. The City shall provide, at no cost to Highstar, a rental car shuttle bus between the South Terminal and each of the new Consolidated Rental Car Center ("CONRAC") and the Airport's Barbara Jordan Terminal. The operation of the shuttle bus will be coordinated with the airline flight schedules at the South Terminal. The City shall provide a quarterly payment to Highstar of rental car revenue per enplaned passenger at the South Terminal based on the previous quarter's year-to-date revenue generated by the rental car facilities of the Airport. The current net revenue per enplanement is $[2.30] and is subject to annual adjustment. The City's payments to Highstar shall be subject to an annual true-up.

    9.      <u>Security</u>. The City shall provide uniformed law enforcement officers ("LEOs") as required to meet and comply with the Airport's Security Plan and TSA and other applicable regulatory requirements, at no cost to Highstar, as well as one (1) security manager to oversee the security program developed and implemented at the South Terminal, at no cost to Highstar. The City's security manager shall act as the liaison among the City, Highstar, law enforcement, and TSA. Highstar shall hire additional security as necessary and at its own cost to perform day to day security functions, including but not limited to, alarm response, exit lane monitoring, calls for assistance, and incident documentation. Highstar shall purchase and install, at its expense, security equipment for the South Terminal, as mutually agreed to by the City and Highstar and sufficient to ensure compliance with applicable security regulations. Highstar shall ensure the South Terminal's security system be connected to the City's existing security system for the Airport and pay for such connection. The South Terminal's security system shall be monitored by the City, at no charge to Highstar.

    10.     <u>Capital Recovery</u>. If at any time within the first 6 years after the Commencement of Operations Date, the passenger enplanement level at the South

6

LNSTR-000297

Terminal falls below or is projected to fall below 200,000 enplanements over any 12-month period because any or all of the Airlines fail to ramp up or reduce service or provide notification of a reduction in service from the South Terminal, Highstar may provide notice to the City of its intention to exercise a "Capital Recovery Provision" under the Lease.

      a.    If the City and Highstar are unable to put into place or replace the enplanement shortfall within 6 months after any such failure to ramp up or reduction of service or notice of reduction of service, Highstar may terminate its Lease with the City and the City will pay Highstar an amount equal to (i) the Capital Recovery Factor (defined below) multiplied by (ii) the total of (a) the Initial Capital Investment, plus (b) any remaining obligations under capital leases related to the South Terminal (unless assumed by the City), less (c) any cash distributions realized by Highstar from and after the Commencement of Operations Date (such amount, the "Capital Recovery Payment"). The Capital Recovery Payment will be paid in equal installments at each of the four calendar quarter ends following the termination of the Lease. Upon termination of the Lease, the City will either assume operations of the South Terminal or the City will close the South Terminal and the Airlines operating out of the South Terminal will be allowed to operate at the Barbara Jordan Terminal.

      b.    The "Capital Recovery Factor" shall be 100% in years 1-3 of the Lease Term, 75% in year 4, 50% in year 5, and 25% in year 6. After year 6 of the Lease Term, the Capital Recovery Provision shall expire.

    11.    <u>Airport Responsibilities</u>. City shall be responsible at all times for the operation and maintenance of the airfield, airport roadways, and roadway lighting. City shall retain all airside responsibilities.

    12.    <u>Airline Use Agreement</u>. City shall review and approve the agreements with Airlines operating at the South Terminal prior to execution by Highstar and the Airlines, which approval shall not be unreasonably withheld, conditioned or delayed. City shall be a third party beneficiary to the provisions in the agreements between Highstar and the air carriers operating at the South Terminal, that are reasonably related to the City. Any agreements between Highstar and air carriers shall not be entered into without the prior written approval of the City, which shall not be unreasonably withheld, conditioned or delayed.

    13.    <u>Environmental Conditions</u>. The City and Highstar will allocate liabilities associated with environmental liabilities which do not arise from Highstar's or any of its representative's actions as operator of the South Terminal.

## C. OTHER PROVISIONS

    1.    Except in connection with its disclosure or use in connection with the approval from the Austin City Council, the City and Highstar agree that they will consult with each other and obtain the other party's consent prior to disclosing this letter or its

LNSTR-000298

contents to any third party or making any public announcement related to this letter or any of its contents or issuing any press releases regarding this letter. Highstar acknowledges that City is required to comply with Chapter 552 of the Texas Government Code (Public Information Act or Act). Under the Public Information Act, this letter and other documents related to this letter which are in City's possession, or to which City has access, are presumed to be public. The City agrees it shall not disclose this letter or its contents to third parties without the prior written consent of Highstar or in a manner not expressly permitted herein, unless the letter or its contents are required to be disclosed by law or an order of a court or other governmental authority with proper jurisdiction.

2. The City agrees to work only with Highstar for purposes of pursuing the Project from the date of the letter through August 13, 2015 or, if later, the date on which Austin City Council decides on authorizing the execution of the Lease, plus a period of six (6) months thereafter ("Project Period"). The City agrees that during this Project Period, it will not pursue such project with any other party, or directly or indirectly participate in any discussions or negotiations with any developer, air carrier or other party that constitutes, or that would be reasonably expected to lead to, a redevelopment similar to the Project without receiving the approval of Highstar.

If the foregoing letter accurately represents your understanding of the subject matter hereof, please execute this letter in the space provided below and return a signed copy to the City.

Sincerely,

CITY OF AUSTIN, TEXAS

By: _____
Jim Smith
Executive Director
Department of Aviation

8

LNSTR-000299

**AGREED AND ACCEPTED:**

HIGHSTAR CAPITAL IV, L.P.
By: Highstar IV GP, LP, its General Partner
By: Highstar Capital GP IV, LLC, its General Partner

By: _____
Name: Brent Tasugi
Title: Senior Vice President
Date: August 5, 2015

By: _____
Name: Emmett McCann
Title: Managing Director
Date: August 5, 2015

9

LNSTR-000300