# EXHIBIT F

| | |
|---|---|
| **From**: | Tasugi, Brent [btasugi@oaktreecapital.com] |
| **Sent**: | 11/16/2015 8:13:34 AM |
| **To**: | Susana Carbajal (susana.carbajal@austintexas.gov) [susana.carbajal@austintexas.gov] |
| **CC**: | Burchetta, James [Burchetta, James712]; Andrew Vasey (avasey@vaseyaviation.com) [avasey@vaseyaviation.com]; Jeff Pearse (pearse.jeff@gmail.com) [pearse.jeff@gmail.com]; Lewis, Dawson [Lewis, Dawsonc25]; Carson Sieving (csieving@velaw.com) [csieving@velaw.com]; Michael A. Saslaw (msaslaw@velaw.com) [msaslaw@velaw.com] |
| **Subject**: | AUS ST - Updated Issues List |
| **Attachments**: | AUS Lease Key Issues List Matrix HS 11-16.vF.docx; AUS Lease Key Issues List Matrix HS 11-16.vF.pdf |

Hi Susana,

Attached please find our updated Lease Agreement issues list. Let's use the attached as a guide for our discussion this morning.

Best,

**Brent Tasugi**
*Senior Vice President*
*Infrastructure Investing*

Oaktree Capital Management, L.P.
277 Park Avenue, 45th Floor
New York, NY 10172

*p +1 (646) 857-8813*
*m +1 (917) 476-1387*
www.oaktreecapital.com
BTasugi@oaktreecapital.com

## Lease -- Key Issue List
## Annotated to reflect discussion with DOA 11/13

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| o **_Economic Issues_** | | |
| o Discuss ability of Tenant to enforce Capital Recovery Payment against City of Austin. (See *Section III.D*). | 1 | Priority #1 until issue is clarified. |
| o Elimination of *"Compensation Event"* concept in its entirety (See *Section V.T*). This concept is standard in long term concessions/leases to protect against any actions taken by the lessor or its municipal parent and was in the GECAS Lease (See GECAS Lease *Section V.M*). | 1 | Revise scope to actions by the City or Department of Aviation that materially impact the operation of the South Terminal. |
| o Addition of minimum annual capex requirement of 4% of Gross Revenues in each Lease Year after the tenth anniversary of the Commencement of Operations Date (See *Section IX.D*). | 2 | Revise to require an amount necessary to maintain a condition equal to or higher than a defined maintenance condition so that the South Terminal will be in a satisfactory condition on hand over at the expiration or termination of the Term. |
| o Deletion of Tenant's right to collect fees for aircraft parking on the *"Tenant Apron"* (See *Sections XI.B and XVIII.C*). Leased Premises should include the Apron. | 3 | Revise to provide that Tenant Apron is part of the Premises and Tenant has exclusive control over use of the Apron for aircraft movement/parking (including overnight parking). Owner will have the right to collect RON Fees for aircraft parking on the Tenant Apron and maintain the Tenant Apron. |
| o Obligation of Tenant to pay all Taxes imposed on Premises (See *Section VI*). Tenant needs to understand what Taxes are actually imposed on the Premises. | 3 | Resolved. DOA confirms that no ad valorem or property taxes on airport property. DOA to confirm what, if any, other taxes are borne by private FBO operators at the airport. Discriminatory taxes targeted at the South Terminal (VI) should be tied to the Adverse Action provisions. |
| o *"Gross Revenue"* definition was modified to limit the deductions for refunds or adjustments to refunds for defective goods or dissatisfactory service. This change would not permit deductions for refunds due to true-ups of actuals to estimates. Discuss which deductions Owner is specifically | 3 | Revise to be a cash concept so that Variable Rent is based on cash receipts and not accruals. |

1

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| concerned about. | | |
| o Addition of *"Security Deposit"* concept in *Section V.G*. Security deposit can be increased in discretion of Owner to up to three months of estimated Rent. Parties should agree on a specific dollar amount cap. | 2 | Revised to be three months of Fixed Rent $20,000/$75,000. |
| o Tenant pays for FIDs but they are excluded from Trade Fixtures definition and therefore cannot be removed by Tenant or sold to Owner by Tenant at end of the Ground Lease. (See definition of *"Trade Fixtures"*). | 3 | Resolved, pending IT/Comm discussion. HS pays for FIDs and it becomes a Trade Fixture. |
| o Addition of performance and payment bond requirements for rehabilitation project (See *Section XV.G3)*). Based on the contractor selected, Tenant does not believe that bonds are required. | 3 | Resolved. HS to get Bond. |
| | | |
| **Timing Issues** | | |
| o Deletion of a number of the condition precedents to the Commencement of Tenant's Obligations to Begin Rehabilitation Project (e.g., Terminal Use Agreements signed, TSA sign-off, etc.) (See *Section IX.A*) and for Commencement of Operations Date to occur (e.g., TSA screening commencement, no MAE, etc.) (See *Section IX.C*). However, *Section XV.E* now says that Tenant cannot commence rehabilitation project until all City of Austin, TSA and FAA approvals have been obtained. At a minimum, *Section IX.C* should be modified to add that Tenant is not obligated to commence the rehabilitation project until all of such approvals have been obtained. | 1 | HS to provide indicative schedule of construction to DOA.<br><br>Revise CPs for starting construction to:<br>• Lease signed.<br>• Terminal Use Agreement(s) signed.<br>• Consultation with FAA on Lease and Use completed. |
| o Definition of *"Lease Year"* changed to 12 month periods running from Effective Date. This change will result in non-fiscal year Lease Years | 3 | Schedule of reports to be discussed Monday with DOA finance team.<br><br>HS to bring one-pager of proposed schedules to 11/16 |

2

LNSTR-000206

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| for, among other things, audits. Parties need to agree on a Lease Year mechanic. | | meeting. |
| o   In order to determine net Rent payment contemplated under *Section V.C*, Tenant needs to receive an <u>audited</u> annual rental car revenue report/calculation under *Section XVIII.F* on similar (or ideally, earlier) timing as the <u>audited</u> annual Tenant revenue report/calculation provided by Tenant to Owner under *Section V.K*. | 2 | Rental Car Revenue Sharing (XVIII.F) and Rent (V.C.) should each be payable quarterly. Annual audits of car rental revenue should be provided by Owner before Tenant is required to provide its annual audit of Gross Revenues. |
| o   It is unclear from the changes to *Section XVIII.F* how the rental car revenue allocation formula works. We assume that the allocation is based on percentage of *enplaned passengers* that South Terminal provides over total *Airport enplaned passengers*. Tenant should also get monthly reports comparable to those it gives to Owner under *Section V.D*. Tenant should also have similar audit rights to those that Owner has under *Section V.M*. | 1 | Rental Car Revenue Sharing to be based on the ratios of South Terminal Enplaned Passengers to ABIA Enplaned Passengers, as described in letter of intent (enplaned vs. enplaned). |
| ***Shuttle Bus Service*** | | |
| o   Definition of "Shuttle Bus Service" and Owner's obligation to provide Shuttle Bus Service (See *Section XVIII.E*) changes the "*and*" to "*or*". This change is okay as long as the destination is described as the *"North Terminal/CONRAC facility"*. | 3 | Resolved. |
| • **_Capital Recovery Payment Mechanics_** | | |
| o   Definition of *"Capital Recovery Payment"* in revised Lease provides that Initial Capital Investment items to be included in any Capital Recovery Payment are in Owner's "sole and absolute discretion". Parties need to establish a timeline and scope for approval of such items early in the rehabilitation | 1 | Revise to provide for Initial Capital Investment Process.<br>a. Tenant submits details of Initial Capital Investment to Department of Aviation within 30 days after Commitment of Operation Date.<br>b. Department of Aviation approves Initial Capital Investment within 30 days after submission, or disputes Initial Capital Investment.<br>c. Within 30 days after response from Department of Aviation the parties agree on the amount of the Initial Capital Investment. |

3

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| process. | | Remove sole discretion language and limit scope of review invoices paid by Tenant. |
| o Capital recovery for an early termination by Tenant due to post-signing FAA requirements/demands (See *Section III.B*) or failure of any Commencement of Operations Date conditions precedent (See Section IX.C.2)) has been deleted. | 2 | Discuss FAA review of Lease Agreement pre-signing. |
| o ***Term Extensions*** | | |
| o Revised provision requires, among other things, (i) a greater than 1.5 million enplaned passenger minimum in last 12 months of the applicable term and (ii) "satisfactory" customer service scores (See *Section III.A.2*). 1.5 million passengers in the current facility is not possible. Also, we would like to discuss the necessity of both prongs (ii) and (iii) in the new language. | 2 | The option to extend the term of the Lease in should be conditioned on (i) a minimum of 400,000 Enplaned Passengers at the South Terminal for the immediately preceding 12 months at the time of the exercise of the extension option and (ii) "satisfactory" customer reviews in 12 months prior to notice of the exercise of the extension option. Condition that Tenant must be a Qualified Entity to be deleted. |
| ***New Parking/Expansion/New Facility*** | | |
| o Elimination of provision prohibiting Owner from developing or allowing third party development of additional parking facilities south of the midfield runway (See *Section X.B*). | 2 | Tenant should have the opportunity to develop any new parking facilities at the Airport or to share in the revenue so that Tenant is made whole from any loss of revenue at the South Terminal parking facility due to a competing facility. |
| o Discuss inclusion and use in the Lease of the *"Limited Services Terminals"* concept. | 2 | Definition of Limited Services Terminal should be re-defined to be an airport passenger terminal that because of its limited size and scope provides fewer amenities. |
| o New Facility first right to work together is limited to Limited Service Terminals (see definition of *"New Facility"*). | 1 | The definition of New Facility should include full service terminals and parking. Revise to include date of Master Plan in XV.L and delete XV.M. |
| o Definition of a Limited Service Terminal provides that there are no jet bridges or automated baggage handling systems. While true initially, this may not be true throughout the term of the Lease at the South Terminal or in another | 2 | Definition of Limited Services Terminal should be re-defined to be an airport passenger terminal that because of its limited size and scope provides fewer amenities. |

4

LNSTR-000208

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| Limited Service Terminal at the Airport. | | |
| o *Environmental* | | |
| o Next step – comments withheld until consultants/specialists discuss. | 1 | Need baseline for current environmental conditions, either a new Phase 1 ESA or the Department's existing environmental reports. |
| o *General Indemnification* -- Major changes to *Section XXIII* include Tenant indemnification obligations to Owner which are more expansive than we would generally expect to see: | 2 | Lawyers to discuss. |
| ▪ Tenant is liable in full, even if Owner is partially responsible. Our original provision was based on proportional responsibility. Indemnity is not tied to use by Tenant of the Premises during the term of the Lease; arguably expands exposure (See *Section XXIII.A*). | 2 | Lawyers to discuss. |
| ▪ Removes waiver of consequential damages.(See deleted *Section XXIII.E*). | 2 | Lawyers to discuss. |
| ▪ Requires that Tenant require all subcontractors to indemnify Owner, with such requirement not being subject to a commercially reasonable effort to obtain such indemnification.(See *Section XXIII.E*). | 2 | Lawyers to discuss. |
| ▪ Tenant indemnifies for all injuries caused by defects on Premises, even those caused by Owner's own negligence. (See *Section XXIII.F*). | 2 | Lawyers to discuss. |
| *Tenant Default Remedies* – Reinstituted ability to take over operations of South Terminal and require Tenant to keep paying Rent shortfalls (See *Section XXIV.B2)*). Tenant believes recovery under this remedy should be at Owner's actual out-of-pocket cost and capped at a specific dollar amount. | 2 | Rent shortfalls should be capped at six-months of Fixed Rent. |

5

LNSTR-000209

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| o **_Operations_** | | |
| ▪ Concession Program requires Owner approval not just a consultation with Owner (See *Section XIII.A*). | 3 | Draft language to mutually agreeable standard. |
| ▪ Tenant shall either join in Owner's SWPPP or get a separate permit for South Terminal. In the latter case, Tenant is responsible for maintaining a SWPPP for the South Terminal. (See *Sections IV.C, XVII.H and XXI.I*). | 1 | Pending environmental discussion. |
| ▪ Violation of the MWBE Program is an event of default under the Lease. Could be a basis for termination by Owner if not cured. (See *Section XIV.J*). | 2 | Covenant on compliance with MWBE should be non-violation of any grant assurances for federal grants or material non-compliance with City ordinances and continued non-compliance after notice and opportunity to comply. |
| ▪ Deletes exception from construction standards under Volume II of the Airport Design Guidelines setting standards for the North Terminal (See *Section XV.F*). | | Not discussed. |
| ▪ Addition of an absolute prohibition on Tenant's solicitation of airlines currently operating at the Airport. (See *Section XI.B*). | 3 | Tenant may solicit North Terminal Airlines so long as in accordance with Airline Leasing Program. |
| ▪ Tenant's responsibilities exclude dry weather glycol recovery in conjunction with the three gates located on the maintenance ramp, but do not exclude separation of pollutants from wasterwater (See *Section XIV.A*). Discuss handling in operating standards. | | Not discussed. |
| ▪ Tenant has maintenance obligations for storm water structural controls and trench drainage system (See *Section XIV.B*). Discuss handling in operating standards. | | Not discussed. |
| ▪ Tenant has maintenance obligations for communication lines (See *Section XIV.B*). Discuss handling in operating standards. | | Not discussed. |

6

LNSTR-000210

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| o **_Financing_** | | |
| ▪ Deletion of Owner's agreement to reasonably subordinate its landlord's liens on the Premises and Tenant's personal property thereon to Tenant's lenders' liens (See *Section XVI.A*). | 2 | Lawyers to discuss. |
| o **_Miscellaneous_** | | |
| o Tenant's annual report setting forth Gross Revenues and Rent must be audited. | | Not discussed. |
| o Addition of prohibition of Tenant set-offs against Rent (See *Section V.B*). This change needs to except from such prohibition Tenant's set-off rights in the event of an Owner default under *Section XVII.B6)*. | | Not discussed. |
| o Travis County Dispute Resolution Center (instead of American Arbitration Association) as the mediator. (See *Section XXXVIII.B*). | | Not discussed. |
| o A new *Section XXXVIII.L* provides that the Lease does not provide an exclusive right to Tenant for the design, construction or operation of a terminal at the Airport. Obviously, the South Terminal should be excepted out of this qualification. | | Not discussed. |
| o *Section XXXIX.K* needs to be fixed to correct reference therein to be a reference to *Section XXVII.B*. | | Not discussed. |
| o Owner to confirm that immediately following the execution of the Lease, Owner will approve an assignment by Highstar IV of its rights and obligations thereunder to LoneStar Airport, a wholly owned, special purpose entity, | | Not discussed. |

7

LNSTR-000211

| Issue presented to DOA | Priority | Follow up/HS Position |
|---|---|---|
| of Highstar IV. | | |
| o Tenant must operate in accordance with Owner's Airport Standards Manual (See *Section XIV.A*). Tenant needs to see the manual. | | Not discussed. |

8

LNSTR-000212